# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENERGY TRANSFER LP, KELCY L. WARREN, JOHN W. MCREYNOLDS, and THOMAS E. LONG, <br><br> Defendants. | CIVIL ACTION <br><br> No. 20-0200 |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER

Defendants Energy Transfer LP, Kelcy L. Warren, John W. McReynolds, and Thomas E. Long hereby move to transfer this action, pursuant to the first-filed rule and 28 U.S.C. § 1404, to the United States District Court for the Northern District of Texas, Dallas Division, where an earlier-filed, related action is currently pending.

### A. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants respectfully request that this purported securities fraud lawsuit be transferred to the United States District Court for the Northern District of Texas, where a lawsuit making almost identical allegations was previous filed and where the Defendants in this action are located. Defendants in both this lawsuit and the Texas matter are Energy Transfer, a publicly traded midstream oil and gas limited partnership headquartered in Dallas, Texas, and three Energy Transfer executives, all of whom work and reside in Dallas. Plaintiff seeks to represent a class of Energy Transfer's public unitholders, who are broadly dispersed throughout the United States. Transfer is appropriate for two reasons.

*First*, federal courts apply a "first-filed rule" to transfer related actions to the court where the first such action was filed. This rule promotes efficiency and comity among federal district courts. Here, Plaintiff's primary allegation is that Energy Transfer made various misstatements in SEC filings and press releases concerning the permitting of its Mariner East pipeline project. Notably, **all** of the purported misstatements that Plaintiff identifies—and almost all the other facts alleged in the Complaint—are at issue in a derivative action that was filed in the North District of Texas a month before the filing of this action. Indeed, large portions of Plaintiff's Complaint appear to be copied directly from the complaint in the Texas derivative action, including the following:

| Plaintiff's Complaint (filed 1/10/2020) | Texas Derivative Complaint (filed 12/7/2019) |
| --- | --- |
| ¶ 7: Unknown to the investing public, Defendants, acting either independently or in concert with the Pennsylvania Governor Tom Wolf's administration, made use of coercion, bribery, and/or other illicit means of forcing [the Pennsylvania Department of Environmental Protection] to approve construction permits that were critical to the development of Mariner East 2. | ¶ 8: Unbeknownst to the investing public, the Defendants, acting either independently or in concert with Pennsylvania Governor Tom Wolf's administration, had made use of coercion, bribery, and/or other illicit means of forcing [the Pennsylvania Department of Environmental Protection] to approve the construction permits that were critical to the continued development of the Mariner East Pipeline. |
| ¶ 24: On February 13, 2017, the [Pennsylvania Department of Environmental Protection] approved water-crossing and sedimentation permits for the second phase of the Mariner East project, Mariner East 2, which would transport natural-gas liquids across Pennsylvania to a terminal in Marcus Hook. According to news sources, reporting on the proposed second phase of this project, Energy Transfer had experienced challenges achieving approval of these permit applications in the past due to numerous deficiencies and public concern over the environmental impact of the projects. As such, the speed | ¶¶ 113-14: On February 13, 2017, [the Pennsylvania Department of Environmental Protection] approved earth-moving and water-crossing construction permits for the planned second phase of the Mariner East Pipeline, Mariner East 2, which would extend to the Company's Marcus Hook Industrial Complex on the Delaware River. The Company had applied for permit applications for its respective pipeline projects as early as May 2014. According to news sources reporting on the proposed second phase project, the Company had experienced challenges achieving approval of these permit applications in the past due to numerous deficiencies and public concern over the environmental impact of the projects. As such, the speed at which the Mariner East 2 permit was approved was surprising. |

