**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLEGHENY COUNTY EMPLOYEES'** | : | |
| **RETIREMENT SYSTEM, individually and** | : | |
| **on behalf of others similarly situated,** | : | **CIVIL ACTION** |
| | : | **No. 20-200** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **ENERGY TRANSFER LP, KELCY L.** | : | |
| **WARREN, JOHN W. MCREYNOLDS, and** | : | |
| **THOMAS E. LONG,** | : | |
| | : | |
| **Defendants.** | : | |

**McHUGH, J.**                                                                 **APRIL 16, 2020**

**MEMORANDUM**

This is a putative class action filed by Plaintiff Allegheny County Employees' Retirement System, along with a group of other retirement and pension funds, against Defendants Energy Transfer LP and two of its senior executives for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act—as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA")—and SEC Rule 10b-5.  Defendants have moved to transfer these proceedings to the United States District Court for the Northern District of Texas based on an earlier lawsuit brought there, contending that such a transfer would be supported by the first-filed rule and the relevant private and public interests protected by 28 U.S.C. § 1404, which governs requests for transfers.  Specifically, shareholders of Energy Transfer, on behalf of Energy Transfer, initiated a derivative action against corporate officers John McReynolds, Thomas Long, and others in the Northern District of Texas based partly on the same allegations at issue in these proceedings, which involve the potential bribery of Pennsylvania state officials in connection to a pipeline approval process.  In response, Plaintiff contends that transfer would be inappropriate because

the underlying parties and claims involved are different in this action from the pending derivative

lawsuit, and the bulk of the alleged unlawful activities took place here in Pennsylvania.

Regardless of how one approaches the first-filed rule, I conclude that the pending

proceedings here and in Northern Texas are not duplicative to such an extent that transfer is

warranted.  Plaintiff in this case seeks to obtain damages on behalf of investors who suffered

losses due to Energy Transfer's alleged misrepresentations, while the plaintiff in Northern Texas

seeks damages from individual corporate officers on behalf of Energy Transfer itself.  Moreover,

Defendants have not offered any compelling reasons to overcome the deference owed to

Plaintiff's choice of forum under the factors controlling application of § 1404 in this Circuit.

Accordingly, I will deny the Defendants' Motion to Transfer.

## I.      Factual Background

The alleged facts underlying this action are set forth in my previous Memorandum

Opinion appointing Allegheny County as Lead Plaintiff.  *See* ECF 16; 2020 WL 815136 (E.D.

Pa. Feb. 19, 2020).  To review, Energy Transfer is a Dallas-based energy transportation and

storage company that operates some of the largest oil and gas pipelines in the United States.

Among its projects is the Mariner East pipeline, a multibillion-dollar, 350-mile pipeline that

carries highly volatile natural gas liquids from the Marcellus and Utica Shales areas across

Pennsylvania to, among other places, Energy Transfer's Marcus Hook Industrial Complex on the

Delaware River.

According to Plaintiff, Energy Transfer had a difficult time securing approval for the

second phase of the Mariner East project because of permit application deficiencies and public

concern over the environmental impact of the project.  Nevertheless, the Pennsylvania

2

Department of Environmental Protection approved the second phase of the project in early February 2017, and the project became operational in December 2018.

In November 2019, the Associated Press reported that the FBI had begun a "corruption investigation into how Gov. Tom Wolf's administration came to issue permits for construction on a multibillion-dollar pipeline project to carry highly volatile natural gas liquids across Pennsylvania."  Marc Levy, *FBI eyes how Pennsylvania approved pipeline*, Associated Press (Nov. 12, 2019).  Over the two trading days following the A.P.'s report, the share price of Energy Transfer fell nearly 7 percent.

Lawsuits followed swiftly, first in the Northern District of Texas and then in this District. In the Complaint filed in this District, Plaintiff asserts violations of the federal securities laws arising from Energy Transfer's allegedly false or misleading statements about, among other things, its role in obtaining permits for the Mariner East pipeline, as well as its compliance with its internal Code of Business Conduct and Ethics.  The Complaint charges that Energy Transfer and certain of its senior executives failed to disclose that the permits received to commence work on the Mariner East pipeline project in Pennsylvania were secured through bribes or other improprieties, which would have increased the risk that Energy Transfer or certain of its employees would be subject to government or regulatory action.

