**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE, DENVER EMPLOYEES RETIREMENT PLAN, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS NATIONAL PENSION FUND, and IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:20-cv-00200-GAM |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| ENERGY TRANSFER LP, KELCY L. WARREN, JOHN W. MCREYNOLDS, THOMAS E. LONG, MARSHALL MCCREA, MATTHEW S. RAMSEY, MICHAEL J. HENNIGAN, and JOSEPH MCGINN | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

<u>**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT ........................................................................................................3

    A.    Plaintiffs' attempt to evade a statement-by-statement analysis of objective falsity fails. .........................................................................................3

    B.    A statement-by-statement analysis confirms that Plaintiffs have not alleged a single actionably misleading statement.....................................4

        1.    Category A: Plaintiffs have not sufficiently alleged that any of the statements about ME2's projected completion date or estimated capacity (Statements 1-13) were actionably misleading. ...........................4

            a.    Statement 1 .......................................................................4

            b.    Statements 2-8 ..................................................................9

            c.    Statements 9-13 ..............................................................10

        2.    Category B:  Plaintiffs have not sufficiently alleged that any of the factual statements regarding the construction of ME2 (Statements 14-20) were actionably misleading..........................................................12

        3.    Category C: Plaintiffs have not sufficiently alleged that any of the statements about the completion of construction of the Revolution Pipeline (Statements 21-26) were actionably misleading........................15

        4.    Category D: Plaintiffs have not sufficiently alleged that any of Energy Transfer's aspirational statements or company commitments to safety and legal compliance (Statements 27-44) were actionably misleading. ...................................................................16

            a.    Statements 27-37 ........................................................16

            b.    Statements 38-41 ........................................................19

            c.    Statements 42 and 43 .................................................22

            d.    Statement 44 ...............................................................24

         5.    Category E: Plaintiffs have not sufficiently alleged that any of Energy Transfer's statements about legal compliance (Statements 45-57) were actionably misleading..........................................................25

            a.    Statements 45-47 ........................................................25

            b.    Statements 48-54 ........................................................26

            c.    Statements 55-57 ........................................................28

    C.    Plaintiffs' Opposition does not refute the reasons the Complaint fails to adequately plead scienter as to any Defendant.....................................28

i

1.      The Opposition does not refute Defendants' arguments that the
        Complaint fails to adequately allege scienter as to any Individual
        Defendant................................................................................................29

        a.      Plaintiffs do not aver particularized facts sufficient to plead
                that any Individual Defendant acted with scienter with
                respect to any of the statements at issue. ......................................30

                i.      Plaintiffs have not sufficiently alleged that
                        Defendant McCrea acted with scienter............................31

                ii.     Plaintiffs have not sufficiently alleged that
                        Defendant Ramsey acted with scienter............................33

                iii.    Plaintiffs have not sufficiently alleged that
                        Defendant Long acted with scienter. ...............................33

                iv.     Plaintiffs have not sufficiently alleged that
                        Defendant Warren acted with scienter.............................34

                v.      Plaintiffs have not sufficiently alleged that
                        Defendant McReynolds acted with scienter. ...................34

                vi.     Plaintiffs have not sufficiently alleged that
                        Defendants Hennigan or McGinn acted with
                        scienter.............................................................................34

                vii.    Plaintiffs have not sufficiently alleged that Energy
                        Transfer's spokespeople acted with scienter. ..................35

        b.      Each of Plaintiffs' attempts to allege scienter without
                specific scienter allegations as to any Individual Defendant
                or other speaker fails....................................................................36

                i.      Plaintiffs do nothing to advance the scienter
                        calculus by relabeling their insufficient facts as "red
                        flags."...............................................................................36

                ii.     The investigation into third parties and since-
                        dismissed criminal charges do not advance the
                        scienter calculus..............................................................37

                iii.    Plaintiffs' core operations argument does not
                        advance the scienter calculus...........................................38

2.      Plaintiffs have not alleged scienter as to the corporate defendant—
        Energy Transfer. ..................................................................................38

D.      The Opposition does not demonstrate that the Complaint pleads loss
        causation. ..................................................................................................41

        1.      The Opposition fails to refute that the purported corrective
                disclosures did not reveal new information as to certain challenged
                statements. ............................................................................................41

                a.      Statements 2-8, 9-12, and 21-24.....................................42

          b.       Statements 15 & 16 ..............................................................43

          c.       Statements 27-37, 42-44 .....................................................44

          d.       Statements 36-37, 55-57 .....................................................46

      2.      The Opposition's authority on whether investigations alone adequately plead loss causation is not persuasive. ...................46

  E.     The Opposition does not save Plaintiffs' control person claims. ........................47

III.    CONCLUSION ............................................................................................49

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Abbott Labs.*,
   140 F. Supp. 2d 894 (N.D. Ill. 2001).........................................................27

*Audet v. Fraser*,
   2017 WL 4542386 (D. Conn. Oct. 11, 2017)...............................................48, 49

*Bd. of Tr. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Meckel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd* 475 F. App'x 353 (2d Cir. 2012) ......................31

*Bondali v. Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015).........................................................3, 4, 20

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
   543 F. App'x 72 (2d Cir. 2013).........................................................41

*City of Monroe Emps. Re. Sys. v. Bridgestone*,
   399 F.3d 651 (6th Cir. 2005).........................................................13, 19

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
   442 F. App'x 672 (3d Cir. 2011).........................................................29, 34, 40

*City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009) .........................................................31, 40

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988).........................................................11

*Commonwealth v. Sebek*,
   716 A.2d 1266 (Pa. Super. Ct. 1998) .........................................................28

*Dunkin Donuts Franchising LLC v. Claudia III, LLC*,
   2014 WL 12618097 (E.D. Pa. Dec. 5, 2014) .........................................................11, 44

*Durgin v. Sharer*,
   2017 WL 2214618 (C.D. Cal. Jan. 10, 2017).........................................................11

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .........................................................17

*Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*,
   905 F.3d 892 (5th Cir. 2018).........................................................17

*Fan v. StoneMor Partners LP*,
   927 F.3d 710 (3d Cir. 2019).........................................................9, 22, 24, 25

*Galati v. Commerce Bancorp, Inc.*,
   220 F. App'x 97 (3d Cir. 2007).........................................................13

*Gallagher v. Abbott Labs.*,
   269 F.3d 806 (7th Cir. 2001).........................................................27

*Gamm v. Sanderson Farms, Inc.*,
   944 F.3d 455 (2d Cir. 2019).........................................................25

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ......................................................................30, 35, 36

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019) ..............................................................38

*Hayes v. Gross*,
    982 F.2d 104 (3d Cir. 1992) ....................................................................................15

*Holwill v. AbbVie Inc.*,
    2020 WL 5235005 (N.D. Ill. Sept. 1, 2020)......................................................20, 21

*Howard v. Arconic Inc.*,
    395 F. Supp. 3d 516 (W.D. Pa. 2019) ...............................................................16, 19

*In re Able Labs. Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008) ..............................................................48

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004) ......................................................................................9

*In re Advanta Corp. Securities Litigation*,
    180 F.3d 525 (3d Cir. 1999), *overruled other grounds by Tellabs, Inc. v. Makor Issues*
    *& Rights, Ltd.*, 551 U.S. 308 (2007)..........................................................17, 31, 36

*In re Aetna, Inc. Securities Litigation*,
    2009 WL 1619636, at *20 (E.D. Pa. June 9, 2009)...................................................36

*In re Aetna, Inc. Securities Litigation*,
    617 F.3d 272 (3d Cir. 2010) ....................................................................................17

*In re Almost Family, Inc. Sec. Litig.*,
    2012 WL 443461 (W.D. Ky. Feb. 10, 2012)............................................................47

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018) ..................................................................5, 8

*In re Azurix Corp. Sec. Litig.*,
    198 F. Supp. 2d 862 (S.D. Tex. 2002).....................................................................14

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017) ....................................................................20

*In re Boston Tech., Inc. Sec. Litig.*,
    8 F. Supp. 2d 43 (D. Mass. 1998)..............................................................................3

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012).................................................................18, 19

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012)......................................................................19

*In re Braskem S.A. Sec. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) ....................................................................20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .............................................................................3, 22

*In re CenturyLink Sales Practices & Sec. Litig.*,
  403 F. Supp. 3d 712 (D. Minn. 2019) ...................................................................20

*In re China Organic Sec. Litig.*,
  2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013) ......................................................42

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) .......................................................20, 21

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  2020 WL 3026564 (D.N.J. June 5, 2020) .............................................................39

*In re Credit Suisse First Bos. Corp.*,
  431 F.3d 36 (1st Cir. 2005), *overruled other grounds by Tellabs, Inc. v. Makor Issues
  & Rights, Ltd.*, 551 U.S. 308 (2007) .......................................................................4

*In re CRM Holdings, Ltd. Sec. Litig.*,
  2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ......................................................45, 46

*In re Donald J. Trump Casino Sec. Litig. (Taj Mahal Litig.)*,
  7 F.3d 357 (3d Cir. 1993) ................................................................................9, 15

*In re Egalet Corp. Sec. Litig.*,
  340 F. Supp. 3d 479 (E.D. Pa. 2018) .....................................................................3

*In re Elecs. for Imaging, Inc. Sec. Litig.*,
  2019 WL 397981 (D.N.J. Jan. 31, 2019) .............................................................31

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017) ..................................................................20

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*,
  2015 WL 6039690 (D. Del. Oct. 15, 2015) ..........................................................23

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................................38

*In re GeoPharma, Inc. Sec. Litig.*,
  399 F. Supp. 2d 432 (S.D.N.Y. 2005) ..................................................................37

*In re Hertz Glob. Holdings Inc.*,
  905 F.3d 106 (3d Cir. 2018) .................................................................................29

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................32

*In re Massey Energy Co. Sec. Litig.*,
  883 F. Supp. 2d 597 (S.D.W. Va. 2012) ..............................................................18

*In re MGM Mirage Sec. Litig.*,
  2013 WL 5435832 (D. Nev. Sept. 26, 2013) ..........................................................8

*In re Moody's Corp. Sec. Litig.*,
  599 F. Supp. 2d 493 (S.D.N.Y. 2009) ..................................................................20

*In re N. Telecom Sec. Litig.*,
  116 F. Supp. 2d 446 (S.D.N.Y. 2000) ..................................................................30

*In re NAHC, Inc. Sec. Litig.*,
 306 F.3d 1314 (3d Cir. 2002) .............................................................................. 12

*In re Omnicare, Inc. Securities Litigation*,
 769 F.3d 455 (6th Cir. 2014) .............................................................................. 40

*In re Oracle Corp. Sec. Litig.*,
 627 F.3d 376 (9th Cir. 2010) ................................................................................ 3

*In re Plains All Am. Pipeline, LP Sec. Litig.*,
 307 F. Supp. 3d 583 (S.D. Tex. 2018), *aff'd* 777 F. App'x 726 (5th Cir. 2019) ............... 32, 36

*In re PTC Therapeutics, Inc. Sec. Litig.*,
 2017 WL 3705801 (D.N.J. Aug. 28, 2017) ............................................................. 31

*In re SCANA Corp. Sec. Litig.*,
 2019 WL 1427443 (D.S.C. Mar. 29, 2019) .............................................................. 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .......................................................... 20

*In re Tyson Foods, Inc. Securities Litigation*,
 155 F. App'x 53 (3d Cir. 2005) ...................................................................... 39, 40

*In re United Am. Healthcare Corp. Sec. Litig.*,
 2007 WL 313491 (E.D. Mich. Jan. 30, 2007) .......................................................... 27

*In re Vale S.A. Sec. Litig.*,
 2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ...................................................... 16, 18

*In re Wilmington Tr. Sec. Litig.*,
 852 F. Supp. 2d 477 (D. Del. 2012) ...................................................................... 3

*Janbay v. Canadian Solar, Inc.*,
 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................... 43

*Janus Capital Grp., Inc. v. First Derivative Traders*,
 564 U.S. 135 (2011) ........................................................................................ 23

*Katyle v. Penn Nat'l Gaming, Inc.*,
 637 F.3d 462 (4th Cir. 2011) .................................................................... 41, 43, 44

*Katz v. Image Innovations Holdings, Inc.*,
 542 F. Supp. 2d 269 (S.D.N.Y. 2008) ............................................................... 48, 49

*Khan v. Ocwen Fin. Corp.*,
 2017 WL 590262 (E.D. Pa. Feb. 13, 2017) ..................................................... 13, 28, 40

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
 128 F. Supp. 3d 792 (S.D.N.Y. 2015) .................................................................... 46

*Lloyd v. CVB Fin. Corp.*,
 811 F.3d 1200 (9th Cir. 2016) ............................................................................. 46

*Loos v. Immersion Corp.*,
 762 F.3d 880 (9th Cir. 2014) .............................................................................. 46

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998) ................................................................31

*Manley v. Fitzgerald*,
  997 A.2d 1235 (Pa. Commw. Ct. 2010) ............................................28

*Martin v. GNC Holdings, Inc.*,
  2017 WL 3974002 (W.D. Pa. Sept. 8, 2017) ...............................46, 47

*Martin v. GNC Holdings, Inc.*,
  757 F. App'x 151 (3d Cir. 2018)................................................31, 33, 38

*Mauss v. NuVasive, Inc.*,
  2014 WL 4161431 (S.D. Cal. Aug. 19, 2014)..............................6, 22, 23

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .........................................................46

*Miller v. Material Sciences Corp.*,
  9 F. Supp. 2d 925 (N.D. Ill. 1998).....................................................37

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ..............................................30, 31

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
  54 F.3d 1424 (9th Cir. 1995).............................................................40

*OFI Asset Mgmt. v. Cooper Tire & Rubber Co.*,
  834 F.3d 481 (3d Cir. 2016) ..............................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015) ...............................................................passim

*Ong. v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ...............................................16

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
  142 F. Supp. 2d 589 (D.N.J. 2001)....................................................37

*Pa. Ave. Funds v. Inyx Inc.*,
  2010 WL 743562 (S.D.N.Y. Mar. 1, 2010)..........................................36

*Police & Fire Ret. Sys. of Detroit v. Plains All Am. Pipeline, LP*,
  777 F. App'x 726 (5th Cir. 2019).......................................................11

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014).............................................................46

*Raab v. Gen. Physics Corp.*,
  4 F.3d 286 (4th Cir. 1993)...........................................................16, 23

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017)......................................................14, 20

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001)..............................................................1, 3

*Roofer's Pension Fund v. Papa*,
   2018 WL 3601229 (D.N.J. July 27, 2018) ...................................................30

*Savior Assocs. v. Goncalves*,
   2013 WL 3026257 (S.D. Fla. Apr. 8, 2013) .............................................12