26079529.1

| | |
|---|---|
| at which the Mariner East 2 Permits were approved was surprising. | |
| ¶¶ 26-27: On February 24, 2017, during after-market hours, Energy Transfer filed an Annual Report on Form 10-K with the SEC, reporting the Partnership's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K"). With respect to the Partnership's corporate governance, the 2016 10-K touted that "[t]he Board of Directors has adopted both a Code of Business Conduct and Ethics applicable to our directors, officers and employees, and Corporate Governance Guidelines for directors and the Board." The 2016 10-K also noted that "[c]urrent copies of [the Partnership's] Code of Business Conduct and Ethics . . . are available on [the Partnership's] website." | ¶¶ 119-20: During after-market hours on February 24, 2017, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K highlighted the Company's extensive corporate governance, noting that "[t]he Board of Directors has adopted both a Code of Business Conduct and Ethics applicable to our directors, officers and employees, and Corporate Governance Guidelines for directors and the Board."<br>* * *<br>The 2016 10-K directed the investing public to the Company's Code of Conduct by stating, "[c]urrent copies of [the Partnership's] Code of Business Conduct and Ethics . . . are available on [the Company's] website." |

*Second*, this action should be transferred to the Northern District of Texas under the federal transfer statute. Under that statute, 28 U.S.C. 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404. Here, ***all*** of the purported misstatements were made in the Northern District of Texas, Energy Transfer is headquartered in the Northern District of Texas, and the individual Defendants reside in the Northern District of Texas. It would be far more convenient and efficient to conduct this case in the Northern District of Texas than in this Court, especially in light of the first-filed litigation pending in that District concerning the same allegations.

Accordingly, the Court should grant Defendant's Motion and transfer this case to the Northern District of Texas.

B.  BACKGROUND

On December 7, 2019, Giuseppe Bettiol filed a derivative action (the "Texas Action") in the United States District Court for the Northern District of Texas against Energy Transfer's general partner and its board members. *See Bettiol v. LE GP, LLC et al.*, No. 3:19-cv-02890-X (N.D. Tex. Dec. 7, 2019) (the "Texas Complaint") (attached hereto as Exhibit A). The Texas Action alleges wrongdoing during the Mariner East permitting process and fraudulent misstatements about that alleged wrongdoing. Ex. A (Texas Complaint) ¶¶ 177-205. Specifically, the Texas Complaint alleges that the defendants breached their purported fiduciary duties by:

> Caus[ing] the Company to make use of permits that were obtained through the use of coercion, bribery, or other improper methods, and make false and misleading statements and omissions of material fact that failed to disclose that: (1) the construction permits issued in connection with the Mariner East Pipeline were obtained by the Company through the use of coercion, bribery, or other improper methods; (2) the use of such improper methods increased the risk that the Company would be subjected to government or regulatory investigations and/or litigation; and (3) the Company failed to maintain internal controls. As a result of the foregoing, the Company's statements were materially false and misleading . . . .

Ex. A (Texas Complaint) ¶ 181.

The Texas Action was filed after an earlier securities fraud suit related to the Mariner East Project was also filed in the Northern District of Texas (the "Reinhardt Action"). *See Reinhardt v. Energy Transfer LP et al.*, No. 3:19-cv-2771-B (N.D. Tex. Nov. 20, 2019) the "Reinhardt Complaint") (attached hereto as Exhibit B). The Complaint in the Reinhardt Action and in this action are substantively identical and large portions of the Complaint here appear to have been taken from the Reinhardt Complaint verbatim. *Compare* Ex. B *with* ECF No. 1. On January 15, 2020, five days after this action was filed, Reinhardt voluntarily nonsuited his action. *Reinhardt*, No. 3:19-cv-2771-B (N.D. Tex. Jan. 15, 2020).