## II.    Procedural Posture

The first securities class action related to the events described above was filed on November 20, 2019, in the Northern District of Texas.  *William D. Reinhardt v. Energy Transfer LP, et al.*, 19-2771 (N.D. Tex.).  Like this action, the *Reinhardt* action asserted claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act and SEC Rule 10b-5 on behalf of

3

investors who purchased or otherwise acquired Energy Transfer securities from February 25, 2017, through November 11, 2019.  On January 10, 2020, Allegheny County filed this action. Allegheny County's Complaint is substantially similar to the *Reinhardt* complaint.  It asserts the same violations of the securities laws on behalf of the same class of investors who were harmed by the same alleged fraudulent course of conduct.  On January 15, 2020, the plaintiff in the *Reinhardt* action voluntarily dismissed his complaint.  *See William D. Reinhardt v. Energy Transfer LP, et al.*, 19-2771 (N.D. Tex.), ECF 8.  On January 21, 2020, four entities filed motions seeking appointment of lead plaintiff in this action, and on February 19, 2020, I granted Allegheny's motion to be appointed lead plaintiff.  ECF 17.  There are now no other pending securities class actions arising from the misconduct alleged in this case.

Also pending is a derivative action in the Northern District of Texas seeking damages on behalf of Energy Transfer against several of its corporate officers for the same alleged events involving the approval of the Mariner East project.  The derivative action was filed on December 7, 2019, just over a month before the filing of this action.  *See Bettiol v. LE GP, LLC et al.*, No. 3:19-cv-02890-X (N.D. Tex. Dec. 7, 2019); ECF 19-2.  The complaint in *Bettiol* also appears to draw upon the *Reinhardt* complaint in formulating the facts underlying its allegations.  It does not, however, plead any violations of the securities laws; rather, it states claims for breach of fiduciary duties, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.

4

III.    **Discussion**

A.  **The first-filed rule does not support transfer**

The first-filed rule "promotes comity among federal courts of equal rank" by giving courts "the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). "Application of the rule is discretionary," and courts overseeing the second-filed suit may choose to "stay, transfer, or dismiss the case" before them. *Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 210 (3d Cir. 2016). A judge's authority to enjoin a second-filed case "is not a mandate directing wooden application of the rule." *Univ. of Pa.*, 850 F.2d at 972. Rather, it is a flexible standard motivated by equitable principles and practical considerations—"[d]istrict courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Id*.

As Plaintiff correctly notes in its opposition brief, within this Circuit there are at least two approaches followed by district courts in applying the first-filed rule. I previously addressed this at some length in *Landau v. Viridian Energy PA LLC*, 274 F. Supp. 3d 329 (E.D. Pa. 2017), and repeat that analysis here. In application, the first-filed rule[1] easily encompasses cases involving the same parties and the same transaction. Many such cases involve intellectual property disputes, where a suit for infringement of a patent in one district is met by a declaratory judgment action brought by the alleged infringer against the holder of the patent in another district. *See, e.g.*, *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130

---

[1] On one level, it almost seems a misnomer to refer to the first-filed "rule," because in practice it is applied more in the nature of an equitable doctrine that has produced a wide variety of results.

F.2d 474, 475-76 (3d Cir. 1942).  Except in such archetypal cases, the contours of the first-filed rule are harder to discern and courts in this District disagree over its scope.  Some courts take a narrow view of the first-filed rule and apply it only when the parties and claims in the later-filed suit are a "mirror image" of the first.  *Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at \*2 (E.D. Pa. Aug. 25, 2015) (listing cases).  Others have embraced a broader, "close-enough-for-government-work" approach to the rule and applied it to "disputes involving *similar*, concurrent actions."  *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008) (emphasis added).  According to proponents of the broader approach, the "substantive touchstone of the first-to-file inquiry is subject matter," rather than identity of legal claims or parties.  *Id.* at 409; *see also Palagano*, 2015 WL 5025469, at \*2 (listing cases that apply the broader approach).

The Third Circuit has not definitively ruled on the scope of the first-filed rule.  Proponents of the mirror-image approach point to a footnote in *Grider v. Keystone Health Center, Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007), where the Third Circuit said that the first-filed rule applied only when "the later filed case [is] . . . on all fours with the other" and "the issues . . . have such an identity that a determination in one action leaves little or nothing to be determined in the other."[2]  Courts favoring a broader interpretation of the first-filed rule

---

[2] Courts have also cited to *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37 (3d Cir. 1980), as another Third Circuit case that would support a more restrictive application of the rule.  In *Chaterjee*, the Court cautioned while "the general principle is to avoid duplicative litigation," that the emphasis be on avoiding "truly duplicative proceedings . . . when the claims, parties, or requested relief differ, deference may not be appropriate."  *Id.* at 40 (citation omitted).  The *Chaterjee* Court did not make explicit reference to the first-filed rule in its opinion, however, and *Grider* does not cite *Chaterje*e.

dismiss the language in *Grider* as mere dicta.  *See Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (collecting cases).