*Schiro v. Cemex, S.A.B. de C.V.*,
   438 F. Supp. 3d 194 (S.D.N.Y. 2020) ....................................................25

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ......................................................................9

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992) ....................................................................12

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) .......................................................1, 39, 40

*Special Situations Fund III QP, LP v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014) .....................................................37

*Spizzirri v. Zyla Life Scis.*,
   802 F. App'x 738 (3d Cir. 2020) ..............................................................3

*Steamfitters Local 49 Pension Fund v. Alter*,
   2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ...................................48, 49

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016 .............................................................passim

*Utesch v. Lannett Co.*,
   385 F. Supp. 3d 408 (E.D. Pa. 2019) ................................................4, 47

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) ......................................................................3

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ...........................................................13, 14, 34

*Witriol v. Conexant Sys., Inc.*,
   2006 WL 3511155 (D.N.J. Dec. 4, 2006) ..............................................36

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
   379 F. Supp. 3d 164 (E.D.N.Y. 2019) ...............................................41, 44

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...............................................................................1, 3

15 U.S.C. § 78u–4(b)(2) ..................................................................................36

**Rules**

17 C.F.R. § 240.10b-5 .............................................................................passim

E.D. Pa. Local Rule 7.1(c) ...............................................................................13

Fed. R. Civ. P. 15(a)(1)(B) .................................................................................................11, 44

Fed. R. Civ. P. 9(b) ...........................................................................................................25, 31

**Other Authorities**

Claire Sasko, "*I'm Terrified": Life on the Front Lines of the Sunoco Pipeline*,
    PHILLYMAG (Mar. 22, 2018) .........................................................................................24

*DEP Issues Compliance Order to ETC for Violations on Revolution Pipeline*,
    PENNSYLVANIA NEWSROOM (Oct. 30, 2018),
    https://www.media.pa.gov/Pages/DEP_details.aspx?newsid=1091.........................................45

Kris Mamula & Anya Litvak, *Officials Believe Landslide May Have Triggered Massive
    Gas Pipeline Explosion in Beaver County*, PITTSBURGH POST-GAZETTE (Sept. 10,
    2018), https://www.post-gazette.com/local/west/2018/09/10/gas-explosion-in-center-
    township-Beaver-County/stories/201809100067 ....................................................................22

Mariner East II, Department of Environmental Protection (2020),
    https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-
    Portal/Pages/Mariner-East-II.aspx (last visited Oct. 29, 2020)...............................................37

## I.    INTRODUCTION

Plaintiffs' sprawling, 103-page Opposition to Defendants' Motion to Dismiss engages in a tedious rehash of their Complaint.[1]   Plaintiffs appear to believe that if they bog down their pleadings with a recapitulation of every news article about Energy Transfer's Mariner East projects and every allegation from cases against Energy Transfer under wholly unrelated laws, they will be able to wear down the Court and obscure the lack of actual merit to their claims.   This is a common tactic in securities litigation, but it is just as commonly rejected.   The PSLRA's heightened pleading "requirements are not satisfied merely by making a complaint long."  *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).   "A complaint can be long-winded, even prolix, without pleading with particularity . . . [i]ndeed, such a garrulous style is not an uncommon mask for an absence of [relevant] detail." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).   Such is the case here.   As the Opening Brief explains, after cutting through Plaintiffs' swaths of repetitious (and often irrelevant) detail, it is clear that Plaintiffs have failed to adequately allege a 10b-5 claim for three primary reasons.

*First*, Plaintiffs have not identified an actionably misleading statement of fact.   Indeed, Plaintiffs begin their Opposition by suggesting that they can survive dismissal without identifying any particular statement that was materially misleading.   This position is directly contradicted by the PSLRA, which requires securities plaintiffs to "specify each allegedly misleading statement [and] why the statement is misleading" in order to state a claim for investor deception.  15 U.S.C. § 78u-4(b)(1).   Thus, to survive dismissal, Plaintiffs were required to plead particularized facts showing that specific statements were materially misleading to investors.   Plaintiffs' argument

---

[1] Capitalized terms not otherwise defined herein have the meanings used in the Memorandum of Law in Support of Defendants' Motion to Dismiss (Dkt. No. 44-2) (filed Aug. 14, 2020) ("Opening Brief" or "MTD Br.").

centers on the allegation that the Mariner East project was plagued with operational challenges and mistakes.  But this is a securities fraud action, not a negligence suit seeking to recover for purported operational mismanagement.  In this context, it is not enough to allege that Energy Transfer encountered problems or made operational mistakes.  Rather, such facts are relevant only if they render a specific statement materially misleading.  Here, none of the statements at issue denies the existence of the various challenges Plaintiffs allege.  Thus, Plaintiffs have not adequately alleged that Defendants' statements were misleading, and the Complaint should be dismissed.

*Second*, Plaintiffs have not sufficiently alleged that any of the makers of the statements at issue spoke with an intent to deceive.  Indeed, the Complaint and the Opposition are remarkable for how little they say about the state of mind of any speaker, especially in light of Plaintiffs' heightened pleading burden under the PSLRA.  Instead, Plaintiffs rely nearly exclusively on the job titles of the Individual Defendants to suggest that they "must have known" of various facts that Plaintiffs contend undermine the statements at issue.  But the Third Circuit has squarely rejected such a scienter-by-title approach and made clear that, to sufficiently allege scienter, a plaintiff must allege specific facts showing which corporate officer learned what facts, from what source, on what date.  Since the Complaint here utterly fails to do so, it should be dismissed for failing to allege scienter.

*Third*, Plaintiffs fail to connect the revelation of the facts they claim the statements at issue concealed from investors to the losses investors purportedly suffered.  Instead, as to many of these statements, the same information Plaintiffs contend was concealed was expressly disclosed long before any purported "corrective disclosure" occurred.  Accordingly, Plaintiffs' claims should be dismissed for the additional reason that Plaintiffs have failed to sufficiently allege loss causation.

For each of these reasons, and for the additional reasons set forth in the Opening Brief, Plaintiffs have failed to state a claim upon which relief may be granted, and this Court should dismiss the Complaint with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs' attempt to evade a statement-by-statement analysis of objective falsity fails.

"The heightened pleading requirements of the Private Securities Litigation Reform Act are an unusual deviation from the usually lenient requirements of federal rules pleading." *Ronconi*, 253 F.3d at 437.  As the Third Circuit has recognized, to state a § 10(b) claim in accordance with the PSLRA, a plaintiff must "*specify* each allegedly misleading statement, why *the statement* is misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017) (emphasis added) (citing 15 U.S.C. § 78u-4(b)(1)).[2]  In other words, "the PSLRA requires plaintiffs to address the way in which each individual statement is false or misleading."  *In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012).  It "is not the law that a 10b-5 complaint is to be judged on the basis of the general flavor derived from an issuer's collective statements over a long period of time."  *In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 55-56 (D. Mass. 1998); *Bondali*, 620 F. App'x at 491 ("Other circuits do *not* forego a statement-by-statement analysis of

---

[2] *See also In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 505 (E.D. Pa. 2018)  (same), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1430 (3d Cir. 1997) ("[A] Section 10(b) plaintiff ordinarily is required to identify a *specific statement* made by the company and then explain either (1) how *the statement* was materially misleading or (2) how it omitted a fact that made *the statement* materially misleading." (emphasis added)); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 492 (6th Cir. 2015) ("As the Ninth Circuit has explained, the complaint 'must demonstrate that a *particular statement*, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression.'" (emphasis added) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010)).

objective falsity in favor of analyzing the overall impression made by a set of statements.").

Accordingly, Plaintiffs' apparent suggestion that they can survive dismissal without "demonstrat[ing] that a particular statement," read in context, "conveyed a false or misleading impression" is incorrect. *Bondali*, 620 F. App'x at 491; *cf.* Opp. at 27-28.[3]  Rather, the Court should undertake "a statement-by-statement analysis based on the state of affairs extant at the time the [statement] was rendered" to determine whether Plaintiffs have alleged any statements that are actionably misleading and dismiss from the Complaint each statement that does not meet this standard. *In re Credit Suisse First Bos. Corp.*, 431 F.3d 36, 49 (1st Cir. 2005) (citing *Boston Tech.*, 8 F. Supp. 2d at 55), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).[4]  "This is as it should be: the securities laws and section 10(b) in particular were designed to provide a damages remedy for losses incurred as a result of false or misleading statements, not to punish defendants for [purported] bad behavior in a vacuum." *Id.* at 54.

**B.**   **A statement-by-statement analysis confirms that Plaintiffs have not alleged a single actionably misleading statement.**

**1.**   **Category A: Plaintiffs have not sufficiently alleged that any of the statements about ME2's projected completion date or estimated capacity (Statements 1-13) were actionably misleading.**

**a.**   **Statement 1**

Statement 1 expresses Energy Transfer's expectation on May 10, 2018, that ME2 would

---

[3] Plaintiffs' lone citation to caselaw on this point does not suggest otherwise. *See* Opp. at 28 (citing *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 418 (E.D. Pa. 2019)).  *Utesch* merely suggests that in evaluating individual statements, the context of the statement should be considered (a point which Defendants also argued in the Opening Brief), and then proceeds to analyze the falsity *of particular statements. See Utesch*, 385 F. Supp. 3d at 418 ("[T]he Complaint meets that standard [of alleging falsity] *with respect to the statement*: [quoting particular statement at issue]" (emphasis added)).

[4] *See also Credit Suisse*, 431 F.3d at 54 ("In a securities fraud case, the plaintiffs [] must carry the burden, imposed by the PSLRA, of pleading facts sufficient to show that the particular statements sued upon were false or misleading when made.").

enter service in the "mid to late" third quarter of 2018.  In an effort to show that this statement was actionably misleading, the Opposition makes several failed arguments.

*First*, Plaintiffs argue that Defendants' in-service date projections for ME2 "do not constitute opinion statements under *Omnicare*."  Opp. at 42.  But, as the Opening Brief explains, statements "that 'express expectations about the future rather than presently existing, objective facts' are [] statements of opinion."[5]

The Opposition neither distinguishes this authority nor cites to a single case in which an expectation about the future was found to not be an opinion under *Omnicare*.  Instead, Plaintiffs argue that statements like Statement 1 cannot be opinions because they do not contain "opinion qualifiers."  Opp. at 42.  But, to qualify as an opinion statement under *Omnicare*, a statement is not required to contain magic words.  Rather, under *Omnicare*, any statement that expresses a "belief" or a "view," as opposed to "an actual happening," is classified as a statement of opinion. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1325 (2015).  A company's statement of "expectations about the future rather than presently existing, objective facts," qualifies as an opinion under that standard.  *Aratana*, 315 F. Supp. 3d at 758. Moreover, even if "opinion qualifiers" were required, Statement 1 was a response to a question about "when in the third quarter [Energy Transfer] *expect*[*ed*] the project to enter service," *see* Statement 1 (emphasis added), and in the context of Energy Transfer's express warnings to investors that its pipeline projects "*may not* be completed on schedule."  *See* MTD Br. at 10 (emphasis added).  In this context, reasonable investors reading Statement 1—or any of the other statements at issue about ME2's expected in-service date—would understand that such statements

---

[5] MTD Br. at 8 (quoting *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018)); *see also Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (analyzing statements of expected approval timelines for pharmaceutical product as opinions under *Omnicare*).

were opinions, not expressions of certainty.  *See Omnicare*, 135 S. Ct. at 1325.

*Second,* Plaintiffs contend that the opinion expressed in Statement 1—that ME2 would "enter service" in the "mid to late" third quarter of 2018—is actionable under the *Omnicare* standard because it omitted "(1) the known risks the Partnership ignored in constructing the Pipeline Projects, such as the geological features where Energy Transfer planned to use HDD and the likelihood of subsidence events; (2) Energy Transfer's misconduct in obtaining the pipeline permits and intimidation of residents during construction; and (3) the significant obstacles the Partnership faced in constructing the Pipeline Projects."  Opp. at 28; ¶ 359 (paragraph of Complaint listing the reasons Statement 1 was misleading).[6]  As an initial matter, because Statement 1 concerns ME2's projected in-service date—and not the propriety of Energy Transfer's conduct in obtaining permits or hiring security guards—Plaintiffs' contentions that Defendants engaged in "misconduct in obtaining the pipeline permits" and "intimidation of residents during construction" are irrelevant and cannot render Statement 1 actionably misleading.  Plaintiffs are thus left to argue that Statement 1 was materially misleading because it failed to disclose "risks" and "obstacles" that Energy Transfer would face in completing ME2 on Statement 1's projected timeline.  Opp. at 28; *see also* ¶ 359.  In other words, Plaintiffs' "case essentially boils down to an allegation that the statements were misleading for failure to include a fact that would have potentially undermined Defendants' optimistic projections."  *Tongue*, 816 F.3d at 212.  "But *Omnicare* imposes no such disclosure requirements on issuers."  *Id*.

For example, in *Tongue*, the Second Circuit Court of Appeals considered whether a

---

[6] Plaintiffs are limited to arguing that Statement 1 is false for the reasons listed in ¶ 359.  *See Mauss v. NuVasive, Inc.,* 2014 WL 4161431, at *6 (S.D. Cal. Aug. 19, 2014) (dismissing complaint as impermissibly "puzzle plead[ed]" where "[b]y separating the statements from the alleged reasons for their falsity, Plaintiff has placed the burden on Defendants and the court to 'match up' the lengthy allegations in order to consider the merits of Plaintiff's claims. Over a 93-page FAC, this would prove to be quite an onerous and speculative task, particularly given the possibility that individual statements may or may not implicate more than one of Plaintiff's many allegations regarding falsity.").

pharmaceutical company's statements of opinion "projecting FDA approval [of a new drug] in late 2012 were materially misleading" under the *Omnicare* standard. *Id.* at 211. Similar to Plaintiffs' contentions here, the plaintiffs in *Tongue* argued that the issuer's projected completion timelines were misleading because they failed to disclose certain risks and difficulties the company would face in meeting that timeline. *See id.* Most notably, the FDA had repeatedly provided the company with negative feedback about its study methodology for the drug, and the company had not communicated those concerns to the market. *Id.* The Second Circuit found this insufficient to state a claim under the *Omnicare* standard. *Id.* at 211-12. It acknowledged that "[c]ertainly, [investors] would have been interested in knowing about the FDA feedback, and perhaps would have acted otherwise had the feedback been disclosed." *Id.* at 212. But, under *Omnicare*, investors "were not entitled to so much information as might have been desired to make their own determination about the likelihood of FDA approval by a particular date." *Id.*

So it is here, too. Indeed, if anything, Plaintiffs' claims here are even weaker than those that failed to withstand dismissal in *Tongue*. For, as the Opening Brief explains, while Plaintiffs point to construction "risks" and "obstacles" facing ME2, those issues all arose in 2016 and 2017—months before Statement 1 was made—and Plaintiffs do not provide any allegations suggesting that these issues were not taken into account in Statement 1, which was issued in May 2018 and revised Energy Transfer's early, more optimistic projections. *See* MTD Br. at 9.[7] Plaintiffs, tellingly, do not address this timing issue at all in the Opposition.[8]

---

[7] *See also* Opp. at 40 (pointing to "the [October 2017] HDD Report on the site near Lisa Drive provided by GES (¶¶ 144-147), the [November 2016] sinkhole warning from Tetra Tech received in connection with the GES evaluation (¶ 146), and the July 17, 2017 warning from public water utility company Aqua to avoid the use of HDD (¶ 155)").