Approximately one month after the Texas and Reinhardt Actions were filed, the Plaintiff here, Allegheny County Employees' Retirement System, filed this purported securities class action against Defendants on January 10, 2020. Like in the Texas and Reinhardt Actions, the Complaint in this action also alleges wrongdoing during the permitting process for the Mariner East project and also claims that Defendants made false and misleading statements about the putative wrongdoing. ECF No. 1 at 1, 23. Plaintiff seeks to recover for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *Id* ¶¶ 1, 11. The Complaints in this action and the Texas Action identify the same purportedly "false and misleading statements" contained in the same six public documents distributed by Energy Transfer. *Compare* ECF No. 1 ¶¶ 26-43 *with* Ex. A (Texas Complaint) ¶¶ 119-40 (each claiming that the same false and misleading statements appeared in Energy Transfers' 2016, 2017, and 2018 Form 10-K filings as well as in press releases dated May 3, 2018, December 29, 2018, and April 23, 2019). Both plaintiffs also allege that the purported wrongdoing by Energy Transfer violated its Code of Business Conduct and Ethics. *Compare* ECF No. 1 ¶¶ 6, 26-32 *with* Ex. A (Texas Complaint) ¶¶ 88-105.

As acknowledged in the Complaint here and in the Texas Complaint, Defendant Energy Transfer is headquartered in Dallas, Texas. ECF No. 1 ¶ 16; Ex. A. (Texas Complaint) ¶ 24. Defendants Warren, McReynolds, and Long (the "Individual Defendants") are officers and employees of Energy Transfer. ECF No. 1 ¶¶ 17-19.

## C. TRANSFER IS PROPER UNDER THE FIRST-FILED RULE

Because of the near-complete overlap of allegations and issues in this action and the Texas Action, the Court should transfer this action to the court where the earlier-filed Texas Action is pending.

1.  **LEGAL STANDARD**

Under the first-filed rule, "when duplicative lawsuits are filed successively in two federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co.*, 836 F.3d 205, 210, 220 (3d Cir. 2016) (en banc) (holding that a court "should stay or transfer a second-filed suit"). As explained by the Third Circuit, the first-filed rule "encourages sound judicial administration and promotes comity among federal courts of equal rank" by permitting judges to "enjoin[] the subsequent prosecution of similar cases in different federal district courts." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (alteration omitted) (quoting *Compagnie Des Bauxites De Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981), *aff'd on other grounds*, 493 U.S. 183 (1990); *see also Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.") (citation omitted).

"[T]he first-filed rule is 'grounded on equitable principles' and requires district court judges to 'fashion[] a flexible response to the issue of concurrent jurisdiction.'" *Chavez*, 836 F.3d at 216 (second alteration in original) (footnotes omitted) (quoting *EEOC*, 850 F.2d at 977). Accordingly, in adopting this "more flexible approach," courts in this Circuit have repeatedly held that "the rule applies to cases that are substantially similar." *Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 19, 2015) (collecting cases). With this greater flexibility, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issue perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009). The "substantive touchstone of the first-to-file inquiry is subject matter." *Id.* (quoting *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)).

## 2. ANALYSIS

Transfer of this action is proper under the first-filed rule and is in accord with the policy goals underlying the rule. The Texas Action was filed on December 7, 2019, more than a month before this action was filed on January 10, 2020. The Texas Action is thus the first-filed action for purposes of the rule's application. *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) ("*Thurston* was filed *first*, and that is all that matters for purposes of the rule."). And, this action and the Texas Action involve the same subject matter and should be decided by the same court.

As shown above, the factual underpinning of both actions is the same. In each action, the plaintiff alleges the existence of wrongdoing by Energy Transfer's board, officers, and employees during the permitting of the Mariner East pipeline project. ECF No. 1 ¶ 7; Ex. A (Texas Complaint) ¶ 8. Both actions also allege that this purported wrongdoing violated Energy Transfer's Code of Business Conduct and Ethics. ECF No. 1 ¶¶ 6, 26-32; Ex. A (Texas Complaint) ¶¶ 88-105.

Further, both plaintiffs allege that the ***same six Energy Transfer documents***,[1] and virtually ***the exact same statements*** within those documents,[2] were false and misleading. ECF No. 1 ¶¶ 26-43; Ex. A (Texas Complaint) ¶¶ 119-40. For example, both Complaints quote statements in the 10-K filings that "[t]he Board of Directors has adopted both a Code of Business Conduct and Ethics applicable to our directors, officers and employees, and Corporate Governance Guidelines

---

[1] *Compare* ECF No. 1 ¶¶ 26-43, *with* Ex. A (Texas Complaint) ¶¶ 119-40 (alleging that false and misleading statements were contained in Energy Transfer's 2016, 2017, and 2018 Form 10-K filings, and in press releases dated May 3, 2018, December 29, 2018, and April 23, 2019).