      There appears to be consensus, however, that *if* the first-filed rule applies, there is a presumption that the later-filed action should be dismissed, transferred, or stayed.  *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005).  But even this presumption gives way when "fundamental fairness dictates" a departure from the ordinary application of the rule.[3]  *Univ. of Pa.*, 850 F.2d at 977.  Confounding the picture still further, many district courts have held that even when the rule applies, a party seeking transfer of a later-filed case must nonetheless show that the conditions of 28 U.S.C. § 1404 are satisfied.  *See Thompson v. Glob. Mktg. Research Servs., Inc.*, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (listing cases that apply § 1404 after finding that the first-filed rule applies).

      I am persuaded that much of the disagreement in the reported cases can be reconciled by recognizing that there are two distinct scenarios where the rule has been applied.  The first-filed rule started with cases like *Crosley*, where earlier- and later-filed actions involved the same parties and arose out of the same transaction, agreement, or encounter.  Only later was it extended to cases that were not truly related but raised similar issues.  In cases where two actions arise out of an integrated dispute, a court should transfer, stay, or dismiss the later-

---

[3] In *Synthes*, my colleague Judge Savage noted that courts in this Circuit also diverge on whether departures from the first-filed rule are commonplace.  978 F. Supp. 2d at 455.  *Compare, e.g.*, *Koresko v.Nationwide Life Insurance Co.*, 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005) ("[D]ue consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule."), and *Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, 2003 WL 22358439, at *4 (E.D. Pa. Sept. 10, 2003) (departures from the first-filed rule are rare), *with FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 744 (E.D. Pa. 2005) (exceptions to the first-filed rule are not rare—rather, departure occurs where justice requires).

filed action unless exceptional circumstances dictate otherwise.  Such cases are genuinely

related, in the technical sense, making transfer (where it is sought) an obvious remedy.  The

Third Circuit's statement in *Grider*, even if *dicta*, supports that view.

As a matter of simple logic, however, the rule does not carry the same force when (1)

different parties are involved, (2) the underlying dispute involves similar but not identical

issues, and (3) the controlling law is from different jurisdictions.  Any relationship between

such cases is necessarily more attenuated.  Faced with that scenario, courts import § 1404 into

the analysis, implicitly recognizing the relative weakness of the relationship between the

cases.

In my view, clarity is served by explicitly recognizing a two-tiered approach to the

first-filed rule.  In truly related cases, transfer to the jurisdiction with the first-filed case

should be presumed, and the burden of showing otherwise then lies with the party seeking to

keep the case in the second-filed jurisdiction.  Otherwise, the existence of an earlier-filed

case that is similar, but not identical, should be a relevant, but not controlling, factor to

consider as part of § 1404 transfer analysis.

Here, the action filed in the Northern District of Texas and the action filed here have

material differences.  It is true that both the present case and the derivative action involve largely

the same set of underlying allegations regarding Pennsylvania's approval of the Mariner East

pipeline.  But they differ in significant ways.  As noted at the outset, the parties involved in the

cases are different:  Allegheny County is filing suit on behalf of a putative class of investors

against Defendants, whereas in the derivative action a corporate unitholder is bringing a suit on

behalf of Energy Transfer itself against allegedly malfeasant corporate leaders.  Furthermore, the

8

claims are distinct in nature—the derivative action seeks damages on behalf of the corporation, whereas this action seeks damages for the specific losses of investors. As Plaintiff points out, part of the damages claimed in the derivative action depend upon Plaintiff's initial success. And the derivative action raises separate legal claims, and no claim under federal securities law.

Defendants are correct that there is precedent for the transfer of federal securities actions to districts where derivative actions are pending, but the cases they cite are distinguishable. In *Goggins v. Alliance Capital Management, L.P.*, 279 F. Supp. 2d 228 (S.D.N.Y. 2003), a New York case was transferred to the District of New Jersey because six consolidated derivative actions alleging overlapping causes of action, including securities claims, were pending there. *Id.* at 231. The court there was persuaded that interests of judicial efficiency triumphed over the plaintiffs' interest in pursuing their action separately in New York. Here, there is but one derivative action, and it does not allege any securities law violations. Defendants also cite *Huellemeier v. Teva*, 2017 WL 5523149 (S.D. Ohio Nov. 17, 2017). *Huellemeier* involved a similar situation where the court decided to transfer a derivative action, which also alternatively asserted securities class action claims, to the District of Connecticut. But there, the District of Connecticut was presiding over two consolidated securities class action cases with overlapping parties and claims. *Id.* at *5. Finally, *City of Pontiac Gen. Emps. Ret. Sys. v. Wal-Mart Stores, Inc.*, 2012 WL 12543462 (M.D. Tenn. July 25, 2012), carries even less weight. The plaintiff there could allege "no connection to Tennessee other than some of its counsel reside here," with the result that the court transferred the case to the Western District of Arkansas where pending related derivative actions were also underway. *Id.* at *1. In contrast, Plaintiff here is based in

Pennsylvania, and the conduct underlying the Defendants' purported misrepresentations occurred in Pennsylvania.