[8] Plaintiffs also suggest that Statement 1 and the other projections of in-service dates for ME2 are actionable under *Omnicare* because they "could not have been sincerely held." Opp. at 42. But Plaintiffs allege nothing whatsoever about the Speaking Defendants' subjective state of mind to support this contention. *See id.* Instead, this contention is merely a repackaging of their primary *Omnicare* argument—that the opinions were objectively undermined by

*Third*, Plaintiffs claim that "[c]ases considering remarkably similar allegations" demonstrate that Statement 1 is actionable.  Opp. at 37.  The only such cases Plaintiffs cite, however, are a pre-*Omnicare* district court decision out of the District of Nevada (*In re MGM Mirage Sec. Litig.*, 2013 WL 5435832 (D. Nev. Sept. 26, 2013)) and a 2019 decision out of the District of South Carolina (*In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443 (D.S.C. Mar. 29, 2019)).  The *MGM* case, because it was decided before *Omnicare*, does not inform how *Omnicare* should apply here.  And the *SCANA* case involves a dissimilar situation.  Specifically, in *SCANA* the court found a company's project completion estimates misleading because the company had received a report from its engineering consultant expressly warning that the estimate "should be adjusted by eighteen to twenty-six months."  *SCANA*, 2019 WL 1427443, at *2.  Here, Plaintiffs identify no such report directly addressing Energy Transfer's expected in-service dates for ME2.  Instead, Plaintiffs point to mere "risks" and "obstacles," which do not suffice to render a statement of opinion misleading under *Omnicare*.  *See Tongue*, 816 F.3d at 212.  Thus, even if *SCANA*'s reasoning were persuasive—and it is not—that reasoning is not applicable here.

*Fourth*, Plaintiffs make two failed arguments that Defendants' in-service projections for ME2 are not protected under the bespeaks caution doctrine.  *See* Opp. at 43-44.  First, they argue that Energy Transfer's in-service projections for ME2 were not forward-looking because they were "based on facts that existed at the time they were made."  Opp. at 43.  This is a non-sequitur.  All

---

undisclosed "risks" and "obstacles."  *See id.* (basing their speculation about the Speaking Defendants' sincerity on "the extensive deficiencies identified in the permitting process and the massive problems encountered during construction of ME2").  Even if Plaintiffs had sufficiently alleged the Speaking Defendants' knowledge of these facts (and they have not), knowledge of facts that are not sufficient to render an opinion misleading under *Omnicare*'s objective falsity standard are, *a fortiori*, not sufficient to establish that those opinions "could not have been sincerely held" subjectively.  *See Aratana*, 315 F. Supp. 3d at 754 (to allege that a speaker did not sincerely hold an opinion, "[i]t is not sufficient . . . to allege that an opinion was unreasonable, irrational, excessively optimistic, [or] not borne out by subsequent events." (citation omitted)).

forward-looking statements (except, perhaps, rank speculation) are based on existing facts and such statements are routinely dismissed under the bespeaks caution doctrine.[9]

In addition, Plaintiffs contend that Energy Transfer's cautionary language was not sufficient to trigger the protection of the bespeaks caution doctrine. Opp. at 44 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 182 (3d Cir. 2000)). But, for the doctrine to apply, the Third Circuit merely "requires that the language bespeaking caution relate directly to that by which plaintiffs claim to have been misled." *Semerenko*, 223 F.3d at 182. Here, Energy Transfer expressly warned investors that its pipeline projects involved complex risks and obstacles such that "[i]f ETP undertakes these projects, ***they may not be completed on schedule***." *See* MTD Br. at 10-11.[10] Because such "cautionary statements relate directly to the claim on which plaintiffs allegedly relied," Plaintiffs' "allegations regarding the forward-looking statements must also succumb to the motion to dismiss." *Adams Golf*, 381 F.3d at 279.[11]

### b. Statements 2-8

Statements 2 through 8 pre-date Statement 1 and give earlier expected in-service dates for ME2 than the one stated in Statement 1. *See* MTD Br. at 11-12. As Defendants explained in the

---

[9] *See, e.g., In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 275 (3d Cir. 2004) (finding statements about anticipated demand to be protected by the bespeaks caution doctrine despite claim that they omitted to mention an existing oversupply of products); *In re Donald J. Trump Casino Sec. Litig. (Taj Mahal Litig.)*, 7 F.3d 357, 369, 373-74 (3d Cir. 1993) (statement "[t]he Partnership believes that funds generated from the operation of the Taj Mahal will be sufficient to cover all of its debt service (interest and principal)" was protected by the bespeaks caution doctrine even though plaintiffs alleged it misleadingly omitted existing facts).

[10] Moreover, as *Tongue* recognizes, even without such express warnings, reasonable investors are aware "that projections provided by issuers are synthesized from a wide variety of information, and that some of the underlying facts may be in tension with the ultimate projection set forth by the issuer." *Tongue*, 816 F.3d at 211. And investors in an oil pipeline company would be "well accustomed to the 'customs and practices of the relevant industry,'" and "would fully expect" that the company would face "risks" and "obstacles" in achieving its projected in-service dates. *See id*. This context likewise undercuts Plaintiffs' claim that investors were duped into thinking that there were no "risks" or "obstacles" that Energy Transfer would have to overcome to meet its projected in-service dates. *See id*.

[11] *See also Fan v. StoneMor Partners LP*, 927 F.3d 710, 716-17 (3d Cir. 2019) (holding that disclosures in SEC filings "would alert reasonable investors to the real business risks facing" a company and thus "rendered immaterial" alleged misstatements).

Opening Brief, Plaintiffs cannot claim to have been harmed by these earlier projections because, long before any alleged "corrective disclosure" occurred, Energy Transfer revised these projections through Statement 1.  *See id.*

In response, Plaintiffs argue that "the link between [Statements 2 through 8] and Plaintiffs' losses was not severed" by Statement 1 because Statement 1 "still concealed from investors . . . that reaching their stated deadlines . . . was impossible."  Opp. at 38 n.19.  This is incorrect.  Far from "conceal[ing]" from investors that Energy Transfer would not meet its previously stated in-service dates, Statement 1 expressly *reveals* this fact by providing a new, revised projection.  Thus, because Statement 1's projection was not actionably misleading, none of the prior projections given in Statements 2 through 8 can be either.  *See* MTD Br. at 11-12 & n.16 (collecting authorities, which Plaintiffs do not distinguish).

Moreover, even before they were superseded by Statement 1, Statements 2 through 8 were not materially misleading under the *Omnicare* standard.  Plaintiffs' argument that they were relies on the same "risks" and "obstacles" that they claim render Statement 1 misleading.  Opp. at 28; ¶ 359.  As explained above, however, "*Omnicare* does not impose liability merely because an issuer failed to disclose information that ran counter to an opinion expressed in [a public] statement." *Tongue*, 816 F.3d at 212.  Statements 2 through 8 would thus not be actionable even if they had not been revised by Statement 1.  *See* MTD Br. at 11-12.

### c.    Statements 9-13

Statements 9 through 13 express Energy Transfer's expectation that ME2 would have an "[i]nitial capacity of 275,000 barrels per day with upside of up to 450,000 barrels per day."  The

last of these statements is included in an investor presentation, unattributed to any speaker,[12] for a conference that occurred on June 19, 2018.  *See* Statement 13.   In the Complaint, Plaintiffs suggested that this statement was false because "on July 3, 2018, the press reported that Energy Transfer and Sunoco were planning to pump NGLs through an existing 12-inch pipeline that was being used to flow petroleum products in some sections of Delaware and Chester counties, where the new Mariner East pipelines were still under construction."  ¶¶ 171, 359.  In the Opening Brief, Defendants pointed out that merely pleading a subsequent decision to use smaller pipe (which Plaintiffs had speculated occurred in "mid-to-late June 2018") was not sufficient to show that earlier statements were false when made.  *See* MTD Br. at 12-13.

In an attempt to remedy this deficiency, Plaintiffs now point to an unpled document that indicates that Energy Transfer filed a notification with PHMSA to begin utilizing the smaller pipe on June 15, 2018.  *See* Opp. at 14.  However, even if this unpled document could be considered at this stage,[13] it would not be sufficient to render Statement 13 actionably misleading.   This is because, while Plaintiffs contend that Statement 13 was misleading because it concealed Energy Transfer's plan to use the smaller pipeline to complete ME2, *see* ¶ 359, Plaintiffs also concede that **this same fact** was revealed to investors just days later on July 3, 2018, *see* ¶ 171 ("[O]n July 3, 2018, the press reported that Energy Transfer and Sunoco were planning to pump NGLs through

---

[12] The unattributed nature of Statements 9-13 makes them particularly inapt candidates to serve as the basis for a securities fraud claim.  After all, Plaintiffs cannot claim that the speaker of these statements made them with scienter when they do not identify a speaker at all.  *See* MTD Br. at 44; *see also Police & Fire Ret. Sys. of Detroit v. Plains All Am. Pipeline, LP*, 777 F. App'x 726, 731 (5th Cir. 2019)  (dismissing unattributed statements on this basis). Tellingly, the Opposition makes no response to this argument.

[13] It cannot.  Plaintiffs had an opportunity to amend their Complaint following the filing of Defendants' Motion to Dismiss in order to plead this fact.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Having declined to exercise this right, they must stand on their Complaint as pled.  *See Dunkin Donuts Franchising LLC v. Claudia III, LLC*, 2014 WL 12618097, at *2 (E.D. Pa. Dec. 5, 2014) (McHugh, J.) (citing *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")); *see also Durgin v. Sharer*, 2017 WL 2214618, at *4 (C.D. Cal. Jan. 10, 2017) ("Even documents properly subject to judicial notice, such as SEC filings, cannot be used to amend the Complaint.") (collecting cases).

an existing 12-inch pipeline that was being used to flow petroleum products in some sections of Delaware and Chester counties, where the new Mariner East pipelines were still under construction.").  As the July 3, 2018 announcement occurred well before any alleged corrective disclosure, the announcement superseded Statement 13 and severs any link between Statement 13 and Plaintiffs' purported losses.  *See* MTD Br. at 11-12 n.16.  In an attempt to avoid this result, Plaintiffs insinuate that the July 3, 2018 announcement was insufficient to supersede Statement 13 because it did not provide investors with a new capacity estimate.  *See* Opp. at 14-15.  But Plaintiffs have not alleged facts sufficient to establish that Energy Transfer *had* a new capacity estimate at this time, and thus Energy Transfer cannot be accused of "omitting" it.[14]

Statements 9 through 12, which were made before Statement 13, were also superseded by the July 3, 2018 report and are inactionable for the same reasons.  In addition, Plaintiffs' unpled fact about Energy Transfer's June 15, 2018 PHMSA application is irrelevant to Statements 9 through 12, because they were all made before June 15, 2018, and "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002); MTD Br. at 12-13.  Finally, Plaintiffs' contention that these statements are actionable because Defendants should have surmised that completing the pipeline at its planned capacity was "impossible" is simply a rehash of its *Omnicare* argument made about Statement 1 and fails for the same reasons.  *See* MTD Br. at 13.

        **2.**       **Category B:  Plaintiffs have not sufficiently alleged that any of the factual statements regarding the construction of ME2 (Statements 14-**

---

[14] *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992) (because plaintiffs had not "allege[d] that defendants possessed or made forecasts [of certain] possible outcomes" there could be "no allegation that defendants omitted [them]"); *Savior Assocs. v. Goncalves*, 2013 WL 3026257, at *4 (S.D. Fla. Apr. 8, 2013) ("The law does not require disclosure of facts that do not exist.").

**20) were actionably misleading.**

Statements 14 through 20 receive little attention in the 103-page Opposition.  Indeed, the section of the Opposition concerning whether Plaintiffs have adequately pled falsity never addresses five of these statements (Statements 15 through 18 and Statement 20) at all.  As a result, Plaintiffs should be deemed to have abandoned their contention that these five statements were actionably misleading.  *See Khan v. Ocwen Fin. Corp.*, 2017 WL 590262, at *2 n.3 (E.D. Pa. Feb. 13, 2017) (dismissal appropriate under E.D. Pa. Local Rule 7.1(c) where plaintiff failed to address arguments and collecting cases holding same).[15]

As to Statement 14, Plaintiffs focus primarily on its second paragraph, which states that "[a] minimum amount of work will be required to change [the smaller, existing] line from a refined products line to a NGL pipeline . . . which can be done quickly and safely."  Opp. at 46.  As the Opening Brief points out, however, Plaintiffs never allege any facts that would suggest this statement was untrue.  Nowhere, that is, does the Complaint allege anything about the amount of work that would be required to change the existing pipe to an NGL line or whether *that work* could be done quickly and safely.[16]  Accordingly, the second paragraph of Statement 14 is not actionable. *See Winer*, 503 F.3d at 330 ("Liability [cannot] exist under Rule 10b-5 . . .  for statements that are simply incomplete.").   To the extent Plaintiffs take issue with the portion of Statement 14

---

[15] In any event, however, as the Opening Brief explains, the Complaint falls far short of alleging that these statements were actionably misleading.  MTD Br. at 14-16.  The Complaint's contention that Statements 15 through 18 were misleading actually amounts to a contention that, while they were true, they did not include additional information about their subjects.  As the Third Circuit has made clear, this is not sufficient to render a statement actionable under Section 10(b) or Rule 10b-5.  *See Winer Family Tr. v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007) (the requirements of the securities laws do "not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise").  Likewise, Statement 20 is not controverted by any facts alleged in the Complaint.  *See* MTD Br. at 16.