[2] The only statement in these six documents specifically quoted in Plaintiff's Complaint and not also specifically identified in the Texas Complaint is the SOX certification appended to each Form 10-K filing where the Individual Defendants certified the 10-K's veracity and compliance with the Securities Exchange Act. ECF No. 1 ¶¶ 34, 36, 41.

for directors and the Board" and that "[w]e believe that we have satisfactory title to or valid rights to use all of our material properties" before alleging that these statements were somehow false or misleading. ECF No. 1 ¶¶ 26, 32, 43. Ex. A (Texas Complaint) ¶¶ 119, 121, 140. The Texas Complaint alleges that the May 3, 2018 press release's statement that "Energy Transfer Partners, L.P. (NYSE: ETP) announced today that its subsidiary, Sunoco Pipeline L.P. (SPLP) received a unanimous vote from the Pennsylvania Public Utility Commission (PUC) to resume operations of its Mariner East 1 pipeline" was false or misleading. Ex. A (Texas Complaint) ¶¶ 131, 140. The Complaint here also decries as false or misleading the May 3 press release's statement that "Energy Transfer . . . received a unanimous vote from the Pennsylvania Public Utility Commission (PUC) to resume operations of its Mariner East 1 pipeline." ECF No. 1 at 37, 43. Both Complaints quote many other virtually identical passages from the Form 10-K filings, the various Codes of Conduct, and other press releases.

Because of this overlap, transfer is proper and would further the policy considerations that underlie the first-filed rule by preventing inconsistent rulings and duplication of judicial effort. *See EEOC*, 850 F.2d at 971; *Catanese*, 774 F. Supp. 2d at 688; *Stein v. Immelt*, 2010 WL 598925, at \*2 (D. Conn. Feb. 18, 2010) (transferring derivative action where "the breaches of fiduciary duty alleged [were] based on the same statements at issue in the consolidated class actions"); *Goggins v. All. Capital Mgmet., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (transferring securities class action to district where derivative action was pending where the two cases "allege[d] the same misrepresentations in public filings, relie[d] on the same alleged statement made by the Fund's portfolio manager and allege[d] the same unheeded 'red flags'").

This result is consistent with that reached by numerous other federal courts, which have recognized the propriety of having related securities class actions and derivative actions decided in the same forum and, for that reason, have transferred securities actions to different districts to

be adjudicated alongside derivative actions, or vice versa. *Goggins*, 279 F. Supp. 2d at 231, 234 (transferring, pursuant to 28 U.S.C. § 1404, a securities class action to district were six derivative actions had been consolidated); *City of Pontiac Gen. Emps. Ret. Sys. v. Wal-Mart Stores, Inc.*, 2012 WL 12543462, at *2 (M.D. Tenn. July 25, 2012) (transferring securities class action to district where derivative actions were pending "to avoid potential conflicting findings concerning the facts underlying the[] [actions]"); *Huellemeier v. Teva Pharm. Indus. Ltd.*, 2017 WL 5523149, at *2, *6 (S.D. Ohio Nov. 17, 2017) (transferring derivative action to district where earlier-filed securities class actions were pending); *Stein*, 2010 WL 598925, at *1-2 (transferring derivative action to district where securities class actions were pending).

In short, transfer of this action to the Northern District of Texas is proper under the first-filed rule and would support the purposes of the rule by promoting efficient and consistent resolution of the common subject matter of this action and the Texas Action.

### D. 28 U.S.C. § 1404

Transfer is also proper under the federal transfer statute, 28 U.S.C. §1404.

#### 1. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). Congress enacted Section 1404(a) "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).

In undertaking a Section 1404 analysis, a court should first consider whether the proposed transferee court is a "district or division where [the action] might have been brought." 28 U.S.C.