In conclusion, these two cases here are similar but not identical, such that the mirror image formulation of the first-filed rule does not apply. At most, the pendency of the Texas action is relevant to a broader analysis of Pennsylvania as an appropriate venue under § 1404, which I will proceed to undertake.

### B. 28 U.S.C. § 1404 does not support transfer

A federal district court may transfer a case pursuant to 28 U.S.C. § 1404 when three conditions are met: (1) the civil action could have been properly brought initially in the proposed transferee federal court; (2) transfer will be more convenient for both the parties and the witnesses; and (3) the transfer will be in the "interest of justice." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing to 28 U.S.C. § 1404(a)). "The decision to transfer is in the court's discretion," but "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). If a court considering transfer determines that a case could have been properly brought in another district, the court must then evaluate "all relevant factors," including "the private and public interests protected by the language of § 1404(a)," to determine if transfer is in the interest of justice. *Jumara*, 55 F.3d at 879. The party moving to transfer bears the burden to demonstrate that transfer is appropriate. *Id.* at 879.

Defendants can satisfy the first condition, as the action could have properly been brought in the Northern District of Texas, where the Defendants are based. The second and third conditions, however, pose greater and ultimately insurmountable challenges for Defendants to overcome. The Third Circuit has elaborated a non-exhaustive list of private and public interest

factors to consider in determining whether the latter two conditions are met, and I will consider each set of factors in turn.

### 1. *Private Factors*

As outlined by the Court of Appeals in *Jumara*, the non-exhaustive list of private interest factors includes:  (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that the files could not be produced in the alternative forum.  *Id.*

The first factor weighs heavily in favor of Plaintiff, as Plaintiff chose to bring suit here in the Eastern District of Pennsylvania.  Indeed, the *Jumara* Court explicitly held that "plaintiff's choice of venue should not be lightly disturbed."  *Id.*; *see also Shutte*, 431 F.2d at 25 (noting that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request").  Defendants try to overcome this strong presumption by arguing that a plaintiff's forum preference is owed less deference when suing on behalf of a class, citing *Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006), together with other district court opinions.  This principle has its roots in *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947), a derivative action brought by a policy-holding "member" of a mutual insurance company challenging transactions that allegedly diluted the policy's value.  In affirming a change of venue, the Court observed that the plaintiff was one of literally hundreds of other potential plaintiffs nationwide, and therefore less deference was owed to the choice of

11

his home state.  Here, in contrast, the lead plaintiffs are fiduciaries representing the interests of large groups of public employees, one of which, Allegheny County Employees' Retirement System, represents Pennsylvanians.  Given that, I am not persuaded to substantially discount the deference owed to its choice of forum.

The second *Jumara* factor—the defendant's preference—generally does little more than frame the issue, because there would be no motion to transfer *unless* the defendant prefers a different forum, and yet the defendant's preference is not accorded particular weight.  *Edwards v. Equifax*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018).  The controlling question is whether a combination of other factors is sufficient to overcome the presumption that the plaintiff's preference governs.  As the *Jumara* Court made clear, "[t]he burden of establishing the need for transfer still rests with the movant."  55 F.3d at 879 (citing *Shutte*, 431 F.2d 22).  Significantly, transfer is not warranted where the effect would be to shift inconvenience from defendant to plaintiff.  *See Punoose v. Equifax Info. Serv., LLC*, 2018 WL 2735403, at *2 (E.D. Pa. June 7, 2018); *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005); *Perry v. Markman Capital Mgmt., Inc.*, 2002 WL 31248038, at *9 (E.D. Pa. Oct. 4, 2002).

Plaintiff makes a strong showing as to the third factor, regarding where the claims arose.  Though it is true that some of Defendants' alleged false statements and misrepresentations originated from their headquarters in Dallas, it is also the case that much of the alleged conduct underlying the purportedly false statements would have taken place in Pennsylvania.  Moreover, Mariner East—the project that is the focus of Plaintiff's allegation—is owned and operated by

12

Sunoco Logistics Partners L.P. and its affiliates, a subsidiary of Energy Transfer that is headquartered in Pennsylvania. *See* ECF 22-2; Def. Sur-Reply at 4, ECF 32.