[16] Even if they had, this paragraph of Statement 14 would be inactionable puffery because neither "minimum amount of work" nor "quickly and safely" provides "a standard against which a reasonable investor could expect them to be pegged."  *City of Monroe Emps. Ret. Sys. v. Bridgestone*, 399 F.3d 651, 671 (6th Cir. 2005); *Galati v. Commerce Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007) (finding statements touting "'dramatic deposit growth,' 'strong performance,' and 'unique [] business model'" to be immaterial puffery).

indicating that the use of this pipeline would "allow [Energy Transfer] to meet [its] customer obligations to get natural gas liquids to the Marcus Hook Industrial Complex," this fails for the same reason. Plaintiffs have not alleged that the use of the existing pipeline would not allow Energy Transfer to meet such customer obligations, and Plaintiffs' mere desire for additional facts (like a numerical capacity estimate) is not sufficient to render Statement 14 actionable. *See id.* at 330 (rejecting claim that a press release was misleading because it announced the existence of a joint venture without revealing that a prior venture with the same partner "had been disastrous"); MTD Br. at 14-15.

Statement 19 is a comment from an investor call in which Defendant McCrea states that, while Energy Transfer and the entire industry had been facing "unprecedented challenges," "with Matt Ramsey and his team we're doing everything we can to work with the PA DEP and to get all the HDDs completed and on time." As the Opening Brief points out, because investors do not base investment decisions on an issuer's vague statements that it is working hard, Statement 19 is immaterial. *See* MTD Br. at 15-16 (quoting *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 888 (S.D. Tex. 2002) (so holding)). Plaintiffs offer no response to this in their brief. Instead, they merely argue that Statement 19 was untrue. *See* Opp. at 47. But to be actionable a statement must be *both* material and misleading.[17] And, in any event, Statement 19 was not misleading. Plaintiffs contend that it was because Energy Transfer had purportedly committed "significant permit violations related to HDD during the planning for and construction of the Pipeline Projects." Opp. at 49. But this has no bearing on the truth of Statement 19, which merely states that Energy

---

[17] *See, e.g., Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1279 (9th Cir. 2017) ("[E]ven if the complaint adequately alleged the existence of a misrepresentation or a misleading omission, it would not have been actionable, as it was immaterial.").

Transfer was currently working hard with PA DEP to complete its HDDs.  Accordingly, Statement 19 is not actionable.[18]

> **3.**   **Category C: Plaintiffs have not sufficiently alleged that any of the statements about the completion of construction of the Revolution Pipeline (Statements 21-26) were actionably misleading.**

Statement 25 is a February 2018 announcement stating that, on Energy Transfer's "Revolution project, construction is mechanically complete, and will go into full service once Rover and Mariner East are in service."  Plaintiffs allege no facts indicating that construction of Revolution was not complete at the time this statement was made.  Instead, Plaintiffs' only allegation of falsity relating to this statement is that "the Energy Transfer Companies had constructed the Revolution pipeline in landslide-prone areas and without adequate best practices or protective measures, despite repeated warnings to the contrary."  ¶ 352.  But "[i]t is well-established that the securities laws do not create liability for breaches of fiduciary duty or mismanagement."  *Taj Mahal Litig.*, 7 F.3d at 376.  For Statement 25 to be actionable, Plaintiffs were required to plead facts showing it was misleading or untrue—not just that it discussed a project that was purportedly mismanaged.  Since they have not done so, Statement 25 is not actionable.

In response, Plaintiffs contend that mismanagement can render a statement misleading if the statement itself is "inconsistent with the existence of the mismanagement."  Opp. at 47 (quoting *Hayes v. Gross*, 982 F.2d 104, 106 (3d Cir. 1992)).  But Statement 25 is not such a statement.  It merely states that Revolution was "mechanically complete."  It makes no comment at all on whether it was completed in accordance with "adequate best practices or protective measures" or

---

[18] *See, e.g.*, *OFI Asset Mgmt. v. Cooper Tire & Rubber Co.*, 834 F.3d 481, 505 n.15 (3d Cir. 2016) (facts which "have no bearing on the truth or falsity" of a statement at issue cannot render that statement misleading).

in areas that were not "landslide prone."   ¶ 352; Opp. at 47.  Nor would any reasonable investor

interpret Statement 25 as a guarantee that the Revolution pipeline would never encounter problems

or need to be repaired.  Accordingly, Statement 25 is not actionable.  And Statement 26, which is

substantively identical to Statement 25, fails for the same reasons.  MTD Br. at 16 n.25.

The other statements in Category C are predictions of when the Revolution would be

complete, all of which predate Statement 25.  Because Statement 25 was issued more than five

months before any corrective disclosure in this case, Plaintiffs cannot purport to be damaged by

these statements.  *See* MTD Br. at 11, 17.

> **4.**    **Category D: Plaintiffs have not sufficiently alleged that any of Energy Transfer's aspirational statements or company commitments to safety and legal compliance (Statements 27-44) were actionably misleading.**
>
> **a.**    **Statements 27-37**

With Statements 27 through 37, Plaintiffs take issue with a laundry list of statements in

which Energy Transfer states what it is "'seeking' to do, what it is 'committed' to doing, what it

is 'focused on,' what it is 'aiming' to do, and what its 'priorities' are."  *In re Vale S.A. Sec. Litig.*,

2017 WL 1102666, at *22 (S.D.N.Y. Mar. 23, 2017).  In the Opening Brief, Defendants explained

that those statements were immaterial as a matter of law under the puffery doctrine, MTD Br. at

17-18, and, separately, that Plaintiffs failed to allege they were false, MTD Br. at 19.  The puffery

argument focuses on whether the *statements* themselves are sufficiently *material* and measurable

that a reasonable investor would rely on them.[19]   The falsity argument focuses on whether

Plaintiffs' *allegations* make the statements *misleading*.[20]   Because a statement must be both

---

[19] *See Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993) ("Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism from company spokesmen.").

[20] *See Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 548 (W.D. Pa. 2019) ("At most, the allegations demonstrate that Arconic 'failed to live up to its own . . . safety standards,' [], as to one sale.  They are therefore inactionable." (citing *Ong. v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018)).

material and misleading to be actionable under Rule 10b-5, each of these arguments presents an independently sufficient reason for dismissing Statements 27 through 37.

The Opposition conflates these two independent reasons in a failed attempt to distinguish binding and persuasive precedent.  For example, they attempt to distinguish *In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 538 (3d Cir. 1999),[21] and *In re Aetna, Inc. Securities Litigation*, 617 F.3d 272, 274 (3d Cir. 2010), because those cases "do not address concealment of the type of wrongdoing at issue in this case."  *See* Opp. at 51.[22]  But Defendants cited *Advanta* and *Aetna* as puffery cases, not falsity cases.  *See* MTD Br. at 18-19.  And those cases confirm that whether Defendants were engaged in wrongdoing is irrelevant to the puffery analysis: "[s]uch statements [i.e., puffery], ***even if arguably misleading***, do not give rise to a federal securities claim because they are not material . . . ."  *Advanta*, 180 F.3d at 538; *accord Aetna*, 617 F.3d at 284.[23]

Plaintiffs never explain why the Court should ignore this holding of *Advanta* and *Aetna.*  Nor do Plaintiffs ever grapple with the fact that *Aetna* and *Advanta* dismissed as puffery statements strikingly similar to Statements 27 through 37.  *See Aetna*, 617 F.3d at 276 ("We also continue as a priority to exhibit commitment to discipline pricing."); *Advanta*, 180 F.3d at 529 ("[T]his dividend increase reflects management's confidence in the company's earnings momentum and Advanta's continuing commitment to enhancing shareholder value.").  And they ignore the many

---

[21] *Overruled in part on other grounds, Tellabs, Inc. v.Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

[22] Plaintiffs misguidedly try to dodge out-of-circuit authority the same way.  *See* Opp. at 52 (attempting to distinguish *Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 901-02 (5th Cir. 2018) because "plaintiffs did not allege the type of wrongdoing alleged here" and *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009), because "the operations at the heart of Defendants' wrongdoing" purportedly did not relate to the statements at issue).

[23] *See also Whole Foods*, 905 F.3d at 901-02 ("We also agree with the district court that the defendants' comments about Whole Foods' commitments to transparency and quality—even if false—are immaterial . . . .  Surely it matters to investors whether Whole Foods is transparent and otherwise holds itself to high standards.  But reasonable investors will not simply take Whole Foods' word for it.  They will 'rely on facts' to determine whether this is so.").

other cases that likewise hold that statements of corporate "commitment," "focus," and "priority" are immaterial puffery that is not relied upon by reasonable investors.[24]   In light of this overwhelming binding and persuasive authority, this Court should have "little trouble concluding that the challenged statements"—about what Energy Transfer "is 'committed' to doing, what it is 'focused on,' what it is 'aiming' to do, and what its 'priorities' are"—"are 'precisely the type of puffery' that [federal courts have] 'consistently held to be inactionable.'" *Vale*, 2017 WL 1102666, at *22.

Though Plaintiffs treat them separately in the Opposition, *see* Opp. at 56-58, Statements 29 and 35 fail for the same reason.  They state that Energy Transfer was "committed to fully complying with [a] DEP order" and that it was "committed . . . to following the strict guidelines set forth in [its] permits."  Statements 29, 35.   In an attempt to argue that such statements of corporate "commitment" could be actionable, Plaintiffs cite *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 757-59 (S.D. Tex. 2012).  Opp. at 57-58.   But *BP* undermines their claims.   To be sure, the *BP* court concluded that statements that made "specific reference to BP's progress" in implementing safety initiatives "as measured against [specific] metrics set forth in [a public report]" were actionable.   *BP*, 843 F. Supp. 2d at 758-59.   But the *BP* court *dismissed* as inactionable puffery "generalized statements about BP's 'commitment to safety,' prioritization of 'process safety performance,' . . . and desire to become a 'world leader in process safety'" that did not make measurable references to such "progress" because they were "too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important

---

[24] *See* MTD Br. at 18-19 (collecting cases).  Instead of distinguishing these cases, Plaintiffs point the Court to a case out of the Southern District of West Virginia.  *See* Opp. at 49-50 (citing *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 618 (S.D.W. Va. 2012)).  This case is, to say the least, not sufficient to overcome the binding authority of the Third Circuit and the persuasive authority of the vast majority of out-of-circuit cases.

to a securities investment decision." *Id.* at 757 (quoting *Bridgestone*, 399 F.3d at 671). Like these statements that *BP* dismissed, Statements 29 and 35 are vague statements of Energy Transfer's "commitment." Unlike the statements that *BP* sustained, they make no "specific reference to [Energy Transfer's] progress" against a measurable standard. *Id.* They are thus immaterial puffery and should be dismissed. *Id.* at 759.

Though the Court need go no further with Statements 27 through 37, these statements also warrant dismissal for the independent reason that Plaintiffs have failed to allege facts that contradict them. In an attempt to do so, Plaintiffs suggest that various safety incidents were "manifestations of [Energy Transfer's] failure to prioritize safety." Opp. at 49. But accidents happen even if an organization prioritizes safety. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 813-14 (S.D. Tex. 2012) ("Even the very specific facts Plaintiffs allege to show the falsity of the statements cannot confirm or deny whether . . . safety was truly being 'prioritized' as '# 1' or the 'highest priority.'"). Reasonable investors are thus well aware that a company's statement of commitment to safety is no guarantee that safety incidents and accidents will not occur. *See* MTD Br. at 20.[25]

### b.    Statements 38-41

Statements 38 through 40 concern Energy Transfer's Code of Conduct and Ethics ("Code of Conduct"). Specifically, Statements 39 and 40 are statements from Energy Transfer's 10-K filings acknowledging the existence of the Code of Conduct and Statement 38 is a catalogue of statements from the Code of Conduct itself. As the Opening Brief explains, none of these statements is actionable. *See* MTD Br. at 20-21.

---

[25] *See also Arconic*, 395 F. Supp. 3d at 549 ("[N]o reasonable investor would plausibly rely on a statement such as '[o]ur Ethics and Compliance Program drives a global culture of . . . compliance, prevention and risk identification and mitigation' to conclude that each of Arconic's products would always be used safely." (citation omitted)).

As to Statements 39 and 40, Plaintiffs nowhere contend that Energy Transfer did not have a Code of Conduct, which is all that these statements provide.  And the mere acknowledgment of a Code of Conduct in a 10-K does nothing to affect whether the provisions of a Code of Conduct itself are actionable.  *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *18 n.8 (D.N.J. Aug. 8, 2018) (so holding).  Nor does Plaintiffs' Opposition offer any response to explain how Statements 39 and 40 could be actionably misleading.

Plaintiffs are thus left to argue that the provisions of the Code of Conduct itself may be the basis for securities fraud.  Under Plaintiffs' theory, whether a code of conduct is actionable depends on how strict its language is.  *See* Opp. at 69-70.  A code that says employees "must" abide by a rule would be actionable.  But a code that says employees "should" abide by a rule would not be actionable.  This is not the law.[26]  Rather, even where a code of conduct contains "relatively forceful wording, it remains an aspirational and hortatory statement."  *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 658 (S.D.N.Y. 2017).[27]  Indeed, "[p]unishing

---

[26] *See Cognizant*, 2018 WL 3772675, at *19 (rejecting claim that code provisions stating "we ***do not*** corruptly give or offer . . . anything of value to a government official to obtain or maintain business," and that "***we comply*** with all applicable anticorruption laws, rules, and regulations" could be actionable) (citing *Retail Wholesale*, 845 F.3d at 1276 ("we make ethical decisions" not actionable)); *Bondali*, 620 F. App'x at 490 ("any product suspected to be unsafe must immediately be pulled from distribution" not actionable); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731 (S.D.N.Y. 2017) ("[b]ribes, kickbacks and payoffs to government officials, suppliers and other[s] are strictly prohibited," and "[n]o waivers of the provisions of the code of ethics are permitted" not actionable)).

[27] In an attempt to avoid this result, Plaintiffs rely on a recent, unpublished decision from the Northern District of Illinois, *Holwill v. AbbVie Inc.*, 2020 WL 5235005 (N.D. Ill. Sept. 1, 2020).  *AbbVie* found that "unqualified statements regarding AbbVie's conduct" such as "[w]e never offer or provide anything of value to healthcare professionals" could be actionable even though they were contained in a code of conduct.  *Id.* at *4.  Plaintiffs' other cases likewise rely on the existence of statements in a code that appear to report on "the Company's current state of affairs."  *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 (S.D.N.Y. 2017); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 501 (S.D.N.Y. 2009) (Moody's "maintains independence in its relationships with Issuers and other interested entities"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018) ("the company 'bases ... decisions solely on a person's [merit]'"); *In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 3d 712, 728 (D. Minn. 2019) (the Code of Conduct concretely promised that CenturyLink would never "misstate facts or confuse or mislead consumers through Company advertisements or promotions," "engage in unethical or deceptive sales practices," or "place or record an order for our products and services for a customer without that customer's authorization").  The reasoning of these cases is not persuasive.  As *Cognizant* explains, such statements are plainly aspirational in the context of a code of conduct.  *Cognizant*, 2018 WL 3772675, at *19 (finding statement in code that

companies whose Codes are especially specific and concrete would make little sense, as it would disincentivize compliance measures designed to prevent misconduct from occurring." *Cognizant*, 2018 WL 3772675, at *19.