§ 1404(a). If this element is satisfied, the court then proceeds to determine whether transfer would serve the interests of justice and convenience. *Id*. While there is no definitive formula or set list of factors to consider, the Third Circuit, in *Jumara v. State Farm Ins. Co.*, set out a number of private and public interests which a court may consider. 55 F.3d 873, 879 (3d Cir. 1995). The private interest factors may include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

55 F.3d at 879 (citations omitted). The public interest factors may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, and inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-80 (citations omitted).

### 2. ANALYSIS

#### (a) The Propriety Of The Transferee Forum

The Court may order transfer to the United States District Court for the Northern District of Texas, Dallas Division only if venue would have been proper there and if that court could have exercised personal and subject-matter jurisdiction over this action. *See* 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3845 (4th ed. 2019). This action is brought under the federal Securities Exchange Act against Energy Transfer, a limited partnership headquartered in Dallas, Texas, and several of its officers. ECF No. 1 ¶ 16. The federal district court in Dallas has both subject-matter jurisdiction over this action and personal jurisdiction over Defendants. Venue in the Northern District of Texas is proper under 15 U.S.C.

§78aa because Defendants transact business in the district. Thus, this action could have been brought in the proposed transferee court.

### (b) The *Jumara* Analysis

The *Jumara* factors weigh in favor of transfer.

### (1) The Parties' forum preferences weigh in favor of transferring the case to the Northern District of Texas.

The first *Jumara* private interest factors consider the forum preferences of the parties to the action. *Jumara*, 55 F.3d at 879. Here, Plaintiff filed this action in this Court indicating a preference to litigate in this forum. But, a plaintiff's "choice of a forum becomes substantially less important . . . when he sues representatively on behalf of a class," as is the case here. *Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (quoting *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996)).

By contrast, Defendants prefer to litigate this action in the Northern District of Texas. This preference should prevail over Plaintiff's preference to litigate in this forum because of the existence of—and overlapping issues presented in—the Texas Action. "[T]he existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." *Villari Brandes & Kline*, 2009 WL 1845236, at *5. As here, in that situation, the Defendants' preference to litigate in another forum serves the congressional intent underlying Section 1404. *Van Dusen*, 376 U.S. at 616 ("[T]he purpose of [§ 1404] is to prevent the waste of time, energy and money . . . .") (internal quotation marks and citation omitted). Accordingly, this factor weighs in favor of transfer. *Phoenix Ins. Co. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 423 (E.D. Pa. 2019) (finding that this factor weighed in favor of transfer in similar circumstances, and that

"Defendants' preference to litigate substantially similar claims in the same district is . . . entirely reasonable").

### (2) The location in which the claims at issue in this lawsuit arose weighs in favor of transfer to the Northern District of Texas.

The next *Jumara* private interest factor considers whether the claims at issue "arose elsewhere" than the district in which the lawsuit was filed. *Jumara*, 55 F.3d at 879. If, as here, they did, this factor weighs in favor of transfer. *See City of Pontiac Gen. Emp. Ret. Sys.*, 2012 WL 12543462, at *2.

This action arises from Plaintiff's claim that various statements contained in Energy Transfer's SEC filings and press releases were fraudulent. ECF No. 1 ¶¶ 26-43. All of the SEC filings and press releases containing these statements were prepared in, and disseminated from, Energy Transfer's headquarters in Dallas, which is located in the Northern District of Texas. *Id.* at ¶¶16, 26-43. And, in actions under the securities laws, an allegedly false and misleading statement is deemed to occur in the district where it was made, not where it was received. *See City of Pontiac Gen. Emps.' Ret. Sys.*, 2012 WL 12543462, at *2 (in securities case, for purposes of determining venue, "misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received"); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (transferring case where allegedly false financial statements were prepared in transferee district). Accordingly, this factor also weighs in favor of transfer. *See Job Haines*, 936 F. Supp. at 230 (transferring securities fraud action to California where complaint alleged that "California companies and California residents working for companies in California . . . made false and misleading statements" at issue).