*Jumara*'s fourth factor requires consideration of the convenience of the parties in accordance with their respective financial conditions. Publicly available data for Energy Transfer as of December 2019 reflects that it is a vibrant financial entity,[4] and by definition it cannot claim that it lacks the resources required to litigate in Eastern Pennsylvania in light of the fact that it is pursuing a multibillion-dollar pipeline project here.

The fifth *Jumara* factor focuses on convenience of witnesses, but only to the extent that they might be unavailable for trial in the forum. It is well-established within the Third Circuit that a corporation "is obligated to procure the attendance of its own employees for trial." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 199 (E.D. Pa. 2008); *Am. High-Income Tr. v. AlliedSignal, Inc.*, 2002 WL 373473, at *5 (D. Del. Mar. 7, 2002); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Therefore "it is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight" given that they are less likely to be willing to travel beyond their home forum in order to testify. *New Century Fin., Inc. v. Oledix Techs., LLC*, 2013 WL 3245954, at *6 (S.D. Tex. June 25, 2013) (citation omitted); *accord Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb Inc.*, , at *5 (S.D.N.Y. June 5, 2006) (convenience for witnesses "arguably the most important in deciding transfer motions").

---

[4] *See* Energy Transfer LP's financial information as reported on Marketwatch, *available at* https://www.marketwatch.com/investing/stock/et (accessed online).

Consequently, this fifth *Jumara* factor also favors Plaintiff, who points to numerous witnesses involved in the project based in Pennsylvania, such as Commonwealth officials involved in the Mariner East permitting process.  Defendants attempt to reject these as "speculative" and irrelevant to proving elements of its securities fraud claims.  Plaintiff, however, has identified a number of these potential witnesses based on its review of the Mariner East Pennsylvania Department of Environmental Protection permit applications, relevant hearings surrounding the pipeline approval process, and assorted records.  Moreover, journalistic sources may have information that could reveal whether the alleged misrepresentations have occurred.  *See* Pl. Br. at 16-17, ECF 22.  Even though some of these witnesses are based in the Middle District of Pennsylvania, Philadelphia is far closer than Texas, and most if not all could be compelled to testify in these proceedings pursuant to Federal Rule of Civil Procedure 45(c), which governs the geographic boundaries of a court's subpoena powers.  In that regard, Harrisburg, the state Capitol, sits at the western edge of Dauphin County and falls within the 100-mile limit of the rule on a straight-line measurement.  In fact, the majority of Dauphin County lies within the zone subject to compulsory process.  In contrast, a district court sitting in Northern Texas could not compel live testimony.

Finally, any records in Texas could also easily be produced here, given the development of electronic discovery, and conversely Pennsylvania records would need to be produced there if transfer were granted.  Consequently, the private factors weigh in Plaintiff's favor.

### 2. Public Factors

*Jumara* also sets forth public factors courts should consider when determining whether to transfer a case:  (1) "the enforceability of the judgment"; (2) "practical considerations that could

14

make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

There is no issue with the enforceability of a judgment from this District given Texas' adoption of the Uniform Enforcement of Foreign Judgments Act.  Texas Civil Practice & Remedies Code § 35.003.

The practical considerations discussed above weigh against transfer given the presence of potentially key witnesses here in Pennsylvania, and the fact that the pending action there does not include federal securities claims also counsels against transfer.  As to court congestion, the Eastern District of Pennsylvania has a much smaller caseload serviced by a much larger bench.[5]

The fourth and fifth factors also weigh against transfer, as any corruption in connection with the project would be of intense local interest, and Pennsylvania has a strong public interest in having judges sitting here preside in cases alleging malfeasance involving the Commonwealth and its actors.  That interest cannot be limited to a single judicial district, as Defendants argue, because state corruption undermining the solvency of public employee pensions, if it occurred, is an issue that would reverberate across Pennsylvania.  And proper oversight of the Mariner East pipeline is an issue of specific concern in this district.

Finally, as Plaintiff brings federal claims, no questions of state law are at issue here.

---

[5] As of December 31, 2019, the Northern District of Texas had 16,089 pending cases with 12 judgeships, whereas the Eastern District of Pennsylvania had 8,704 pending cases with 22 active judgeships.  *Federal Court Management Statistics*, December 2019 (accessed online).

Consequently, consideration of both private and public interest factors under *Jumara* does not warrant transfer to the Northern District of Texas pursuant to § 1404(a).

**IV.      Conclusion**

For the reasons set forth above, Defendants' Motion to Transfer will be **DENIED**.  An appropriate Order follows.


          /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge

16