Plaintiffs next attempt to create a novel exception to the principle that codes of conduct are not actionable, arguing that Energy Transfer's Code of Conduct "falsely described Energy Transfer's policy as prohibiting payments to government officials." Opp. at 69. This is incorrect. The Code of Conduct is an operative document; it constitutes company policy; it cannot possibly misrepresent the very policy it constitutes. Plaintiffs' argument about Energy Transfer's purported "unwritten policy" of hiring police or other government security personnel to provide security could amount to nothing more than a purported violation of the policy set forth in the Code of Conduct, which is not actionable. *Cognizant*, 2018 WL 3772675, at *18.[28]

Finally, Plaintiffs take issue with Statement 41. Opp. at 66. But Statement 41 merely states that Energy Transfer has a *different* code of conduct applicable to "contractors and third party vendors" and Energy Transfer "expect[s]" these third parties to abide by it. Plaintiffs never so much as allege what this code for third parties proscribes. They have thus not even alleged a violation of this code, let alone that Statement 41, which merely reports (accurately) that such a

---

"we do not corruptly give or offer . . . anything of value to a government official" to be inactionable for the reasons discussed above). But, in any event, this Court need not decide which line of cases is more persuasive, since all of the statements here are phrased as requirements, not (even on *AbbVie*'s superficial reading) as unqualified statements of past conduct.

[28] Moreover, Plaintiffs are only able to argue that Defendants violated the Code in this way by mischaracterizing it. Specifically, they claim that the Code of Conduct flatly "prohibit[s] payments to government officials," which would make even the renting of tables at a city park for a company picnic or the payment of tolls a violation. Opp. at 69. In reality, the Code of Conduct is not nearly so absurd. It only prohibits payments "designed to secure special treatment for the Partnership Group." ¶ 383. Here, no allegations suggest that any payments were "designed to secure special treatment for [Energy Transfer]"; instead, as the Complaint repeatedly alleges, constables were hired to provide security and paid accordingly. *See, e.g.*, ¶¶ 438-39. There is not a single hint that Energy Transfer made payments to secure more favorable treatment from government officials.

code exists, was actionably misleading.[29]

### c.    Statements 42 and 43

In Statement 42, an Energy Transfer spokesperson is paraphrased as having indicated that "there were no environmental health risks to residents in the aftermath of the [Revolution] explosion."   Plaintiffs argue that this paraphrase was false because the Revolution explosion "destroy[ed] one home, scorch[ed] three acres of land, forcing residents to flee, and knock[ed] out power for 1,500 people."  Opp. at 62.  But, while these alleged issues are serious, they are issues of *property damage* occurring *at the time* of the incident, not "environmental health risk[s]" in the "aftermath of the explosion."   This fact would not have been lost on reasonable investors reading Statement 42 in context.  To the contrary, the article that contains Statement 42 discusses in detail the property damage issues that Plaintiffs contend Statement 42 conceals.[30]   Thus, even if Statement 42 were about these issues (and it is not[31]), it would not be actionably misleading "in light of all the information then available to the market."  *StoneMor*, 927 F.3d at 715 (statements "are only actionable if, 'when read in light of all the information then available to the market . . . , [they] conveyed a false or misleading impression.'").

---

[29] Moreover, Statement 41 merely states that Energy Transfer "expect[s]" its third party contractors to abide by that code.  Statement 41.  This statement does not guarantee that Energy Transfer's third party contractors will always comply with Energy Transfer's rules any more than a statement that "we have a contract, and we expect our counterparty to honor it" would.  Reasonable investors recognize that a third party's adherence to such rules is ultimately outside of Energy Transfer's control, and thus the statement is necessarily aspirational.

[30] *See* Kris Mamula & Anya Litvak, *Officials Believe Landslide May Have Triggered Massive Gas Pipeline Explosion in Beaver County*, PITTSBURGH POST-GAZETTE (Sept. 10, 2018), https://www.post-gazette.com/local/west/2018/09/10/gas-explosion-in-center-township-Beaver-County/stories/201809100067   Since Statement 42 is drawn from this article (*see* ¶ 374), the Court may consider it at this stage.  *See Burlington Coat Factory*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

[31] Tellingly, the paragraph of the Complaint purporting to allege the reasons Statement 42 is misleading does not mention the property damage issues Plaintiffs belatedly now point to.  ¶ 381.  Accordingly, Plaintiffs cannot rely on those issues now. *See NuVasive*, 2014 WL 4161431, at *6 (rejecting similar attempt at "puzzle pleading").

In Statement 43, an Energy Transfer spokesperson is paraphrased as having indicated that accidents had been drastically reduced since Sunoco Pipeline's integration with ETP in May 2017. Plaintiffs argue that this paraphrase was false because "there has been virtually no change in the number of permit violations" the company accrued since Sunoco integrated with Energy Transfer Partners. Opp. at 51. But Statement 43 is not about "permit violations," it is about "accidents." Accordingly, Plaintiffs' contention about permit violations does not undermine Statement 43.[32]

Plaintiffs' cavalier treatment of Statements 42 and 43 exemplifies another reason they should be dismissed: both statements are paraphrased. *See* MTD Br. at 22 (citing *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, 2015 WL 6039690, at *17 (D. Del. Oct. 15, 2015) (paraphrases cannot be actionable following *Janus*)).[33] Unable to distinguish *Fisker*, Plaintiffs argue that it is incorrect because it would "prohibit a plaintiff from relying on any third party source to demonstrate a false or misleading statement merely because the defendant did not have final editorial control over the source's contents." Opp. at 62. But, far from showing that *Fisker* is wrong, it shows that it correctly applied *Janus*. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, *including its content and whether and how to communicate it*. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." (emphasis added)).

---

[32] Moreover, as with Statement 42, even if this were relevant, the paragraph of the complaint contending Statement 43 was misleading (¶ 381) makes no mention of the relative number of permit violations before and after the merger. *NuVasive,* 2014 WL 4161431, at *6 (rejecting similar attempt at "puzzle pleading"). And the paragraph they now point to (¶ 369) contains a chart that does not begin until after the merger was completed.

[33] *See also Raab*, 4 F.3d at 288 ("Without control over [the third party's] report, any statement made by [company] personnel could be taken out of context, incorrectly quoted, or stripped of important qualifiers;" thus the securities laws "do not require [a] company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to [the company].").

<h4 style="text-align:center">d.      Statement 44</h4>

In Statement 44, Jeff Shields discusses "the *specific* geology *directly below* Lisa Drive,"[34]

stating: "There is some karst [a rock structure that contains limestone] *north of this area*, but it

does not impact *this area*."   Plaintiffs now concede that even they "do not allege that known

limestone existed directly under Lisa Drive."  Opp. at 60.  Plaintiffs are thus left to try to plead

falsity through sleight of hand.  Specifically, they rename an entire pipeline segment the "Lisa

Drive Site" even though only a small portion of the segment passes near Lisa Drive, *see* ¶ 144, and

assert that "the first third of the [pipeline segment] at the [so-called] Lisa Drive Site traversed

known limestone formations," ¶ 355.  In other words, Plaintiffs respond to a statement about "the

*specific* geology *directly below* Lisa Drive" with information about a portion of a pipeline segment

located "*north* of this *area*."  But this does not show that Statement 44 was inaccurate or

misleading.  To the contrary, Statement 44 itself expressly notes that there was karst "north of this

area," and thus cannot be rendered false by that same fact.

Moreover, Plaintiffs' basis for arguing that Statement 44 was misleading is that it

purportedly concealed from investors the fact that pipeline construction had led to "sinkholes" and

"geysers of drilling fluids" released in the area.  Opp. at 59.  But, again, statements "are only

actionable if, 'when read in light of all the information then available to the market . . . , [they]

conveyed a false or misleading impression.'"  *StoneMor*, 927 F.3d at 715. And, here, no one

reading Statement 44 in context would get the impression that the issues that Plaintiffs say

undermine Statement 44 were not occurring.  To the contrary, the very article from which

Statement 44 is drawn discusses at length the exact same issues that Plaintiffs say Statement 44

---

[34] MTD Ex. 9 (ECF 44-12), Claire Sasko, "*I'm Terrified": Life on the Front Lines of the Sunoco Pipeline*, PHILLYMAG (Mar. 22, 2018).

misleadingly concealed.  *See* MTD Br. at 50 n.84.  Statement 44 cannot be actionably misleading

in light of this context.  *StoneMor*, 927 F.3d at 715.

     5.     **Category E: Plaintiffs have not sufficiently alleged that any of Energy Transfer's statements about legal compliance (Statements 45-57) were actionably misleading.**

     a.     **Statements 45-47**

"[W]hen a complaint claims that statements were rendered false or misleading through the

non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with

particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the

PSLRA."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019).  Thus, where a

plaintiff contends that an issuer's statements were rendered misleading by the omission of bribery,

as Plaintiffs here do as to Statements 45 through 47, in order to survive dismissal the plaintiff must

make "factual allegations of exactly who made the payments, to whom the payments were made,

when the payments were made, [and] how the payments were made."  *Schiro v. Cemex, S.A.B. de

C.V.*, 438 F. Supp. 3d 194, 199 (S.D.N.Y. 2020).

Plaintiffs make no attempt to distinguish this authority in the Opposition.  Instead, Plaintiffs

argue they have met this burden because their allegations are premised on news reports and text

messages.  *See* Opp. at 55.  But that argument misapprehends their burden, which is not only about

the *source* of their information, but also about the *nature* of what they must plead—"the 'who,

what, when, where, and how' *of the alleged improper transaction*." *Schiro*, 438 F. Supp. 3d at 198

(emphasis added).  Plaintiffs make no attempt to plead that: indeed, they do not even *argue* that

they have alleged facts showing anyone at Energy Transfer made any illicit payments to anyone

at any time.

Instead, in the four pages the Opposition spends describing the alleged bribery scheme,

individuals affiliated with Energy Transfer are mentioned only three times: (1) in March 2016, when former DEP Secretary John Quigley called Hennigan and sternly warned him about potential permit deficiencies; (2) in December 2016, when the new DEP Secretary Patrick McDonnell met with Hennigan and McGinn; and (3) in February 2017, when a member of the Governor's office requested an update from McDonnell because she was going to have a call with McGinn.  *See* Opp. at 2-6.  None of these facts establishes any element of any bribery scheme or other illegal conduct.[35]  They merely show that Hennigan and McGinn had calls and meetings with the DEP. This is completely consistent with an entirely legal process and exactly what investors would expect.  Statements 45 through 47 must, accordingly, be dismissed.[36]

### b.      Statements 48-54

Next, Plaintiffs challenge statements in which Energy Transfer spokespeople expressed confidence that Energy Transfer acted lawfully following the announcement that various district attorneys had filed charges relating to the hiring of off-duty constables to provide security on ME2. *See* Statements 48-54.  As set forth in the Opening Brief, these statements are inactionable for two reasons.  MTD Br. at 28-29.

First, they are immaterial.  As the Opening Brief explains, a company's "maintenance of

---

[35] To the extent Plaintiffs contend that Energy Transfer engaged in "coercion . . . or other improper methods" (¶ 399, Opp. at 55) besides bribery to obtain the permits, they have likewise failed to plead falsity with particularity.  Indeed, as to these vague assertions, it appears that Plaintiffs are taking issue with entirely licit (and First Amendment protected) contacts with government officials.  ¶¶ 436-37 (merely suggesting that McGinn and Hennigan applied "pressure"); *see also* ¶ 115 ("It seems that we the public are up against *lobbying* from the industry . . . ." (emphasis added)); *see also infra* § II.C.1.a.vi (describing the minimal involvement of Energy Transfer personnel described in the Complaint).  This activity is entirely legal and does not in any way falsify statements 45 through 47.

[36] Plaintiffs also fail to explain how Statement 45 and 46 are false, even if they had sufficiently alleged that something illegal occurred (which they have not).  *See* MTD Br. at 25.  Both of those statements are opinions that Energy Transfer had, among other things, permits for all its properties and operations.  Plaintiffs' Opposition does not explain how those belief statements can be false under *Omnicare* when it is undisputedly true that Defendants *had the DEP permits*. *See* MTD Br. at 25.

its innocence" when it is faced with an accusation that its past conduct was criminal "is not fraud." *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill. 2001) , *aff'd sub nom.*, *Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001). Plaintiffs respond that a duty to disclose illegal conduct "may arise" when a statement falsely denies that "illegal conduct is occurring." Opp. at 73. But, while this may be so, the Complaint does not allege that Statements 48 through 54 misrepresented *facts* about Energy Transfer's conduct.[37] Instead, Plaintiffs contend that these statements gave a faulty *legal analysis* of that conduct. Providing an optimistic legal analysis of one's own conduct when faced with criminal charges is not actionable under the securities laws. *In re United Am. Healthcare Corp. Sec. Litig.*, 2007 WL 313491, at *12 (E.D. Mich. Jan. 30, 2007). "Investors can evaluate this sort of posturing for what it is worth." *Id.*

Second, even if Statements 48 through 54 were material, Plaintiffs have not sufficiently alleged that they were untrue. To the contrary, Defendants' claims that they acted lawfully have subsequently been confirmed by the dismissal of all charges against an Energy Transfer employee. *See* MTD Br. at 29. In response to this argument, Plaintiffs suggest that the Energy Transfer employee *might* be re-charged later. Opp. at 74. But anyone might be charged with any crime at any time. So the fact that charges could be launched thus says nothing about the plausibility of Plaintiffs' allegations. In addition, Plaintiffs argue that dismissal of the charges is irrelevant because "the Chester County DA would have been required to prove [them] beyond a reasonable doubt." *Id.* But the charges were dismissed at a preliminary hearing, which under Pennsylvania law means the judge determined that the Commonwealth failed to "present evidence with regard

---

[37] There is one exception. With respect to Statement 50, Plaintiffs suggest that the statement was false "for asserting that it was the residents of Lisa Drive who requested Energy Transfer illegally bribe state constables to patrol their backyards." ¶ 395. But the Complaint's only basis for disputing this is the statement of "one resident" of Lisa Drive indicating that there were "mysterious security guards from out of state." ¶ 395. This is far from sufficient to plead with particularity that **no** residents of Lisa Drive requested restricted access to their property. Moreover, whose request it initially was to hire security would plainly not be material to an investment decision in Energy Transfer.

to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Sebek*, 716 A.2d 1266, 1269 (Pa. Super. Ct. 1998). "Probable cause is a much lower standard than proof beyond a reasonable doubt . . . . [P]robable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." *Manley v. Fitzgerald*, 997 A.2d 1235, 1239 (Pa. Commw. Ct. 2010). Calling allegations that could not pass even this low standard of proof "baseless" would not be materially misleading to a reasonable investor.[38] Accordingly, Statements 48 through 54 should be dismissed.

c.      **Statements 55-57**

In the Opposition, Plaintiffs fail to address the Opening Brief's contention that Statements 55 through 57 are not actionably misleading.[39] These statements fail for the reasons explained in the Opening Brief. *See* MTD Br. at 29-31. And, by failing to address these arguments in the Opposition, Plaintiffs should be deemed to have abandoned their contention that Statements 55 through 57 were actionably misleading. *See Khan*, 2017 WL 590262, at *2 n.3.