### (3) Consideration of the convenience of the Parties supports transfer to the Northern District of Texas.

The next *Jumara* private interest factor considers whether a different forum would be more convenient for litigating the claims at issue than the district in which the lawsuit was filed. *Jumara*, 55 F.3d at 879. Here, the Northern District of Texas provides a far more convenient forum for Defendants given its close proximity to Energy Transfer's headquarters within the boundaries of the Northern District of Texas. ECF No. 1 ¶ 16; *see, e.g.*, *Polin v. Conductron Corp.*, 340 F. Supp. 602, 606 (E.D. Pa. 1972) ("[I]t would clearly be more convenient if [the witnesses] could have the trial in the [district where corporate headquarters was located] as they could testify with a minimum of disruption to their duties with the company."). And the individual defendants each reside within the Northern District of Texas. Further, if transferred, it will be possible for this action to proceed in coordination with the derivative action, or for the two actions to be consolidated. This would further reduce the burden on the Defendants and the witnesses. *See Goggins*, 279 F. Supp. 2d at 233 (transfer served convenience of defendants and witnesses where they would be able to "provid[e] testimony in a single consolidated action.").

Moreover, as many courts have recognized, in federal securities actions it is the defendants—and not the plaintiffs—that bear the vast majority of the burden of both discovery and of appearing as witnesses. *In re Glob. Cash Access Holdings Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (key witnesses in securities class actions are often officers and employees of issuer defendants); *Blass v. Capital Int'l Sec. Grp.*, 2001 WL 301137, at *6 (E.D.N.Y. Mar. 23, 2001) ("Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession"); *In re Nematron*, 30 F. Supp. 2d at 402 ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct.").

Accordingly, this factor also weighs in favor of transfer.

### (4) Consideration of the convenience of potential witnesses and location of relevant books and records supports transfer to the Northern District of Texas.

The next *Jumara* private interest factor considers which forum would be the best accommodate "the convenience of the witnesses . . . and the location of books and records." *Jumara*, 55 F.3d at 879.

At this early stage of the proceeding, Defendants cannot determine whether any witnesses or records would be unavailable in this Court. However, because Energy Transfer's headquarters are located in the Northern District of Texas, the relevant witnesses and records are likely located in that district. *See* ECF No. 1 ¶ 16. As a result, transferring to the Northern District of Texas would minimize the risk that any witnesses or records relevant to this case would be unavailable or inconvenient. Accordingly, this factor also weighs in favor of transfer.

### (5) The Public Interest Factors

Finally, the *Jumara* public interest factors weight "considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. These considerations weigh strongly in favor of transfer. After all, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26. Transfer of this action would avoid the waste of duplicative litigation and is, therefore, appropriate. *See Goggins*, 279 F. Supp. 2d at 234-35 (granting transfer where complaints alleged same misstatements and finding that "[c]oncerns over judicial efficiency outweigh[ed] all other factors" and were "dispositive of the issue").

\* \* \*

-14-

26079529.1

In sum, all of the *Jumara* factors weigh in favor of transfer under Section 1404. The action should accordingly be transferred to the United States District Court for the Northern District of Texas.

**E.    CONCLUSION**

For the foregoing reasons, transfer is proper under both the first-filed rule and 28 U.S.C. § 1404. Defendants respectfully request that the Court grant this motion and transfer this action to the United States District Court for the Northern District of Texas.

Date: February 25, 2020

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Curtis J. Crowther*
Curtis J. Crowther
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel: (302) 576-6600
Fax: (302) 571-1253
ccrowther@ycst.com


VINSON & ELKINS LLP
Michael C. Holmes
Jeffrey S. Johnston
Robert Ritchie
William S. Stripling

2001 Ross Ave., Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
Fax: (214) 999-7923
mholmes@velaw.com
jjohnston@velaw.com
rritchie@velaw.com
wstripling@velaw.com

*Counsel for Defendants*