C.      **Plaintiffs' Opposition does not refute the reasons the Complaint fails to adequately plead scienter as to any Defendant.**

The Opposition's scienter analysis relies on inapposite authorities and merely repeats the averments of the Complaint without explaining why they are adequate in light of the challenges raised by Defendants. These unpersuasive arguments fail to rebut the reasons that Defendants explained why the Complaint does not satisfy the PSLRA's high pleading standard for pleading

---

[38] Indeed, regardless of the standard of proof, Plaintiffs' contention that some ultimately *unprovable* criminal conduct *may* have occurred would not be sufficient to render these statements materially misleading to a reasonable investor.

[39] In Appendix A to the Opening Brief, Defendants inadvertently numbered two separate statements 56; the first Statement 56 is actually Statement 55.

scienter.

For example, Plaintiffs first criticize Defendants for "dismembering and analyzing Lead Plaintiffs' scienter allegations independently," arguing that "[t]his strategy . . . has been rejected by the Third Circuit."  Opp. at 75.  But the Third Circuit "ha[s] explicitly ***approved*** of scienter analyses that assess individual categories of scienter allegations individually [before] ultimately consider[ing] the allegations as a whole." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 115 (3d Cir. 2018) (emphasis added).  This is precisely the approach taken in the Opening Brief, which analyzes each particular scienter category, shows that each has no merit, and then concludes that, considering these shortcomings, "the *total* weight [of Plaintiffs' scienter] allegations [i]s also scant." *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011); *see also* MTD Br. at 32 (explaining that "[v]iewing the Complaint as a whole," scienter has not been adequately pled); *id.* at 47 ("taking all Plaintiffs' scienter allegations holistically" scienter has not been adequately pled).

As is explained below, Plaintiffs' Opposition only confirms that that Plaintiffs have not sufficiently alleged scienter as to any Individual Defendant or Energy Transfer.  The Complaint thus fails on scienter grounds and should be dismissed in its entirety.

      **1.**    **The Opposition does not refute Defendants' arguments that the Complaint fails to adequately allege scienter as to any Individual Defendant.**

The Opposition does not undermine either of the two distinct reasons why the Complaint does not adequately allege scienter as to any of the Individual Defendants under the PSLRA's heightened pleading requirements: (1) that the factual allegations directed to each Individual Defendant lack sufficient detail to allege that any Individual Defendant made any statement at issue with scienter, MTD Br. at 33-35, and (2) that scienter cannot be ascribed to any Individual

Defendant based upon generalized allegations not directed to them since scienter cannot be based upon "group pleading." MTD Br. at 36-44.

> **a.** **Plaintiffs do not aver particularized facts sufficient to plead that any Individual Defendant acted with scienter with respect to any of the statements at issue.**

To sufficiently allege scienter, "it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004). Rather, plaintiffs "must support their [scienter] allegations with the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *Id.*

The Opposition fails to do so. Notably, Plaintiffs still cannot point to a single document that any Individual Defendant received, any meetings or conversations that supposedly informed any of them of the alleged problems, or any confidential witness who alleged with particularity what any of the Individual Defendants purportedly knew. MTD Br. at 32-33. And what scant scienter allegations Plaintiffs do make are undercut by the fact that Plaintiffs cannot identify *any* motive (via suspicious stock sales or otherwise) for *any* of the Individual Defendants to defraud the market[40]—a failing that raises a "compelling inference *against* scienter." *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *17 (D.N.J. July 27, 2018).[41] Instead, Plaintiffs rely on a

---

[40] To be sure, Plaintiffs suggest that Defendants were motivated to complete ME2 as soon as possible. Opp. at 16. But this is a general business motive shared by investors and is irrelevant to the question at issue here: whether Defendants had a motive *to commit fraud*. MTD Br. at 42; *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 n.13 (3d Cir. 2013) ("Corporate officers always have an incentive to improve the lot of their companies, but this is not, absent unusual circumstances, a motive to commit fraud.")).

[41] *See also Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 558 (D.N.J. 2010) (an absence of suspicious stock sales "tends to negate scienter"); *In re N. Telecom Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders . . . is inconsistent with an intent to defraud shareholders.").

theory that the Individual Defendants "must have known" their statements were fraudulent because of (1) their positions within the company, (2) the fact that they made statements at all, and (3) the significance of the ME2 project to Energy Transfer.  Opp. at 78-82.  Each of these three "they must have known" theories of scienter fails under well-settled law.[42]  Thus, as described in more detail below, the Opposition does not establish that scienter has been adequately alleged as to any Individual Defendant.

      **i.**      **Plaintiffs have not sufficiently alleged that Defendant McCrea acted with scienter.**

First, as to Defendant McCrea, Plaintiffs argue that they have sufficiently pled scienter by alleging (1) his positions at Energy Transfer and (2) the fact that he made some of the statements at issue.  Opp. at 78-79.  These facts do not plead scienter.  *See* MTD Br. at 34; *supra,* note 42.[43]

In addition, Plaintiffs assert that McCrea received "regular reports" about the Revolution

---

[42] *Compare* Plaintiffs' three bases *with* (1) *Advanta*, 180 F.3d at 539 ("Likewise, allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" (alteration in original) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998))); *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 556 ("Plaintiff contends that McMullen and Hamill certainly knew of the alleged illegal commercial practices asserted in the Amended Complaint because they were high-ranking executives in PharmaNet, and this fact raises an inference that they had intimate knowledge of those facts.  Plaintiff's attempt to impute knowledge to the Individual Defendants by virtue of their employment has been rejected as a basis for an inference of scienter."); (2) *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009) (rejecting "attempt to bootstrap the scienter requirement by claiming we can infer knowledge or recklessness based on the nature of the false or misleading statements themselves"); *Bd. of Tr. of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Meckel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011), *aff'd* 475 F. App'x 353 (2d Cir. 2012) (rejecting argument that "speak[ing] about [] topics in detail" supports scienter); *and* (3) *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018) ("[A]bsent some additional allegation of specific information conveyed to management and related to the fraud," such generalized allegations about core operations "does not support a finding of scienter."); *In re Elecs. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *9 (D.N.J. Jan. 31, 2019) (same, collecting cases).

[43] In an attempt to argue that the mere making of statements can establish scienter, Plaintiffs cite *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *17-*18 (D.N.J. Aug. 28, 2017).  Opp. at 82-83.  But *PTC* does not support this interpretation.  Rather, the district court's finding of scienter in *PTC* relied on the fact that the complaint "contains specific factual allegations about what [the individual defendants] *actually* knew at the time the alleged misstatements were made," not "allegations as to what the defendants 'must have known'" when they spoke. *PTC Therapeutics*, 2017 WL 3705801, at *18 (distinguishing complaint from cases in which motions to dismiss had been granted).

pipeline.[44]  But Plaintiffs have pled neither the existence nor the contents of such reports.  Instead, the paragraphs of the Complaint they cite as support for this conclusory assertion discuss only a letter in which a different Energy Transfer employee purportedly told a third party that the Revolution explosion constituted an event of force majeure (presumably under some unspecified contract).  ¶ 464.  Even if Plaintiffs had shown that this letter was reviewed by McCrea, the making of this contractual claim does not undermine any of the statements at issue.[45]  Likewise, even if Plaintiffs had pled that McCrea received other "regular reports" (and they do not specify any others), this allegation would fail to establish scienter because "Plaintiffs allege no specific information that was provided to McCrea [in these reports] that should have alerted him to problems."  MTD Br. at 34.  Vague allegations that McCrea received "regular reports," had knowledge of some facts, and generally "signed off" on the Revolution pipeline, without identifying the reports or what specific facts McCrea supposedly knew or how or when he learned said facts, are insufficient to satisfy the PSLRA.  *See In re Plains All Am. Pipeline, LP Sec. Litig.*, 307 F. Supp. 3d 583, 642 (S.D. Tex. 2018) ("To avoid dismissal . . . , the plaintiffs must make specific allegations about which corporate officer learned what facts, from what source, on what date."), *aff'd* 777 F. App'x 726 (5th Cir. 2019).[46]

---

[44] Opp. at 79 ("He received regular reports [and] had personal knowledge of Revolution failures leading to the explosion.").

[45] In addition, Plaintiffs never plead the date of this letter.  However, since it discusses the Revolution explosion, it presumably was written after the explosion.  And the explosion occurred after all of the statements about Revolution at issue in this case were made.  As such, the letter could not possibly be relevant to assessing the state of mind of McCrea at the time those statements were made.

[46] Plaintiffs' citation to *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007) (Opp. at 79) undermines instead of supports their scienter argument since that opinion concluded scienter had **not** adequately been pled based merely on an action taken by someone by virtue of his position (*e.g.*, signing a Sarbanes-Oxley certification).  *Intelligroup* found that the complaint lacked "facts indicating that, at the time of certification, defendants knew or consciously avoided any meaningful exposure to information that was rendering their SOX certification false."  *Id.*  The Opposition likewise does not identify any such factual averments or any "specific information" that should have alerted McCrea that any statements were false.

Finally, Plaintiffs argue that "McCrea also admitted publicly the core significance of the Pipeline Projects to Energy Transfer." Opp. at 79. But the Complaint does not plead any such statement. Instead, Plaintiffs point to a statement where McCrea merely noted that a facility located at the end of the pipelines would "be the best export and the largest in the country over the next 2 to 3 years with growth." ¶ 453. And even if McCrea had noted the "core significance" of the Pipeline Projects, this would do nothing to show that he knew any statements about those projects were false "absent some additional allegation of specific information conveyed to [McCrea] and related to the fraud." *See Martin*, 757 F. App'x at 155. Since no such individualized allegations about specific information contradicting the statements at issue and conveyed to McCrea have been made here, the core operations doctrine does nothing to advance Plaintiffs' contention that McCrea acted with scienter. *Id.*; *see also* MTD Br. at 42-43; *infra* § II.C.1.b.iii.

### ii. Plaintiffs have not sufficiently alleged that Defendant Ramsey acted with scienter.

As to Defendant Ramsey, the Opposition bases its inference of scienter on his position at Energy Transfer, his making of some of the statements at issue, and his mere attendance at Energy Transfer investor presentations where other statements at issue were made. *See* Opp. at 79-80. These allegations fail for the same reason they failed as to Defendant McCrea: they do not establish with particularity that Ramsey was aware of information that undermined any of the statements at issue. *See* MTD Br. at 34; *supra*, note 42.

### iii. Plaintiffs have not sufficiently alleged that Defendant Long acted with scienter.

As to Defendant Long, the Opposition again relies upon allegations about his position and his alleged making of false statements. Opp. at 80. These allegations fail for the same reasons they fail as to the other Individual Defendants. *See supra*, n.42. In addition, the Opposition claims

that Long "went out of his way to dodge an analyst's question about the completion of the ME2 pipeline." Opp. at 80.  But all that Long said is: "I'm not sure what you're referring to other than— what?" ¶ 448 (emphasis omitted).  As explained in the Opening Brief, this is far more consistent with confusion than evasion, let alone scienter.  MTD Br. at 35.

### iv.   Plaintiffs have not sufficiently alleged that Defendant Warren acted with scienter.

As to Defendant Warren, the Opposition's scienter argument is also based on his position and the fact that he made statements.  Opp. at 80-81.  These arguments fare no better as to Warren than they do as to the other Individual Defendants.  *See supra*, note 42.  In addition, Plaintiffs allege that Warren admitted in 2019—long after the statements at issue were made—that Energy Transfer had "made some mistakes."  Opp. at 81; ¶ 467.  But this says nothing about what Warren knew at the time the statements were made, which is all that is relevant to the scienter analysis. *Winer*, 503 F.3d at 331 ("We have long rejected attempts to plead fraud by hindsight.").  And, in any event, even if hindsight analyses were relevant, Warren's acknowledgment of vague operational "mistakes" does not undermine any statement at issue.  *Horizon Lines*, 442 F. App'x at 675 ("Allegations akin to corporate mismanagement are not sufficient [to plead scienter].").

### v.   Plaintiffs have not sufficiently alleged that Defendant McReynolds acted with scienter.

As to Defendant McReynolds, the Opposition's scienter argument is also based on his position and the fact that he made statements.  Opp. at 81. These arguments fare no better as to McReynolds than they do as to the other Individual Defendants.  *See supra,* note 42.

### vi.   Plaintiffs have not sufficiently alleged that Defendants Hennigan or McGinn acted with scienter.

Plaintiffs also attempt to allege that Defendants Hennigan and McGinn acted with scienter. Opp. at 81-82.  But Plaintiffs do not allege any facts that show Hennigan or McGinn were aware

34

of any misconduct that would undermine a statement at issue.  *See* MTD Br. at 40.

They argue that "Hennigan [met] with former DEP Secretary Quigley before *taking actions* to have him replaced with a DEP Secretary who would accede to the Wolf Administration's demands."  Opp. at 82 (emphasis added).  But Plaintiffs never allege any such "actions."  They merely allege that Hennigan met with a DEP Secretary who was subsequently replaced.  This is fully consistent with entirely legal behavior, and certainly falls far short of meeting Plaintiffs' burden of pleading "the 'who, what, when, where and how'" of the misconduct they assert.  *GSC*, 368 F.3d at 239.  Similarly, Plaintiffs argue that "McGinn correspond[ed] in private with the Governor's special assistant and pressure[d] her and replacement Secretary McDonnell to get the permits granted by mid-February 2017."  Opp. at 82.  But the paragraphs of the Complaint Plaintiffs cite for this assertion (¶¶ 103, 110-11, 436-37) merely indicate that McGinn "ask[ed] for a call."  ¶¶ 110, 437.  Such communications are entirely legal and do nothing to undermine any of the statements at issue.  They are thus irrelevant for purposes of scienter.[47]

### vii.   Plaintiffs have not sufficiently alleged that Energy Transfer's spokespeople acted with scienter.

Finally, though many of the statements at issue were made by Energy Transfer spokespersons, Plaintiffs have made no effort whatsoever to plead (or even argue) that these spokespersons acted with scienter.  Accordingly, the spokesperson statements should be dismissed.  *See* MTD Br. at 44.[48]

---

[47] Moreover, even if Hennigan or McGinn had been aware of misconduct, they were in their capacity as Sunoco employees and, as Defendants explained in the Opening Brief, the scienter of a subsidiary will not be imputed to the parent.  MTD Br. at 45 & n.78.

[48] In addition, the Opposition does not identify any other individual (beyond the Individual Defendants) that Plaintiffs contend acted with scienter.

b.   **Each of Plaintiffs' attempts to allege scienter without specific scienter allegations as to any Individual Defendant or other speaker fails.**

Because they failed to allege facts showing the "who, what, when, where and how" of the scienter of any particular Individual Defendant or other speaker, Plaintiffs have failed to allege scienter, and their claims should be dismissed.  *GSC*, 368 F.3d at 239; *see also Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, 2009 WL 4250061, at *7 (D.N.J. Nov. 25, 2009) ("[T]he PSLRA prohibits group pleading of scienter, so the plaintiff must specify scienter with respect to each defendant.").[49]   Nonetheless, even if such group pleading could theoretically contribute to the scienter calculus, Plaintiffs' half-hearted group-pled allegations would add nothing.

i.   **Plaintiffs do nothing to advance the scienter calculus by relabeling their insufficient facts as "red flags."**

First, the Opposition's reliance upon alleged "red flags" does not advance their scienter allegations.  *See* Opp. at 83-84.  To be sure, properly pled facts that (1) undermine a statement at issue and (2) were brought to the attention of particular Individual Defendants before the statement was made could help support scienter allegations.  But, as Defendants explained in the Opening Brief, Plaintiffs have not pled facts sufficient to satisfy those two elements as to any of their purported "red flags."  *See* MTD Br. at 37-38.  And Plaintiffs' mere labeling of their insufficient "facts" as "red flags" does not allow them to plead scienter without satisfying these two elements.[50]

---

[49]   *Accord Pa. Ave. Funds v. Inyx Inc.*, 2010 WL 743562, at *12 (S.D.N.Y. Mar. 1, 2010) ("This type of 'group pleading' of scienter [in which scienter allegations are lodged against an undifferentiated group of defendants] runs afoul of the PSLRA's requirement that a plaintiff 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" (citing 15 U.S.C. § 78u–4(b)(2)).

[50]   *See Witriol v. Conexant Sys., Inc.*, 2006 WL 3511155, at *4 (D.N.J. Dec. 4, 2006) ("Plaintiffs' allegations of scienter do not go farther than to say 'they must have known' because of their positions in the company.  The Third Circuit rejected the 'they must have known' theory in *Advanta* [.]"); *GSC Partners*, 368 F.3d at 239 (there is "no scienter where plaintiffs d[o] 'not allege facts and circumstances that would support an inference that defendants knew of specific facts that are contrary to their public statements'" (citation omitted)); *Plains II*, 307 F. Supp. 3d at 642

36

The Opposition's "red flags" section does nothing to alter that conclusion.  Instead, it merely cites two dated district court cases that are entirely consistent with this principle[51] and asserts that Defendants made inaccurate in-service estimates for ME2 "even when the DEP issued fines and ordered that construction be suspended."  Opp. at 82-83.  But the DEP's fines and orders do not contradict any of the statements at issue[52] and would not be relevant even if they did, since they are publicly reported and thus known to investors.[53]  And Plaintiffs have not connected any "red flags" that do undermine a statement at issue (if there were any, which there are not) to any Individual Defendant or speaker.[54]

> ## ii.  The investigation into third parties and since-dismissed criminal charges do not advance the scienter calculus.

The FBI's investigation into the Wolf administration and the since-dismissed criminal charge against an Energy Transfer employee related to the hiring of security guards also fail to advance Plaintiffs' scienter argument.  Indeed, the case cited by Plaintiffs on this issue supports

---

("[P]laintiffs must make specific allegations about which corporate officer learned what facts, from what source, on what date.").

[51] Specifically, Plaintiffs rely upon two inapposite pre-*Tellabs* district court cases.  Opp. at 83 (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 608 (D.N.J. 2001); *Miller v. Material Scs. Corp.*, 9 F. Supp. 2d 925, 298 (N.D. Ill. 1998)).  Neither of these opinions rebuts the legal principles cited by Defendants.  *See* MTD Br. at 37-38.

[52] *See supra* § II.B.

[53] *See, e.g.*, Mariner East II, Department of Environmental Protection (2020), https://www.dep.pa.gov/Business/ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx (last visited Oct. 29, 2020); *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 452 (S.D.N.Y. 2005) ("[E]ven if the FDA approval letter could be said to have contradicted the December 1 Release in some sense, the FDA approval of Mucotrol was public information.  Plaintiffs have cited no case, and I am aware of none, where a plaintiff adequately pled scienter based solely on the contradiction between public information and the company's public statements."); *Special Situations Fund III QP, LP v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 431 (S.D.N.Y. 2014) ("[R]ed flags embedded in publicly available documents do not support an inference of scienter.")

[54] For example, Plaintiffs ignore—and therefore concede—Defendants' point that the Complaint contains no facts showing that field level reports could have been "red flags" for the Speaking Defendants.  *Compare* Opp. at 83-84, *with* MTD Br. at 37.  Plaintiffs also fail to address—and therefore concede—Defendants' argument that announcements of investigations pled in the Complaint could not demonstrate anything about the state of mind of the Speaking Defendants as to any statements before the investigations were disclosed beginning in December 2018.  ¶ 454; MTD Br. at 37.

Defendants because the court granted the motion to dismiss, found that scienter had not been adequately pled, and held that an investigation is not sufficient to support an inference of scienter. *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380, 383 (E.D.N.Y. 2013) (cited in Opp. at 84)). Furthermore, Plaintiffs offer nothing to support their contention that *dismissed* criminal charges and an investigation *that has not identified Energy Transfer as a target* support an inference of scienter here.  MTD Br. at 41.  Nor could they.  As was explained above, these investigations do not undermine any of the statements at issue and are thus irrelevant to scienter.

> iii. **Plaintiffs' core operations argument does not advance the scienter calculus.**

Plaintiffs also contend that they can allege scienter because the ME2 and Revolution pipelines constituted a "core operation" of Energy Transfer.  Opp. at 86-87.  But, as the Opening Brief points out, "[a]bsent some additional allegation of specific information conveyed to management and related to the fraud," such generalized allegations about the importance of the matter to the company "do[] not support a finding of scienter." *Martin*, 757 F. App'x at 155.  The Opposition does nothing to refute this.  To the contrary, the cases it cites confirm it.[55]  And here, as explained above, Plaintiffs have not alleged any individualized facts showing that "specific information" contradicting a statement at issue was conveyed to any Individual Defendant.  *See supra* § II.C.1.a.

> 2. **Plaintiffs have not alleged scienter as to the corporate defendant— Energy Transfer.**

Since the Complaint fails to allege that any of the persons that made the statements at issue had scienter, Plaintiffs can only hope to avoid dismissal of the entirety of their Complaint on

---

[55] *See, e.g.*, *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *21 (D.N.J. Dec. 27, 2019) ("In order to support a finding of scienter based upon the core operations doctrine, plaintiff must also allege 'some additional allegation of specific information conveyed to management and related to the fraud.'" (collecting cases)).

scienter grounds if they are able to plead scienter as to Energy Transfer under the doctrine of corporate scienter.

In the Opening Brief, Defendants acknowledged that "[t]he Third Circuit has not issued a published opinion accepting or rejecting the doctrine of corporate scienter." MTD Br. at 44. In the absence of such binding authority, Defendants argued that the Court should follow the Third Circuit's unpublished opinion in *In re Tyson Foods, Inc. Securities Litigation*, in which the court rejected the corporate scienter doctrine. 155 F. App'x 53, 57-58 (3d Cir. 2005); MTD Br. at 31, 44. In the Opposition, Plaintiffs ask the Court to instead follow the approach taken in a recent district court decision. Opp. at 76 (citing *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564 (D.N.J. June 5, 2020) (*Cognizant II*)). But even if the Court does so, it would have no effect on the outcome of this case. As *Cognizant II* notes, "[t]here are currently three approaches that divide the Circuit Courts of Appeals on this issue." 2020 WL 3026564, at *24. And Plaintiffs have failed to allege scienter as to Energy Transfer under each of them.

First is the approach set out in *Southland* and adopted by the panel in *Tyson*. Under that approach, a court should only "look to the state of mind of the individual corporate official or officials who ma[d]e or issue[d] the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Southland*, 365 F.3d at 366. Applying this approach, Plaintiffs' scienter allegations fail as to Energy Transfer because they have not alleged with particularity that any of the Individual Defendants, the other speakers, or any other individual at Energy Transfer acted with scienter.[56]

---

[56] *See Tyson,* 155 F. App'x at 57 ("Having concluded that there is no primary liability on the part of any of the individual officers, the District Court properly held that Tyson Foods could not itself be primarily liable under the

Second is the approach adopted by the Sixth Circuit in *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 476 (6th Cir. 2014).  Under this approach, which is the one quoted at length in the Opposition (Opp. at 76), the states of minds of the following individuals are "probative for purposes of determining whether a misrepresentation made by a corporation was made by it with the requisite scienter": (1) the maker of the statement at issue, (2) any individual who authorized, requested, commanded, furnished information for, prepared, reviewed, or approved the statement, and (3) any high managerial agent or member of the board of directors who ratified, recklessly disregarded, or tolerated the misrepresentation after its utterance or issuance.  *Id.*  This approach is only marginally broader than the *Southland/Tyson* approach and Plaintiffs' scienter allegations fail under it for the same reason they failed under the *Southland/Tyson* approach: Plaintiffs have not alleged with particularity that *any* individual at Energy Transfer—let alone one that falls into one of the Sixth Circuit's three categories—acted with scienter.  *See supra* § II.C.1.a.

Third is the approach discussed (but not adopted) by the Third Circuit in *Horizon Lines.* 442 F. App'x at 676-77.  Under this approach, scienter can be applied to the corporation in certain "extraordinary" circumstances.  *Id.*  As the Opening Brief points out, however, Plaintiffs have not—and cannot—allege that such extraordinary circumstances existed here.  *See* MTD Br. at 45-47.  Plaintiffs do not contest this in the Opposition, thereby waiving any argument that they have established scienter under the third approach.[57]

*         *         *

---

facts of this case.") (citing *Southland*, 365 F.3d at 366; *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("[T]here is no case law supporting an independent 'collective scienter' theory.").

[57]  Indeed, the Opposition never even cites *Horizon Lines* (cited in MTD Br. at 45) or refers to "extraordinary" circumstances standard, thus conceding the argument.  *See Khan*, 2017 WL 590262, at *2 n.3.

In sum, the Opposition does nothing to change the Opening Brief's conclusion that, viewing the Complaint as a whole, Plaintiffs have failed to allege the requisite strong inference of scienter as to any Individual Defendant. And they have likewise failed to allege that, in the absence of particularized facts pleading a strong inference that Individual Defendant acted with scienter, scienter can be found as to Energy Transfer. Accordingly, the Complaint should be dismissed for failing to sufficiently allege scienter as to any Defendant.

**D.    The Opposition does not demonstrate that the Complaint pleads loss causation.**

In the Opening Brief, Defendants argued that loss causation had not been pled as to certain statements at issue because the purported corrective disclosures did not disclose (1) previously undisclosed information that (2) corrected these statements. *See generally* MTD Br. at 47-51. Instead of responding to these straightforward points, the Opposition again repeats averments from the Complaint without explaining how the deficiencies identified by Defendants are cured.

**1.    The Opposition fails to refute that the purported corrective disclosures did not reveal new information as to certain challenged statements.**

To allege loss causation, Plaintiffs must identify "[c]orrective disclosures [that] present facts to the market that are new, that is, publicly revealed for the first time." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011) (affirming dismissal for failure to do so); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (same). Thus Plaintiffs fail to plead loss causation when the pleadings and cited sources make clear that information was disclosed prior to an alleged corrective disclosure. *See Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 177 (E.D.N.Y. 2019) (collecting and discussing cases). Plaintiffs cannot dispute this principle in the Opposition and, as explained below, fail to explain how the purported "corrective disclosures" they identify for numerous of the

statements at issue satisfy its requirement.  Thus, as the Opening Brief explained, those statements should be dismissed for failing to plead loss causation.

### a.   Statements 2-8, 9-12, and 21-24

As described above, Statements 2 through 8, which predated Statement 1 and provided earlier in service dates than did Statement 1, were superseded by Statement 1.  *See supra* § II.B.1.b.  Similarly, Statements 21 through 24, which preceded Statement 25 and provided construction forecasts for the Revolution Pipeline, were superseded by Statement 25, which accurately disclosed that construction had finished.  *See supra* § II.B.3.

Plaintiffs' arguments to the contrary are nonsensical.  For example, it makes no sense to argue that investors first learned that ME2 would not enter into service in the fourth quarter of 2017, months after they were told in May 2018 (via Statement 1) that the projection had been revised to mid-to-late 3Q 2018.  Nor does it make sense to argue that investors first learned that construction of Revolution would not be complete in the fourth quarter of 2017 until months after they were told in February 2018 (via Statement 25) that construction was completed in the first quarter of 2018.  Rather, Statements 1 and 25 fully corrected those earlier statements with Energy Transfer's up-to-date status updates.  And, once those earlier estimates had been corrected, they could not be corrected again.  *See In re China Organic Sec. Litig.*, 2013 WL 5434637, at *8 (S.D.N.Y. Sept. 30, 2013) ("[P]laintiffs cannot allege loss causation every time a firm restates an earlier corrective disclosure.").[58]

Similarly, Statement 13 makes a capacity estimate for ME2 that is not actionable for the reasons explained above.  *See supra* § II.B.1.c.  Statements 9 through 12, which make the same

---

[58] Notwithstanding the Opposition's mis-portrayal, this conclusion has nothing to do with whether a corrective disclosure must be a "mirror image" of the purported misstatement (a contention Defendants never made).  *See* Opp. at 91.  It merely means that once a statement has been corrected, it is no longer capable of causing investor losses.

capacity estimate at an earlier time, must therefore fail as well.  *Id.*

### b.    Statements 15 & 16

Plaintiffs have done nothing to resuscitate their loss causation allegations for Statements 15 and 16, which were statements about the submission of drilling re-evaluation reports.  As discussed in the Opening Brief, none of the alleged corrective disclosures revealed the truth allegedly contradicting Statements 15 and 16.  MTD Br. at 49.  Faced with the fact that the market was not informed of this information until after all the purported corrective disclosures pled in the Complaint, MTD Br. at 49, Plaintiffs try to change their theory of liability.  They now argue that the market somehow inferred from the disclosure about the need to use the 12-inch pipe that the re-evaluation reports had not been submitted.  Opp. at 93.

Plaintiffs' argument that investors would have made this inference is based on a highly strained reading of unpled facts.[59]  But, even if this inference had been plausibly pled, it would not suffice to establish loss causation for Statements 15 and 16.  After all, Plaintiffs concede that Energy Transfer announced that the smaller pipeline would be used on July 3, 2018.  ¶¶ 171, 359.[60]  Thus, Plaintiffs' contention that investors first learned this fact on August 12, 2018 (a peculiar date to choose, since the Complaint does not allege any announcements at all on it) fails and cannot establish loss causation.  *Katyle*, 637 F.3d at 473 (loss causation can only be based on information

---

[59] Specifically, pointing to two unpled exhibits, Plaintiffs assert that "at least two of the four sites for which Energy Transfer had not submitted reevaluation reports . . . were along the drilling path that necessitated the [use of the smaller pipeline]."  Opp. at 93.  It is hard to understand how Plaintiffs get to this conclusion, as they point to 40 pages of unpled exhibits with no pin-cites whatsoever.  *Id.*  But, even if these sites were along that drilling path, Plaintiffs have not alleged (or even argued) that it was the purported failure to submit HDD re-evaluation reports that caused Energy Transfer to use the smaller pipeline.  Thus, the announcement that the smaller pipeline would be used would not reveal anything about Statements 15 or 16.  *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *14 (S.D.N.Y. Mar. 30, 2012) ("An alleged corrective disclosure that does not reveal the falsity of Defendants' challenged public statements cannot establish loss causation . . . .").

[60] Plaintiffs do not allege that this disclosure was a corrective disclosure.  Nor could they, as Energy Transfer's unit price rose following the announcement.

43

being "publicly revealed *for the first time*" (emphasis added)).

c.      <strong>Statements 27-37, 42-44</strong>

Statements 27 through 37 and 42 through 44 were allegedly corrected by an October 27, 2018 *Associated Press* article and an October 29, 2018 DEP order.  *See* ¶ 432.  As Defendants pointed out in the Opening Brief, neither of the incidents supports loss causation.

The *Associated Press* article merely "re-published" an article "initially written by the *Pittsburgh Post-Gazette*" (which Plaintiffs did not plead the date of let alone claim that its publication on this unpled date caused them harm).  ¶ 410.  The *Associated Press* article thus did not reveal any new information to the market and cannot establish loss causation.  *Katyle*, 637 F.3d at 473.[61]  In recognition of this, Plaintiffs now improperly attempt to amend their Complaint via argument,[62] asserting that the *Pittsburgh Post-Gazette* article was published on October 21, 2018 and caused them losses.  Opp. at 96.  Even if Plaintiffs could add these new allegations via the Opposition (and they cannot), the new allegations would not suffice to establish loss causation.  This is because Plaintiffs did not allege that the *Pittsburgh Post-Gazette* article disclosed any new facts.  They now argue that it revealed "new interviews with local residents impacted by the construction of the pipeline."  Opp. at 95.  But the Complaint omits the interview portions of the article altogether and never mentions them.  ¶ 410.  And, even if Plaintiffs could now rely on these unpled sections of the article, that would still not be enough to plead loss causation: "Investors cannot establish loss causation merely by relying on an after-the-fact 'negative characterization of

---

[61] *Pingtan Marine* expressly refutes Plaintiffs' contention (Opp. at 95-96) that such cases are not applicable at the motion to dismiss stage.  *Pingtan Marine*, 379 F. Supp. 3d at 178 (dismissing claims on this basis and collecting cases doing likewise).  This is because it is Plaintiffs' burden to allege a corrective disclosure that revealed new information, not an affirmative defense Defendants must prove.  *Id.* (rejecting Plaintiffs' argument that this "loss causation argument actually is a 'truth on the market' affirmative defense").

[62] Plaintiffs cannot amend their Complaint in the Opposition to a Motion to Dismiss.  *See Dunkin Donuts*, 2014 WL 12618097, at *2.  Plaintiffs had an opportunity to amend after receiving the Opening Brief.  Fed. R. Civ. P. 15(a)(1)(B).  Having declined to do so, they must stand on their allegations as pled.

44

already-public information'"—which is all Plaintiffs could plausibly argue that the sole interview

in the *Pittsburgh Post-Gazette* article provides.  *In re CRM Holdings, Ltd. Sec. Litig.,* 2013 WL

787970, at *6 (S.D.N.Y. Mar. 4, 2013).

Plaintiffs also seek to rely on an October 29, 2018 Order of the DEP.  Opp. at 94-95.  As

the Opening Brief explains, this allegation fails because Plaintiffs do not plead when this Order

became public.  MTD Br. at 50 n.85.  Plaintiffs again impermissibly attempt to amend their

pleading to add this fact in their Opposition.  They point to a Westlaw News version of the DEP's

press release concerning the order bearing "00:00:00" at the top.[63]  Even if the Court could consider

this unpled fact at this stage, it establishes nothing about when the press release was issued.  Rather,

"00:00:00" simply indicates that the press release issued by the state did not carry a time stamp.[64]

Plaintiffs' suggestion to the contrary is too implausible to be relied upon, even at the pleadings

stage.  After all, the Westlaw article Plaintiffs suggest was filed at the stroke of midnight says that

the DEP "today issued a field order" and attaches that field order, dated October 29,

2018.  Plaintiffs' current contention is apparently that the DEP was operating until late in the night

*on a Sunday* (October 28, 2019) and then, *before a single second passed* on Monday morning, they

*both* signed a field order and issued a press release about the order.  And they must *also* contend

that this press release was picked up and published by a third party news site—*still without a single

second passing by*.  The Court need not indulge this obvious absurdity.  Plainly the 00:00:00 on

Plaintiffs' article indicates there was no time stamp on it at all, meaning that Plaintiffs have not

argued (let alone plausibly alleged) any fact showing that news of the DEP Order was public before

---

[63] Opp. Ex. 6  (ECF 49-8).

[64] This can be confirmed by looking up the press release itself on the state's website, showing that the press release has no time stamp. *DEP Issues Compliance Order to ETC for Violations on Revolution Pipeline*, PENNSYLVANIA NEWSROOM (Oct. 30, 2018), https://www.media.pa.gov/Pages/DEP_details.aspx?newsid=1091.

trading closed on October 29, 2018.  *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d

792, 801 (S.D.N.Y. 2015) ("The Court need not accept . . . implausible inferences.").[65]

### d.      Statements 36-37, 55-57

Plaintiffs try to allege loss causation for Statements 36, 37, and 55 through 57 by using a

December 2018 press release.  Opp. at 97.  But they again fail to identify any new information that

was not revealed in one of the earlier articles they cite in the Complaint.  Instead, they rely on the

Chester County District Attorney's characterizations of already-public information, which is not

enough to establish loss causation.  *CRM Holdings,* 2013 WL 787970, at *6.[66]

### 2.      The Opposition's authority on whether investigations alone adequately plead loss causation is not persuasive.

The Opposition contends that Defendants' argument about investigations alone being

insufficient to plead loss causation "misapprehends the law," Opp. at 98, but the cases cited by

Plaintiffs do not undermine Defendants' position.  For one thing, to the extent those non-binding

district court cases support Plaintiffs' position, they are simply wrong about the law.  Although

the Third Circuit has not yet ruled on the question of whether an announcement of an investigation

alone can be a corrective disclosure, the answer to that question is clear: the mere announcement

of an investigation, without more, is insufficient.[67]   That rule is based on the simple fact that

investigations do not always lead to findings of wrongdoing.  At most, the announcement of an

investigation reveals the *possibility* or *risk* that some wrongdoing has occurred.  And "[i]f the

---

[65] Energy Transfer's unit price rose on October 30, 2018.  Accordingly, if the DEP Press Release and Order became public after the close of trading on October 29, 2018, they cannot support causation.

[66] The already-public information has nothing to do with the discrete issues discussed in Statements 55 through 57, and thus fails to allege loss causation as to those statements for that reason as well.  MTD Br. at 50.

[67] *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-10 (9th Cir. 2016); *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323–24 (5th Cir. 2014); *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014); *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017).

disclosure of a mere *risk* of fraud [were] enough to trigger loss causation, a private cause of action for securities fraud would accrue every time an allegation or rumor of wrongdoing circulated." *In re Almost Family, Inc. Sec. Litig.*, 2012 WL 443461, at *12 (W.D. Ky. Feb. 10, 2012).

Moreover, even if an investigation announcement *could* suffice to plead loss causation, Plaintiffs still have only (1) an open investigation that does not target Energy Transfer to support their effort to plead causation about supposed misconduct in obtaining the permits and (2) criminal charges against an Energy Transfer employee that have been dismissed to support their effort to plead causation about the supposed misconduct in hiring constables.  Even under the cases cited by Plaintiffs, that is not enough.[68]

### E.    The Opposition does not save Plaintiffs' control person claims.

As it does with Defendants' other arguments, the Opposition's assertions about control person liability misstate the applicable law, Defendants' position, and the allegations of the Complaint.  Defendants never conceded that control person liability had been pled as to anyone, as the Opposition contends.  Opp. at 100.  Rather, Defendants expressly stated that the control person claims failed as to all Defendants because Plaintiffs had not adequately pled an underlying violation of Section 10(b).  MTD Br. at 52.

In addition, contrary to the Opposition's suggestion that control is a uniquely factual question not properly determined on a motion to dismiss, Opp. at 100-01, a court may properly decide whether control has adequately been pled on a motion to dismiss.  *See, e.g., Steamfitters*

---

[68] Nearly all of the non-binding cases cited in the Opposition involved more than just the announcement of an investigation or complaint. *See, e.g., Utesch v. Lannett Co., Inc.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019) (stating that "'the announcement of an investigation . . . standing alone' does not qualify as a corrective disclosure," but "much more [than simply an investigation] is alleged here").  Plaintiffs suggest in a footnote that they have pled something more than an announcement of an investigation.  Opp. at 99 n.41  But the "something more" is just the dismissed criminal charges and a stock drop. *See* ¶¶ 427-31.  A stock drop and a government enforcement action—even one still pending—were insufficient to plead loss causation in *GNC Holdings*, 2017 WL 3974002, at *18, and they are insufficient here.

*Local 49 Pension Fund v. Alter*, 2011 WL 4528385, at *12 (E.D. Pa. Sept. 30, 2011) (dismissing control person claim asserted against president of subsidiary among others) (cited in MTD Br. at 53). Defendants do not ask the Court to make any factual determination about control; rather, in their Opening Brief, Defendants explained why the Complaint failed to plead the elements of both control and culpable participation as to Hennigan and McGinn under either the heightened standard of the PSLRA or Rule 8 notice pleading. MTD Br. at 52-54. In response, the Opposition repeats the allegations of the Complaint about obtaining the permits (which were approved in February 2017) and baldly asserts that these averments show that Hennigan and McGinn influenced and directed the activities of the primary violator. Opp. at 101. The Opposition, however, never addresses—and therefore concedes—Defendants' point that Hennigan and McGinn worked at Sunoco not Energy Transfer before April 2017. MTD Br. at 53. Nothing in the Opposition or *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *28 (D.N.J. Mar. 24, 2008) (cited in Opp. at 101) supports or even relates to an argument that control of an alleged primary violator can be based on conduct prior to an individual's employment by the alleged primary violator. Thus, the Opposition's reliance on conduct obtaining the permits fails to plead that either Hennigan or McGinn has the power to influence and direct the operations of Energy Transfer.

The Opposition similarly fails to refute Defendants' point that Plaintiffs have not pled facts showing how Hennigan and McGinn, who were both in positions junior to the Speaking Defendants, possessed the power to control the Speaking Defendants or Energy Transfer. Instead, Plaintiffs rely upon two inapposite district court decisions from the Second Circuit: *Audet v. Fraser*, 2017 WL 4542386, at *6-*7 (D. Conn. Oct. 11, 2017), and *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008) (cited in Opp. at 102). *Audet* is irrelevant because, in that case, the plaintiff alleged the individual owned half of the companies and was

involved in major strategic decisions and operations.  2017 WL 4542386, at *7 (listing examples of strategic decisions and operations involving the individual).  Similarly, the individuals in *Katz* signed the company's 10-K filings or allegedly "ran the operations."  542 F. Supp. 2d at 276.  No such averments are present in the Complaint with respect to Hennigan or McGinn.  In fact, the Complaint contains no factual allegations about the nature and scope of either Hennigan's or McGinn's positions at Energy Transfer, only their titles.  Thus, no facts support Plaintiffs' assertions that either of them controlled Energy Transfer's operations.  Opp. at 102.

Lastly, Defendants continue to urge that culpable participation should be alleged at the pleading stage with particularity.  MTD Br. at 52; *accord Steamfitters Local 449 Pension Fund*, 2011 WL 4528385, at *11 (dismissing control person claims as to defendants because culpable participation had not been pled with particularity).  Regardless, Plaintiffs' assertion that Hennigan and McGinn had "direct and knowing participation in the underlying fraud" is a conclusory averment that fails even under the Rule 8 notice pleading standard.  The Complaint contains no factual allegations about any participation by Hennigan after he left Energy Transfer in June 2017.  Nor did McGinn purportedly have any involvement with or knowledge about construction decisions.  Thus, Plaintiffs fail to plead culpable participation as well, and the § 20(a) claim against Hennigan and McGinn should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed in its entirety and with prejudice.  In the alternative, Defendants request that the Court dismiss from this action all statements and Defendants for which the Court concludes there is no actionable claim.

Date: November 6, 2020

Respectfully submitted,

*/s/ Marc J. Sonnenfeld*

Marc J. Sonnenfeld (No. 17210)
Karen Pieslak Pohlmann (No. 60079)
Laura H. McNally (No. 310658)
Amanda F. Lashner (No. 314443)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  215.963.5000
Facsimile:  215.963.5001
marc.sonnenfeld@morganlewis.com
karen.pohlmann@morganlewis.com
laura.mcnally@morganlewis.com
amanda.lashner@morganlewis.com

Michael C. Holmes
Jeffrey S. Johnston
Craig E. Zieminski
Robert Ritchie
VINSON & ELKINS LLP
2001 Ross Ave., Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
Fax: (214) 999-7923
mholmes@velaw.com
jjohnston@velaw.com
czieminski@velaw.com
rritchie@velaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Marc J. Sonnenfeld, hereby certify that on November 6, 2020, true copies of the

foregoing Reply Brief in Support of Defendants' Motion to Dismiss were served on all counsel

of record via the Court's ECF System.

*s/ Marc J. Sonnenfeld*