**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE, DENVER EMPLOYEES RETIREMENT PLAN, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS NATIONAL PENSION FUND, and IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>ENERGY TRANSFER LP, KELCY L. WARREN, THOMAS E. LONG, MARSHALL MCCREA, and MATTHEW S. RAMSEY,<br><br>       Defendants. | **Case No. 2:20-cv-00200-GAM** |

**DEFENDANTS' ANSWER TO PLAINTIFFS'
OPERATIVE CLASS ACTION COMPLAINT**

Defendants Energy Transfer LP, Kelcy L. Warren, Thomas E. Long, Marshall McCrea, and Matthew S. Ramsey ("Defendants"), deny each and every allegation in Plaintiffs' Operative Class Action Complaint ("Complaint") except as specifically admitted herein, and, using the same paragraph number as the Complaint, allege and state as follows:

# ANSWER

## I.    INTRODUCTION[1]

1.    Paragraph 1 purports to describe the action and contains Plaintiffs' purported legal conclusions for which no response is required.  To the extent a response is required, Defendants admit that Plaintiffs purport to bring claims under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 for a purported class of investors.  Defendants deny the legal merit of these claims or that they are appropriate for class certification.

2.    Admitted.

3.    Denied.

4.    Defendants admit that, on September 10, 2018, a pipeline release and fire occurred on the Revolution pipeline, which caused no injuries.  Otherwise, denied.

5.    Denied.

6.    Denied.

7.    Denied, except for the second-to-last sentence, which is admitted.

8.    Defendants admit that there was planning involved in constructing a pipeline in 21st century Pennsylvania, including with respect to the geology of Pennsylvania, and the use of HDD. In all other respects, Paragraph 8 contains Plaintiffs' argumentative opinions and legal conclusions for which no response is required and contains terms that are too vague to admit and/or that call for legal conclusions.  To the extent a further response is required, denied.

9.    Paragraph 9 purports to contain certain subjective opinions and impressions of John Quigley.   Defendants  lack  knowledge  or  information  sufficient  to  form  a  belief  about  Mr.

---

[1] Headings and prefatory material in the Complaint are not substantive allegations to which an answer is required; if these items are treated or intended as substantive allegations, Defendants deny them.

Quigley's subjective opinions and impressions.  On that basis, Defendants deny these allegations.
Otherwise, denied.

10.     Denied.

11.     Denied.

12.     Denied.

13.     Defendants admit that on February 13, 2017, the DEP announced its approval of
permit applications from Sunoco Pipeline L.P. for the PA Pipeline Project/Mariner East 2 Pipeline
Project.  Paragraph 13 also purports to contain certain subjective opinions and impressions of John
Quigley.  Defendants lack knowledge or information sufficient to form a belief about whether
these statements accurately reflect Mr. Quigley's subjective opinions and impressions.  On that
basis, Defendants deny these allegations.  Defendants further lack knowledge or information
sufficient to form a belief as to the truth of Plaintiffs' characterization of the end of Quigley's
employment as DEP Secretary.  On that basis, Defendants deny these allegations.  To the extent a
further response is required, denied.

14.     Denied.

15.     Defendants admit that the quoted words, except the bracketed language, in
Paragraph 15 appear, respectively, in Energy Transfer's transcript of conference calls with
investors held on May 4, 2017, February 22, 2018, and May 10, 2018, and in the various investor
presentations made from May 31, 2017 until August 14, 2018.  These documents speak for
themselves and are the best evidence of their contents.  Otherwise, denied, including, but not
limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

16.     Defendants admit that a section of an existing pipeline was utilized for initial in-service of ME2.  Defendants admit that the Revolution pipeline was not in service as of June 15, 2020, but had previously been in service prior to September 10, 2018.  Otherwise, denied.

17.     Defendants admit that the quoted words, except the bracketed language, in Paragraph 17 appear, respectively, in Energy Transfer's transcript of conference calls with investors held on November 8, 2017, and February 22, 2018, and in a January 26, 2018 *StateImpact Pennsylvania* article.  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations

18.     Denied.

19.     Denied.

20.     Defendants admit that a section of an existing pipeline was utilized for initial in-service of ME2.  Otherwise, denied.

21.     Defendants admit that, on September 10, 2018, a pipeline release and fire occurred on the Revolution pipeline, which caused no injuries.  Defendants admit that an assessment of the incident site showed there had been earth movement in the vicinity of the pipeline.  Defendants admit that on October 29, 2018, the DEP issued a field order to ETC Northeast Pipeline, LLC relating to the Revolution Pipeline project.  The order speaks for itself and is the best evidence of its contents.  Defendants admit that the Revolution pipeline was not in service as of June 1, 2020, but had previously been in service prior to September 10, 2018.  Otherwise, denied.

22.     Paragraph 22 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on December 19, 2018.  Defendants admit that the press release contains the quoted words in Paragraph 22.  The press release speaks for itself and is the best

evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

23.     Paragraph 23 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on December 19, 2018.  Defendants admit that the press release contains the quoted words, except the bracketed language, in Paragraph 23.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

24.     Paragraph 24 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on August 8, 2019.  Defendants admit that the press release contains the second and third quotations, except the bracketed language, in Paragraph 24, and that an article published by *3CBS Philly* contains the quoted words in the first quotation.  The press release and article speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

25.     Paragraph 25 is a characterization of a November 12, 2019 article published in *The Associated Press*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 25.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

26.     Paragraph 26 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on December 3, 2019.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

27.     Paragraph 27 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on December 3, 2019.  Defendants admit that the press release contains the quoted words that appear in Paragraph 27.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

28.     Denied.

## II.     JURISDICTION AND VENUE

29.     Defendants admit that the Complaint purports to seek remedies pursuant to Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).  Defendants deny that Plaintiffs are entitled to any such remedies and further deny all other allegations in Paragraph 29.

30.     Defendants admit that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

31.     Defendants admit that venue is proper under § 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Defendants admit that they have conducted business in this district.  Otherwise, denied.

32.     Defendants admit that they used the means and instrumentalities of interstate commerce to make public statements.  Otherwise, denied.

## III.    PARTIES

### A.     Lead Plaintiffs

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.  On that basis, Defendants deny the allegations in Paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.  On that basis, Defendants deny the allegations in Paragraph 34.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.  On that basis, Defendants deny the allegations in Paragraph 35.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.  On that basis, Defendants deny the allegations in Paragraph 36.

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.  On that basis, Defendants deny the allegations in Paragraph 37.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, including the addendum.  On that basis, Defendants deny the allegations in Paragraph 38, including the addendum.

**B.     Defendants**

39.     Admitted.

40.     Admitted.

41.     McReynolds has been dismissed from this action and is no longer a Defendant in this action.  To the extent a response is required, admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Hennigan has been dismissed from this action and is no longer a Defendant in this action.  To the extent a response is required, admitted.

46.     McGinn has been dismissed from this action and is no longer a Defendant in this action.  To the extent a response is required, admitted.

47.     Defendants admit that Plaintiffs sometimes do so.

48.     Defendants admit that Plaintiffs sometimes do so.

49.     Paragraph 49 states legal conclusions for which no response is required.  To the extent a response is required, denied.

## IV.     SUMMARY OF THE FRAUD

### A.     Energy Transfer Embarked on the Simultaneous Construction of Several Pipeline Projects Through Pennsylvania

50.     Defendants admit that the Mariner East pipeline system provides the needed infrastructure to transport propane, ethane and butane, all known as natural gas liquids (NGLs), from the Marcellus and Utica Shale fields to markets in Pennsylvania and beyond.  The second sentence is admitted.  Defendants admit that the DEP has stated that the pipeline will traverse 17 counties in the southern tier of Pennsylvania.  Otherwise, denied.

51.     Admitted.

52.     Defendants admit that ME2 is an NGL pipeline.  Defendants admit that a section of an existing pipeline was utilized for initial in-service of ME2.  Otherwise, denied.

53.     Defendants admit that they planned to construct ME2X as a 16-inch pipeline alongside ME2 to provide capacity of up to 250,000 barrels per day.  Otherwise, denied.

54.     Defendants admit that the Revolution Pipeline originates in Butler County, Pennsylvania and that a cryogenic gas processing plant was planned in Western Pennsylvania and that the NGLs from this plant were planned to be delivered to Sunoco Logistics' (SXL) Mariner

East pipeline system for delivery to domestic and export markets.  Defendants admit the final

sentence in Paragraph 54 and that the Revolution project had the potential to increase product

flows to Marcus Hook.  Otherwise, denied.

55.    Defendants lack knowledge or information sufficient to form a belief about the

accuracy and authenticity of the map in Paragraph 55.  On that basis, Defendants deny the

allegations in Paragraph 55.

**B.    Energy Transfer Was Motivated to Rush Through the DEP's Approval of the ME2 Permits to Avoid Public Criticism of the Pipeline's Serious, Undisclosed Risks to Human Life**

56.    The first sentence is admitted.  Defendants admit that ethane is colorless and

odorless and may be used to produce ethylene, which may be used for a variety of purposes and

end-uses, including detergent and anti-freeze.  Defendants admit that ethane is flammable.

Otherwise, denied.

57.    Defendants admit that, on September 10, 2018, a pipeline release and fire occurred

on the Revolution pipeline, which caused no injuries.  Defendants admit that NGLs are flammable.

Otherwise, Paragraph 57 characterizes an October 26, 2018 article published by *The New Yorker*.

Defendants admit that the article contains the quoted words in Paragraph 57.  The article speaks

for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as

to, mischaracterizations and selective quotations.

58.    Paragraph 58 characterizes a publication of the U.S. Department of Energy entitled

*Natural Gas Liquids Primer – With a Focus on the Appalachian Region*.  The article speaks for

itself and is the best evidence of its contents.  Defendants admit that ethane processed at the Marcus

Hook terminal may be used for exports.  Otherwise, denied.

59.    The first sentence of Paragraph 59 contains legal arguments for which no response

is required.  To the extent a response is required, denied.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the second sentence in Paragraph 59.  On

that basis, Defendants deny the allegations in the second sentence of Paragraph 59.  Otherwise,

denied.  Defendants admit Footnote 1.

60.     Paragraph 60 purports to characterize an assessment conducted by citizens.  The

assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied.  Footnote

2 purports to characterize an assessment.  The assessment speaks for itself and is the best evidence

of its contents.  Otherwise, denied.

61.     Paragraph 61 purports to characterize an assessment conducted by citizens.  The

assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied.

62.     Defendants deny Plaintiffs' characterization of "The Energy Transfer Companies'"

purported subjective motives, and thus deny the first sentence in Paragraph 62.  Otherwise, denied.

**C.     Energy Transfer Obtained the ME2 Permits Through Intimidation and Coercion of Government Officials Despite the Applications Being Facially Deficient**

63.     Defendants admit that Energy Transfer has a Code of Conduct that was mentioned

in its 2016 Form 10-K and published on its website.  The 2016 Form 10-K and the Code of Conduct

speak for themselves and are the best evidence of their contents.  Otherwise, denied.

64.     Paragraph 64 purports to characterize Energy Transfer's Code of Conduct.

Defendants admit that the Code of Conduct contains the quoted words, except the bracketed

language, in Paragraph 64.  The Code of Conduct speaks for itself and is the best evidence of its

contents.  Otherwise, denied, including, but not limited to, mischaracterizations, added emphases,

bracketed language, and selective quotations.

65.     Paragraph 65 purports to characterize Energy Transfer's Code of Conduct.

Defendants admit that the Code of Conduct contains the quoted words, except the bracketed

language, in Paragraph 65.  The Code of Conduct speaks for itself and is the best evidence of its

contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

66.     Paragraph 66 purports to characterize Energy Transfer's Code of Conduct. Defendants admit that the Code of Conduct contains the quoted words in Paragraph 66.  The Code of Conduct speaks for itself and is the best evidence of its contents.  Otherwise, denied including, but not limited as to, mischaracterizations and selective quotations.

67.     Paragraph 67 purports to characterize Energy Transfer's Code of Conduct. Defendants admit that the Code of Conduct contains the quoted words, except the bracketed language, in Paragraph 67.  The Code of Conduct speaks for itself and is the best evidence of its contents.   Otherwise, denied including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

68.     Paragraph 68 purports to characterize Energy Transfer's Code of Ethics. Defendants admit that Energy Transfer has a Code of Ethics, and that the Code of Ethics contains the quoted words, except the bracketed language, in Paragraph 68.  The Code of Ethics speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

69.     Paragraph 69 purports to characterize Energy Transfer's 2016 10-K and subsequent filings with the SEC.  Defendants admit that the 2016 10-K contains the quoted words, except the bracketed language, in Paragraph 69.  The 2016 10-K and subsequent filings with the SEC speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

70.     Defendants deny the first two sentences in Paragraph 70.   The third sentence characterizes a November 12, 2019 news article published by *The Associated Press*.   The article speaks for itself and is the best evidence of its contents.   Otherwise, denied.

71.     Defendants deny the first sentence in Paragraph 71.   The second sentence states a legal conclusion for which no response is required.   To the extent a response is required, denied.

### 1.     2015:  Energy Transfer Begins the Permitting Process for ME2

72.     Defendants admit that the 10-K filed by Energy Transfer on March 2, 2015 stated that "Mariner East 2 is expected to commence operations in the fourth quarter 2016."   The second sentence's use of vague and undefined terms (e.g. "greenfield," "complex," and "time consuming") renders it insufficiently specific to provide Defendants with the information necessary to form a belief about the truth of its allegations.   Defendants admit that ME2 is approximately 350 miles and traverses approximately 17 Pennsylvania counties and numerous properties.   Otherwise, denied.

73.     Defendants admit that ME2 required regulatory review prior to beginning construction, including permitting by the DEP.   Otherwise, denied.

74.     Paragraph 74 states legal conclusions for which no response is required.   To the extent a response is required, denied.

75.     Paragraph 75's first sentence states legal conclusions for which no response is required.   Defendants admit that HDD was used in the construction of ME2 and admit the final sentence in Paragraph 75.   Otherwise, denied.   Footnote 3 is admitted.

76.     Defendants admit that HDD can pose certain risks.   The remainder of Paragraph 76 purports to characterize DEP permit proposals.   The permit proposals speak for themselves and are the best evidence of their contents.   Otherwise, denied.

77.     Admitted.

**2.      March-May 2016:  After DEP Secretary Quigley Warned Sunoco that DEP Would Deny the ME2 Permits, the Governor "Ushered [Him] Out"**

78.     Denied.

79.     Paragraph 79 purports to characterize posts on the Twitter account of a third-party. The Twitter posts speak for themselves and are the best evidence of their contents.  Defendants lack knowledge or information sufficient to confirm or deny the nature of the termination of John Quigley's employment with the DEP and, on that basis, deny the allegations.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

80.     Paragraph 80 characterizes a report of John Quigley.  Defendants lack knowledge or information sufficient to form a belief as to the truth in Paragraph 80 and, on that basis, deny the allegations.  Otherwise, denied.

81.     Denied.

82.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82.  On that basis, Defendants deny the allegations in Paragraph 82.

83.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 83, which purports to relate certain subjective opinions and impressions of John Quigley.  On that basis, Defendants deny the allegations in Paragraph 83.

84.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 84.  On that basis, Defendants deny the allegations in Paragraph 84.

85.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 85.  On that basis, Defendants deny the allegations in Paragraph 85.

86.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86.  On that basis, Defendants deny the allegations in Paragraph 86.

87.     Defendants lack knowledge or information sufficient to form a belief about the truth of the first two sentences in Paragraph 87 and as to whether Quigley said the words quoted in the final sentence.  On that basis, Defendants deny those allegations.  Defendants admit that on February 13, 2017, the DEP announced its approval of permit applications from Sunoco Pipeline L.P. for the PA Pipeline Project/Mariner East 2 Pipeline Project.  Defendants admit that Energy Transfer filed a 10-K on February 24, 2017.  Otherwise, denied.

### 3.     Energy Transfer's Permits for ME2 Were Riddled with Deficiencies

88.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.  On that basis, Defendants deny the allegations in Paragraph 88.

89.     Paragraph 89 characterizes one of the anonymous public comments received by the DEP in connection with the approval of Sunoco's permits.  Defendants admit that the anonymous comment contains the quoted words in Paragraph 89.  The comments speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

90.     Defendants deny the first sentence in Paragraph 90.  The remainder of Paragraph 90 characterizes an article published in *Philadelphia* magazine on July 6, 2019.  Defendants admit

that the article contains the quoted words in Paragraph 90.  The article speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

91.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.  On that basis, Defendants deny the allegations in Paragraph 91.

92.     The first sentence in Paragraph 92 characterizes technical deficiency letters sent by the DEP on September 6, 2016.  These letters speak for themselves and are the best evidence of their contents.  The remainder of Paragraph 92 characterizes an article published by *StateImpact Pennsylvania* on September 15, 2016.  Defendants admit that the article contains the quoted words in Paragraph 92.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

93.     Paragraph 93 characterizes an article published by *StateImpact Pennsylvania* on September 15, 2016.  Defendants admit that the article contains the quoted words in Paragraph 93. The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

94.     Paragraph 94 characterizes an article published in *The Philadelphia Inquirer* on November 11, 2016.  Defendants admit that the article contains the quoted words in Paragraph 94. The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

### 4.     The Pennsylvania DEP Was Statutorily Required to Deny Deficient Permits

95.     Defendants admit that the DEP conducted certain regulatory review over the ME2 project.   Defendants admit that ME2 had the potential to impact soil and water resources. Otherwise, Paragraph 95 contains legal conclusions for which no response is required.   To the extent a further response is required, denied.

96.     Paragraph 96 states legal conclusions for which no response is required.   To the extent Paragraph 96 characterizes Pennsylvania statutes, the statutes speak for themselves and are the best evidence of their contents.   Otherwise, denied.

97.     Paragraph 97 states legal conclusions for which no response is required.   To the extent Paragraph 97 characterizes Pennsylvania statutes, the statutes speak for themselves and are the best evidence of their contents.   Otherwise, denied.   Defendants admit that Footnote 4 quotes the text of 25 PA Code § 105.13a.   This statute speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

98.     Paragraph 98 states legal conclusions for which no response is required.   To the extent a response is required, denied.

99.     Defendants admit that Sunoco submitted responses to the DEP's technical deficiency letters on December 5, 2016.   The responses speak for themselves and are the best evidence of their contents.   Defendants lack knowledge or information sufficient to form a belief about the truth of the DEP's motivations in determining whether to seek additional public comment.   On that basis, Defendants deny the allegations.   Otherwise, denied.

100.    Paragraph 100 purports to characterize an article from the *Pittsburgh Post-Gazette.* Defendants admit that the article contains the quoted words in Paragraph 100.   The article speaks

for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

101.    Paragraph 101 purports to characterize an article from the *Pittsburgh Post-Gazette.* Defendants admit that the article contains the quoted words in Paragraph 101.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**5.    The Governor's Office Exerted Undue Pressure on the DEP to Approve the Permits, Which Sailed Through Despite the Deficiencies**

102.    Paragraph 102 purports to characterize an article from *StateImpact Pennsylvania* published on January 26, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 102.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

103.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 103.  On that basis, Defendants deny the allegations in Paragraph 103.

104.    Denied.

105.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 105.  On that basis, Defendants deny the allegations in Paragraph 105.

106.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 106.  On that basis, Defendants deny the allegations in Paragraph 106.

107.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107.  On that basis, Defendants deny the allegations in Paragraph 107.

108.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 108.  On that basis, Defendants deny the allegations in the first sentence of Paragraph 108.  The remainder of Paragraph 108 purports to characterize the transcript of a deposition of  Domenic Rocco.  Defendants admit that Domenic Rocco was deposed on October 26, 2017.  The deposition transcript and exhibits thereto speak for themselves and are the best evidence of their contents.  Otherwise, denied.  Footnote 5 characterizes the transcript of a deposition of Domenic Rocco.  Defendants admit that Domenic Rocco was deposed on October 26, 2017.  The deposition transcript and exhibits thereto speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

109.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 109.  On that basis, Defendants deny the allegations in Paragraph 109.

110.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110.  On that basis, Defendants deny the allegations in Paragraph 110.

111.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111.  On that basis, Defendants deny the allegations in Paragraph 111.

112.     Paragraph 112 purports to characterize an article from *StateImpact Pennsylvania* published on January 26, 2018.  Defendants admit that the article contains the quoted words in Paragraph 112.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

113.     Paragraph 113 purports to characterize an article from *StateImpact Pennsylvania* published on January 26, 2018.  Defendants admit that the article contains the quoted words in Paragraph 113.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

114.     Paragraph 114 purports to characterize an article from *StateImpact Pennsylvania* published on December 10, 2016.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 114.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

115.     The first three sentences of Paragraph 115 purport to characterize "technical deficiency letters" from the DEP, purported drafts thereof, and responses thereto.   These documents, to the extent they exist, speak for themselves and are the best evidence of their contents.  The remainder of Paragraph 115 purports to characterize an article from *StateImpact Pennsylvania* published on February 7, 2017.  Defendants admit that the article contains the quoted words in Paragraph 115.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

116.    Defendants admit that on February 13, 2017, the DEP announced its approval of permit applications from Sunoco Pipeline L.P. for the PA Pipeline Project/Mariner East 2 pipeline project.  Otherwise, denied.

117.    Paragraph 117 purports to characterize articles from *StateImpact Pennsylvania.* Defendants admit that the articles contain the quoted words, except the bracketed language, in Paragraph 117.  The articles speak for themselves and are the best evidence of their contents. Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

118.    The first sentence is denied.  The remainder of Paragraph 118 purports to characterize permits issued by the DEP.  The permits speak for themselves and are the best evidence of their contents.  Otherwise, denied.

119.    The second and third sentences purport to characterize an article published by *StateImpact Pennsylvania.*  Defendants admit that the article contains the quoted words in Paragraph 119.  The article speaks for itself and is the best evidence of its contents.  Defendants lack knowledge or information sufficient to form a belief about the truth of the final sentence in Paragraph 119 and, on that basis, deny the allegations.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

120.    Paragraph 120 purports to characterize an article from *The Guardian* published on April 8, 2019.  Defendants admit that the article contains the quoted words in Paragraph 120.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

121.    Paragraph 121 purports to characterize an article from *The Guardian* published on April 8, 2019.  Defendants admit that the article contains the quoted words in Paragraph 121.  The

article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

122.    Paragraph 122 purports to characterize an article from *The Guardian* published on April 8, 2019.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 122.  The article speaks for itself and is the best evidence of its contents. Defendants lack knowledge or information sufficient to form a belief about the truth of the final sentence in Paragraph 122.  On that basis, Defendants deny the allegations.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

123.    Paragraph 123 purports to characterize an article from *StateImpact Pennsylvania* published on December 10, 2016.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 123.  The article speaks for itself and is the best evidence of its contents.  Defendants lack knowledge or information sufficient to form a belief about the truth of the final sentence in Paragraph 123.  On that basis, Defendants deny the allegations.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

124.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124.  On that basis, Defendants deny the allegations in Paragraph 124.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Footnote 6.  On that basis, Defendants deny the allegations in Footnote 6.

**D.      Energy Transfer Ruins Lisa Drive, Bribes Government Officials to Intimidate Local Residents and Creates the "Frankenpipe" (Which Causes Delay and Reduces the ME2 Throughput)**

125.    Defendants admit the quoted words, except the bracketed language, in Paragraph 125 appear, respectively, in Energy Transfer's transcript of conference calls with investors held on November 8, 2017 and February 22, 2018, in an advertisement published in a Harrisburg

newspaper, and in a July 6, 2019 article in *Philadelphia* magazine.  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

126.   Defendants admit the quoted words, except the bracketed language, in Paragraph 126 appear, respectively, in Energy Transfer's Form 10-K filed with the SEC on February 24, 2017, and in a presentation made in conjunction with the 2017 MLPA Investor Conference held in Orlando, Florida.  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

127.   Denied.

128.   Defendants admit that they began construction after the necessary permits were issued.  Defendants admit that on May 9, 2017, the DEP issued a Notice of Violation to Sunoco Pipeline, L.P. that states that "on May 3, 2017, the [DEP] received notice of an inadvertent release of drilling solution . . . in . . . Delaware County."  Defendants admit that the DEP sent Sunoco Pipeline, L.P. 36 notices of violation relating to pipeline construction activities in 2017 and 55 in 2018.  Otherwise, denied.

129.   Denied.

130.   Paragraph 130 states legal conclusions for which no response is required.  To the extent a response is required, denied.

> 1.   **August 2017:  As a Result of Litigation, Energy Transfer Is Forced to Re-Evaluate the Risk Profiles of 63 HDD Sites, Including Sites in the Vicinity of Lisa Drive**

131.   Paragraph 131 characterizes a legal filing dated February 13, 2017 before the Environmental Hearing Board.  The filing speaks for itself and is the best evidence of its contents.  Otherwise, denied.

132.    Paragraph 132 characterizes a legal filing dated February 14, 2017 before the Environmental Hearing Board.   The filing speaks for itself and is the best evidence of its contents. Otherwise, denied.

133.    Paragraph 133 characterizes a report to the DEP and an article published by *The Associated Press* on October 27, 2018.  Defendants admit that the article contains the quoted words in Paragraph 133.  The article and report speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

134.    Paragraph 134 characterizes a legal order made by the Environmental Hearing Board.  Defendants admit that the order contains the words quoted in Paragraph 134 and is signed by Judge Bernard A. Labuskes, Jr.  The order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

135.    Defendants lack knowledge or information sufficient to form a belief about the truth of Paragraph 135's characterizations of the statements and recollections of an unnamed witness. On that basis, Defendants deny the allegations in Paragraph 135.

136.    Paragraph 136 characterizes a stipulation of settlement filed in a case before the Environmental Hearing Board and dated July 26, 2018.  The stipulation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

137.    Paragraph 137 characterizes an article published by *StateImpact Pennsylvania* on July 27, 2018.  Defendants admit that the article contains the quoted words in Paragraph 137.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

138.    Paragraph 138 characterizes a legal order made by the Environmental Hearing Board on August 10, 2017.  The order speaks for itself and is the best evidence of its contents. Otherwise, denied.

139.    Paragraph 139 characterizes a legal order made by the Environmental Hearing Board on August 10, 2017.  The order speaks for itself and is the best evidence of its contents. Otherwise, denied.

140.    Paragraph 140 purports to characterize a legal order made by the Environmental Hearing Board on August 10, 2017.  Defendants admit that the order contains the quoted words, except the bracketed language, in Paragraph 140.  The order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

141.    The first sentence in Paragraph 141 characterizes a legal order made by the Environmental Hearing Board on August 10, 2017.  The order speaks for itself and is the best evidence of its contents.  The remainder of Paragraph 141 characterizes an article published in the *Pittsburgh Post-Gazette*.  The article speaks for itself and is the best evidence of its contents. Otherwise, denied. As to Footnote 7, Defendants admit that an HDD IR Plan was filed by Sunoco dated December 2, 2016.  The HDD IR Plan speaks for itself and is the best evidence of its contents.  Otherwise, denied.

142.    Paragraph 142 characterizes an HDD IR Plan.  The plan speaks for itself and is the best evidence of its contents.  Otherwise, denied.

143.    Paragraph 143 purports to characterize 27 "HDD Reevaluation Reports."  The HDD Reevaluation Reports speak for themselves and are the best evidence of their contents.  Otherwise,

denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.  Defendants deny the allegations in Footnote 8.

 2. **November 2017:  An Outside Consultant Tells Sunoco to Stop Using HDD in the Exton Area Near Lisa Drive, Yet Sunoco Proceeds and Causes Dangerous Sinkholes**

144.    Defendants admit the first sentence in Paragraph 144 with the exception of the permit ID numbers Plaintiffs have associated with their respective HDD drilling sites in Paragraph 144.  Defendants admit the second sentence.  The remainder of Paragraph 144 purports to characterize the Void Mitigation Plan, which speaks for itself and is the best evidence of its contents.  Otherwise, denied.

145.    Paragraph 145 characterizes a report from Groundwater & Environmental Services, Inc. that is publicly available on the DEP's website and that contains the quoted words in Paragraph 145.  The report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

146.    Denied.

147.    Denied.

148.    The first sentence of Paragraph 148 is a characterization of the transcript of conference calls with investors held on November 8, 2017.  The transcript speaks for itself and is the best evidence of its contents.  Defendants admit that the quoted words in the first sentence of Paragraph 148 appear in Energy Transfer's transcript of conference calls with investors held on November 8, 2017.  Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., which states that "[o]n November 11, 2017" the DEP "received notice of an inadvertent release . . . near 479 Lisa Drive."  The second sentence of Paragraph 148 is a characterization of this notice, which speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

149.     Paragraph 149 purports to characterize a class action filing made on March 15, 2018.  The filing speaks for itself and is the best evidence of its contents.  Otherwise, denied.

150.     Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., in which it states that the DEP conducted an inspection of the area near 479 Lisa Drive in West Whiteland Township, Chester County, PA and enclosed the investigation report.  The investigation report speaks for itself and is the best evidence of its contents.  Otherwise, denied.

151.     Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P.  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

152.     Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P.  Paragraph 152 characterizes that Notice of Violation.  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

153.     Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P.  Paragraph 153 characterizes that Notice of Violation.  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

154.     Denied.

155.     Paragraph 155 characterizes an email dated July 17, 2018.  Defendants admit that the email contains the quoted words in Paragraph 155.  The email speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.  Footnote 9 is admitted.

156.     Paragraph 156 characterizes an article in *Philadelphia* magazine dated March 22, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language,

in Paragraph 156.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

157.    Paragraph 157 characterizes purported filings by "the Lisa Drive Plaintiffs."  The reports speak for themselves, to the extent they exist, and are the best evidence of their contents.  Otherwise, denied, including but not limited as to, mischaracterizations, bracketed language, and selective quotations.

158.    Paragraph 158 characterizes purported filings by "the Lisa Drive Plaintiffs." Defendants admit that the filing contains the quoted words, except the bracketed language, in Paragraph 158.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

159.    Paragraph 159 purports to characterize a PUC Press release published on January 21, 2019.  Defendants admit that the press release contains the quoted words, except the bracketed language, in Paragraph 159.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

160.    Paragraph 160 characterizes an article on *Philadelphia.CBSlocal.com* dated January 21, 2019.  Defendants admit that the article contains the quoted words in Paragraph 160.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

161.    Defendants admit that Sunoco bought two homes on Lisa Drive for approximately $400,000 each.  Otherwise, denied.

3.   **2017 Through 2019:   Energy Transfer Bribes Pennsylvania State Constables to Intimidate Homeowners on Lisa Drive and Throughout Pennsylvania**

162.   Denied.

163.   As to the first sentence and the first two bullet points, Defendants admit that Energy Transfer has a Code of Conduct that was mentioned in its 2016 and 2017 10-Ks and published on its website.  The Code of Conduct contains the quoted words, except the bracketed language, in the first sentence and the first two bullet points.  The 2016 10-K, 2017 10-K, and the Code of Conduct speak for themselves and are the best evidence of their contents.  As to the third bullet point, Defendants admit that the website energytransferfacts.com  published a statement on December 21, 2018 containing the quoted words, except for the bracketed language, in the third bullet point.  The statement speaks for itself and is the best evidence of its contents.  As to the fourth bullet point, Defendants admit that an article published by *StateImpact Pennsylvania* on January 4, 2019 contains the quoted words.  The article speaks for itself and is the best evidence of its contents.  As to the fifth bullet point, Defendants admit that an  article published by *NBC10 Philadelphia* contains the quoted words.  The article speaks for itself and is the best evidence of its contents.  As to the sixth bullet point, Defendants admit that an article published by *Law360.com* on March 12, 2019 contains the quoted words in the second and third set of quotation marks in the sixth bullet point.  The article speaks for itself and is the best evidence of its contents.  As to the seventh bullet point, Defendants admit that a July 6, 2019 article in *Philadelphia* magazine contains the quoted words.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

164.   Denied.

165.    Paragraph 165 characterizes and selectively quotes purported "internal Energy Transfer documents" and a text message.  These documents, to the extent they exist, speak for themselves and are the best evidence of their contents.  Otherwise, denied, including but not limited as to, mischaracterizations, added emphases, and selective quotations.

166.    Paragraph 166 characterizes an email and a criminal complaint.  The email, to the extent it exists, and criminal complaint speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited to, any and all substantive and legal allegations of the criminal complaint.

167.    Paragraph 167 characterizes purported police reports.  The police reports, to the extent they exist, are the best evidence of their contents and speak for themselves.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

4.    **2018:  Energy Transfer Cobbles Together a Nearly 100-Year-Old, 12-Inch Pipe with the 20-Inch ME2 Pipe to Create a "Frankenpipe" Through the Pipeline Route Near the Lisa Drive Sinkholes**

168.    Denied.

169.    Paragraph 169 characterizes and selectively quotes from various ill-defined "investor presentations."  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied.

170.    Denied.

171.    Paragraph 171 characterizes an article published by *StateImpact Pennsylvania* on July 3, 2018.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

172.    Paragraph 172 characterizes an article published by *StateImpact Pennsylvania* on July 3, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 172.  The article speaks for itself and is the best evidence of its contents.

Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

173.    Denied.

174.    Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 174's characterization of these statements.  On that basis, Defendants deny Paragraph 174.

175.    Defendants admit that, on June 14, 2018, the PUC adopted an order that Paragraph 175 purports to characterize.  The order speaks for itself and is the best evidence of its contents. Defendants deny the second sentence in Paragraph 175.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

176.    Paragraph 176 characterizes statements purportedly made by a third party. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176.  On that basis, Defendants deny the allegations in Paragraph 176.

177.    Paragraph 177 characterizes actions and analyses purportedly undertaken by third parties.  Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 177's characterization of these actions and analyses.  On that basis, Defendants deny the allegations in Paragraph 177.

178.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178.  On that basis, Defendants deny the allegations in Paragraph 178.

179.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179.  On that basis, Defendants deny the allegations in Paragraph 179.

180.     Defendants admit that, on June 14, 2018, the PUC entered an order that Paragraph 180 purports to characterize.  The order speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

181.     Denied.

### 5.     December 2018:  Chester County Launches an Investigation of Energy Transfer

182.     Paragraph 182 characterizes a press release of the Chester County District Attorney. Defendants admit the press release contains the quoted words, except the bracketed language, in Paragraph 182.   The press release speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

183.     Paragraph 183 characterizes a statement published by Energy Transfer on December 21, 2018, on its website.  Defendants admit that the statement contains the quoted words, except the bracketed language, in Paragraph 183.  The statement speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

184.     Paragraph 184 characterizes an article published by *StateImpact Pennsylvania* on January 4, 2019.  Defendants admit that the article contains the quoted words in Paragraph 184. The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

185.     As to the first sentence, Defendants admit that the *Delaware County Daily Times* website published an article dated March 5, 2019, which speaks for itself and is the best evidence of its contents.  Defendants further admit that *StateImpact Pennsylvania* published an article dated the same day that contains the quoted words, except the bracketed language, in Paragraph 185.

The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

> **6.     December 2019:  DA Hogan Files Criminal Charges Against Energy Transfer's Security Chief for Bribing Pennsylvania State Constables to Intimidate Homeowners**

186.    Defendants admit that on December 3, 2019, Thomas Hogan issued a press release that his office had announced the filing of criminal charges against Frank Recknagel containing the quoted words in the final sentence.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

187.    Defendants admit that on December 3, 2019 Thomas Hogan issued a press release containing the quoted words.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

188.    Paragraph 188 characterizes the criminal complaint discussed in the preceding Paragraphs.  That complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the criminal complaint.

189.    Denied.

190.    Paragraph 190 states legal conclusions for which no response is required.  Moreover, Pennsylvania law speaks for itself and is the best evidence of its contents.  Otherwise, denied.

191.    Paragraph 191 states legal conclusions for which no response is required.  Moreover, Pennsylvania law speaks for itself and is the best evidence of its contents.  Otherwise, denied.

192.    Paragraph 192, and Footnote 10, characterize the criminal complaint discussed in the preceding Paragraphs.  The complaint speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the criminal complaint.

193.    Paragraph 193 characterizes the criminal complaint discussed in the preceding Paragraphs.  The complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including but not limited as to, any and all substantive and legal allegations of the criminal complaint.

194.    Paragraph 194 characterizes a press release issued by the Chester County District Attorney's Office on January 22, 2019.  Defendants admit that the press release contains the quoted words in the final sentence in Paragraph 194.  The press release speaks for itself and is the best evidence of its contents.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 194, which concern purported actions of DA Hogan's office and "team."  Defendants deny the allegations on this basis. Otherwise, denied, including, but not limited as to, mischaracterizations, selective quotations and any and all substantive and legal allegations of the criminal complaint.

195.    Paragraph 195 characterizes the criminal complaint discussed in the preceding Paragraphs.  The complaint speaks for itself and is the best evidence of its contents.  Defendants lack knowledge or information sufficient to form a belief about the truthfulness of the photographs, and therefore deny the final sentence in Paragraph 195 on this basis.  Otherwise, denied, including but without limitation as to, any and all substantive and legal allegations of the criminal complaint.

196.    Defendants lack knowledge or information sufficient to form a belief about the truthfulness of the allegations in Paragraph 196.  On that basis, Defendants deny the allegations in Paragraph 196.

197.    Defendants lack knowledge or information sufficient to form a belief about the truthfulness of the allegations in Paragraph 197.  On that basis, Defendants deny the allegations in Paragraph 197.

198.    Denied as to the final sentence.   Defendants lack knowledge or information sufficient to form a belief about the truthfulness of the allegations in Paragraph 198.  On that basis, Defendants deny the allegations in Paragraph 198.

199.    Paragraph 199 characterizes the criminal complaint discussed in the preceding Paragraphs.  The complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, without limitation, including any and all substantive and legal allegations of the criminal complaint.

200.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 200.  On that basis, Defendants deny the allegations in Paragraph 200.

201.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 201. On that basis, Defendants deny the allegations in Paragraph 201.

202.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 202.  On that basis, Defendants deny the allegations in Paragraph 202.

203.     Defendants admit that on August 8, 2019, the Chester County District Attorney's Office issued a press release "announc[ing] the arrest" of Robel and Johnson.  Defendants admit that an *NBC 10 Philadelphia* article published on August 8, 2019 contains the quoted words, except the bracketed language, in Paragraph 203.  The press release and article speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

204.     Defendants admit that on December 3, 2019, DA Hogan published a press release containing the quoted words in Paragraph 204.  The statement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

205.     Paragraph 205 characterizes the criminal complaint discussed above.  The complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the criminal complaint.

206.     Defendants admit Energy Transfer's affiliates have contracted with TigerSwan prior to the Mariner East project, including the Dakota Access pipeline.  The second through final sentences of Paragraph 206 characterizes an article published by *The Intercept*.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.  Defendants believe no response is required to Footnotes 11 and 12, which contain no allegations.  To the extent a response is required, denied.

207.     Paragraph 207 characterizes the criminal complaint discussed in the preceding Paragraphs.  The complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including but not limited as to, any and all substantive and legal allegations of the criminal complaint.

208.    Denied as to the first two sentences.  The remainder of Paragraph 208 purports to characterize various TigerSwan and Raven Knights communications.  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied.

209.    Paragraph 209 characterizes a press release issued by DA Hogan on December 3, 2019.  Defendants admit that the press release contains the quoted words in Paragraph 209.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**E.    Energy Transfer's Revolution Pipeline Explodes, Rendering the Revolution Pipeline Inoperative to this Day**

210.    Denied.

211.    Denied.

212.    Paragraph 212 characterizes various Edgemarc and PennEnergy contracts.  Those contracts speak for themselves and are the best evidence of their contents.  Defendants lack sufficient knowledge or information to form a belief about EdgeMarc's purported motivations.  Otherwise, denied.

213.    Paragraph 213 characterizes a deposition of Alan Vaina.  The deposition speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

214.    Paragraph 214 characterizes a deposition of Adam Arthur.  The deposition speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

215.    Defendants deny the first sentence in Paragraph 215.  Defendants admit that Energy Transfer's May 4, 2017 conference call transcript contains the quoted words in the first bullet point.  Defendants admit that Energy Transfer's August 9, 2017 conference call transcript contains

the quoted words in the second bullet point.  Defendants admit that Energy Transfer's November 8, 2017 conference call transcript contains the quoted words, except the bracketed language, in the third bullet point.  Defendants admit that Energy Transfer's February 22, 2018 conference call transcript contains the quoted words in the fourth bullet point.  Defendants admit that Energy Transfer's May 10, 2018 conference call transcript contains the quoted words in the fifth bullet point.  Defendants admit that Energy Transfer's August 9, 2018 conference call transcript contains the quoted words, except the bracketed language, in the sixth bullet point.  The conference call transcripts speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

216.   Denied.

217.   Denied.

218.   Defendants admit that, on September 10, 2018, a pipeline release and fire occurred on the Revolution pipeline, which caused no injuries.  Otherwise, denied.

219.   Denied.

220.   Denied.

**1.   Energy Transfer Commits Hundreds of Permit Violations When Constructing the Revolution Pipeline**

221.   The first sentence is admitted.  Otherwise, Paragraph 221 characterizes the ESCG permits.  These permits speak for themselves and are the best evidence of their contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

222.   Defendants admit that Terracon issued a Geohazard Evaluation Report.  Otherwise, Paragraph 222 purports to characterize the Hazard Report.  Defendants admit that the Hazard Report contains the quoted words, except the bracketed language, in Paragraph 222.  The Hazard

Report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

223.    Paragraph 223 purports to characterize the Hazard Report.  Defendants admit that the Hazard Report contains the quoted words in Paragraph 223.  The Hazard Report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

224.    Paragraph 224 purports to characterize the Hazard Report.  Defendants admit that the Hazard Report contains the quoted words in Paragraph 224.  The Hazard Report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

225.    Paragraph 225 purports to characterize the Hazard Report.  Defendants admit that the Hazard Report contains the quoted words, except the bracketed language, in Paragraph 225. The Hazard Report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

226.    Denied.

227.    Denied.

228.    Paragraph 228 purports to characterize certain ESCG permits, PCSM Plans, and E&S Plans.  These permits speak for themselves and are the best evidence of their contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

229.     Paragraph 229 purports to characterize certain E&S Plans.  These permits speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

230.     Paragraph 230 purports to characterize certain responses to E&S Plans.  These responses speak for themselves and are the best evidence of their contents.  Otherwise, denied.

231.     The first and third sentences in Paragraph 231 are denied.  Defendants admit that, in June 2018, ETC Northeast Pipeline LLC entered into a Consent Order and Agreement with the DEP to settle various statutory and common law claims relating to soil discharge into, and erosion of the stream bed of, Raccoon Creek in Center Township, Pennsylvania during construction of the Revolution Pipeline.  Defendants lack knowledge or information sufficient to form a belief about the truth of Paragraph 231's allegations concerning purported actions taken by and conclusions of the DEP prior to the entry of the Consent Order and Agreement.  On that basis, Defendants deny the allegations.  Otherwise, denied.

232.     The first sentence of Paragraph 232 states legal conclusions for which no response is required.  To the extent a response is required, denied.  Otherwise, Paragraph 232 purports to characterize the June 2018 Consent Order and Agreement.  The June 2018 Order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

233.     Defendants admit that Energy Transfer informed investors of the existence of the June 2018 Order.  Defendants deny the remaining allegations in Paragraph 233, including but not limited as to any allegation that Defendants' disclosures were materially insufficient or misleading in any way.

234.     Paragraph 234 characterizes the June 2018 Order which speaks for itself and is the best evidence of its contents.  Defendants admit that the Energy Transfer or one of its affiliates received certain citations in the construction of the Revolution pipeline.  Those citations speak for themselves and are the best evidence of their contents.  Otherwise, denied.

235.     Defendants admit that an incident involving movement of fill slope in the pipeline right-of-way near Penny Hollow Road was first observed in February 2018.  The remainder of Paragraph 235 selectively quotes from various unidentified documents, which speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

236.     Denied.

237.     Denied.

238.     Paragraph 238 characterizes a Consent Order and Agreement of January 3, 2020 between ETC Northeast Pipeline, LLC and the DEP.  The Consent Order and Agreement speaks for itself and is the best evidence of its contents.  Otherwise, denied.

239.     Defendants admit that the Consent Order and Agreement of January 3, 2020 between ETC Northeast Pipeline, LLC and the DEP states that ETC reported that the Revolution Pipeline was mechanically complete and ready to be placed into commercial service on or about June 1, 2018.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

240.     Paragraph 240 purports to describe the contents of various daily reports prepared by Primoris Services Corp. and the Hanging H Company.  The reports speak for themselves and are the best evidence of their contents.  Otherwise, denied.

241.    Paragraph 241 purports to describe the contents of various government reports.  The reports speak for themselves and are the best evidence of their contents.  Otherwise, denied.

242.    Denied.

**2.      September 2018:  Energy Transfer's Egregious Misconduct Causes the Revolution Pipeline to Explode**

243.    Denied.

244.    Defendants admit that, on September 10, 2018, a pipeline release and fire occurred on the Revolution pipeline, which caused no injuries.  Otherwise, denied.

245.    Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 245's characterization of the experiences of unidentified individuals.  Otherwise, denied.

246.    Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 246's characterization of the experiences of unidentified individuals.  Defendants lack knowledge or information sufficient to form a belief as to the authenticity of the photographs in Paragraph 246.  Otherwise, denied.

247.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 247.  On that basis, Defendants deny the allegations.

248.    Paragraph 248 purports to characterize a letter sent to residents of Ivy Lane.  The letter speaks for itself and is the best evidence of its contents.  The third sentence is denied.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

**3.      Energy Transfer's Response to the Revolution Explosion Worsens Investors' Losses**

249.    Defendants deny the first two sentences in Paragraph 249.  The remaining sentences purport to characterize letters sent to EdgeMarc and PennEnergy.  The letters speak for themselves

and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

250.    Denied.

251.    The first sentence in Paragraph 251 purports to characterize contracts with EdgeMarc and PennEnergy.  The contracts speak for themselves and are the best evidence of their contents.  The second and third sentences are legal conclusions for which no response is required.  To the extent a response is required, the second and third sentences are denied.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the final sentence in Paragraph 251.  Otherwise, denied.

252.    Defendants admit that the Beaver County Conservation District issued multiple citations.   The citations speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

253.    Defendants admit that PennEnergy and EdgeMarc raised contractual disputes with an affiliate of Energy Transfer.  Otherwise, denied.

254.    Paragraph 254 characterizes a post-incident investigation report.  The report speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

### 4.    Energy Transfer's Post Explosion Misconduct and Misrepresentations

255.    Defendants admit that on October 29, 2018, the DEP issued a Compliance Order to ETC Northeast Pipeline, LLC, relating to the Revolution Pipeline project.  The order speaks for itself and does not contain the quoted words in Paragraph 255.  Otherwise, denied.

256.    Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy

Transfer's stock price closed at $15.46 per share on October 26, 2018 and closed at $14.84 per share on October 29, 2018. Otherwise, denied, including, but not limited as to, any suggestion that the drop was caused by the issuance of the DEP order discussed above.

257.    Paragraph 257 characterizes a DEP press release published on October 30, 2018. Defendants admit that the press release contains the quoted words in Paragraph 257. The press release speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

258.    Defendants admit that an investor presentation dated December 5, 2018 contains the quoted words, except the bracketed language, in Paragraph 258. The presentation speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

259.    Paragraph 259 purports to characterize a Notice of Appeal with the Environmental Hearing Board. The Notice of Appeal speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

260.    Defendants admit a Stabilization Plan, Landslide Plan, and Updated ESC Plan was submitted on December 3, 2018. Defendants further admit that between March 1, 2019 and December 9, 2019, six revisions of the Stabilization Plan, Landslide Plan, and Updated ESC Plan were submitted and that the DEP issued letters with respect to these revisions on five occasions between March 1, 2019 and December 9, 2019. Otherwise, denied.

261.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 261 concerning actions of DEP inspectors. On that basis, Defendants deny the allegations. Otherwise, denied.

262.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 262.  On that basis, Defendants deny the allegations in Paragraph 262.

263.    Denied.

264.    Defendants deny the first sentence.  Defendants admit that the DEP addressed a letter to Energy Transfer Partners dated February 8, 2019, which speaks for itself and is the best evidence of its contents.  The letter contains the quoted words, except the bracketed language, in Paragraph 264.  Defendants admit that the DEP published a notice dated February 8, 2019, which speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

265.    Defendants admit that the DEP published a statement dated February 8, 2019.  The statement speaks for itself and is the best evidence of its contents.  The statement contains the quoted words, except the bracketed language, in the first sentence in Paragraph 265.  Defendants admit that the DEP addressed a letter to Energy Transfer Partners dated February 8, 2019.  The letter speaks for itself and is the best evidence of its contents.  Defendants admit the letter contains the quoted words in the final sentence in Paragraph 265.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

266.    Defendants admit that the transcript of Energy Transfer's February 21, 2019 conference call contains the quoted words, except the bracketed language.  The transcript speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

267.    Paragraph 267 characterizes presentations from various investor conferences.  The presentations speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

268.    Defendants admit that the DEP addressed a letter to ETC Northeast Pipeline, LLC dated December 13, 2019 approving certain plans submitted by ETC pursuant to the DEP's October 29, 2018 Order.  Otherwise, denied.

269.    Paragraph 269 characterizes a Consent Order and Agreement of January 3, 2020 between ETC Northeast Pipeline, LLC and the DEP.  Defendants admit that the Consent Order and Agreement contains the quoted words, except the bracketed language, in Paragraph 269.  The Consent Order and Agreement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

270.    Defendants admit that on May 14, 2019, the DEP issued an order to ETC Northeast Pipeline, LLC, in which the DEP contends that ETC "[e]liminated at least twenty-three (23) streams," "[c]hanged the length of at least one hundred twenty (120) streams," and "[e]liminated at least seventeen (17) and altered seventy (70) wetland areas."  Otherwise, denied.

271.    Defendants admit that the DEP published a statement dated January 3, 2020, stating that it had "issued a $30.6 million civil penalty to ETC Northeast Pipeline (ETC) for violations related to the 2018 Revolution Pipeline explosion and fire."  Defendants admit that the statement contains the quoted words in the final sentence.  The statement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

272.     Paragraph 272 purports to characterize the January 2020 Order.  Defendants admit that the January 2020 Order contains the quoted words, except the bracketed language, in Paragraph 272.  That order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

273.     Defendants admit that an article dated April 27, 2020 published by the *Pittsburgh Post-Gazette*, contains the quoted words, except the bracketed language, in Paragraph 273.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

274.     The first sentence is denied.  The remainder of Paragraph 274 characterizes an article dated April 27, 2020 published by the *Pittsburgh Post-Gazette*.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

275.     Defendants admit that the January 2020 Order states, "In the event ETC fails to comply in a timely manner with any term or provisions of this Consent Order and Agreement, ETC shall be in violation of this Consent Order and Agreement, and . . . shall pay a civil penalty in the amount of $20,000 per day for each violation."  Paragraph 275 characterizes an article dated April 27, 2020 published by the *Pittsburgh Post-Gazette*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 275.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and  selective quotations.

276.     Defendants admit that an article dated April 27, 2020 published by the *Pittsburgh Post-Gazette* contains the quoted words, except the bracketed language, in Paragraph 276.  The

article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

277.   Defendants deny the first sentence.  Defendants admit that  a Pennsylvania Attorney General investigation is ongoing.  Defendants lack knowledge or information sufficient to form a belief about the remainder of Paragraph 277.  Otherwise, denied.

**F.**   **Energy Transfer's Reckless Pipeline Construction Resulted in Scores of Additional Violations, Regulatory Scrutiny and Consent Orders**

278.   Denied.

**1.**   **July 2017:  Sunoco Enters Into a Consent Order for Its Repeated ME2 Permit Violations that Polluted Drinking Water**

279.   The first sentence is denied.  Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 279's contentions about the third party conversations with the DEP.  Otherwise, denied.

280.   Defendants admit that Sunoco Pipeline, L.P. and the DEP entered into a Consent Order and Agreement dated July 24, 2017, containing the quoted words.  The Consent Order and Agreement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**2.**   **Energy Transfer Destroys the Loyalhanna and Raystown Lakes**

281.   Defendants admit that horizontal directional drilling was used as part of the construction of portions of ME2.  Defendants lack knowledge or information sufficient to form a belief about the truth in Paragraph 281's allegation concerning surveys conducted by a third party in 2014.  Otherwise, denied.

282.   Denied.

283.    Paragraph 283 purports to characterize an inspection of the Westmoreland County Conservation District.  The inspection speaks for itself and is the best evidence of its contents. Otherwise, denied.

284.    Defendants admit that on December 15, 2017 Sunoco Pipeline L.P. entered into a Consent Order and Agreement with the DEP, in which the DEP purports to find that:

- "On June 6, 2017, a pump used by Sunoco to contain an IR at Loyalhanna Lake ran out of fuel and Sunoco discharged approximately 25 gallons of IR Materials to Loyalhanna Lake;"

- "On June 6, 2017, while conducting HDD operations at Loyalhanna Lake, Sunoco released an unknown amount of IR Materials to an upland portion of the Recreation Area;"

- "On July 16, 2017, the sandbag containment structure installed at the Loyalhanna Lake Recreation Area in order to manage IRs failed and Sunoco discharged 20 gallons of IR Materials to Loyalhanna Lake and 300 gallons to an upland portion of the Recreation Area;" and

- "On July 17, 2017, while conducting HDD operations at Loyalhanna Lake, Sunoco discharged approximately 80 gallons of IR Materials to Loyalhanna Lake and released 720 gallons to an upland portion of the Recreation Area."

Any further allegations in Paragraph 284 are denied.

285.    Paragraph 285 purports to characterize an inspection of the Westmoreland County Conservation District.  The inspection speaks for itself and is the best evidence of its contents. Otherwise, denied.

286.    Paragraph 286 purports to characterize an inspection of the Westmoreland County Conservation District.  The inspection speaks for itself and is the best evidence of its contents. Otherwise, denied.

287.    Defendants admit that on December 15, 2017 Sunoco Pipeline L.P. entered into a Consent Order and Agreement with the DEP, which Paragraph 287 purports to characterize and which contains the quoted words.  The Consent Order and Agreement speaks for itself and is the

best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

288.   Denied.

289.   Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a consent agreement with the DEP in which the DEP purported to find that "[o]n December 11, 2017, Sunoco reported a LOC of approximately 2,000 gallons at the Raystown Lake HDD Site earlier in the day during the pilot hole stage of the 16-inch diameter pipeline." The second sentence is denied.  Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a consent agreement with the DEP in which the DEP purported to find that "On December 20, 2017, Sunoco reported that an approximate 25-gallon IR of HDD fluids ('drilling fluids') to the surface of the ground at the Raystown Lake HDD Site had occurred earlier in the day."  Any further allegations in Paragraph 289 are denied.

290.   Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a Consent Order and Agreement with the DEP in which the DEP purported to find that:

> "On March 5, 2018, Sunoco submitted to the Department a report titled '*Incident Assessment Memorandum, HDD Bore No. S2-0150A, Raystown Lake*' from Joe Biaglow, PG, and Tim Emerick, Jr., PG, of Rettew to Christopher Embry of Sunoco dated March 5, 2018 ('March 2018 Report'). The March 2018 Report indicated that during the construction of the 16-inch diameter pipeline, between the December 11, 2017 LOC and December 20, 2017 IR, additional LOCs that were previously unreported to the Department occurred on December 12, 13, 14, 15, 16, 18, 19, and 20, 2017, which comprised an additional 948,200 gallons of drilling fluid. The HDD IR PPC Plan (dated December 2, 2016 and Revised August 8, 2017) that was in effect at the time of the December 2017 LOCs at the Raystown Lake HDD Site required Sunoco to immediately report LOCs to DEP upon discovery. Sunoco's failure to report the required LOCs associated with the 16-inch line construction at the Raystown Lake HDD Site extended from December 12, 2017 until March 5, 2018, a total of 83 days."

Defendants deny any suggestion of wrongful or unlawful conduct.  Otherwise, denied.

291.    Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a Consent Order and Agreement with the DEP in which the DEP purported to find that:

> "On February 18, 2019 Sunoco submitted to the Department a report titled, '*Loss of Returns Summary, Raystown Lake HDD S2-0150*', dated February 15, 2019 by Greg Ayres, PG, and David Anderson, PG of Rettew ('February 2019 Report'). The February 2019 Report indicated that during the construction of the 20-inch pipeline at the Raystown Lake HDD Site between April 9, 2017 and October 30, 2017, LOCs had occurred on thirty-nine (39) separate days, which comprised a total of 2,008,000 gallons of drilling fluid. Thirty (30) of the thirty-nine (39) LOCs were required to be immediately reported to the Department under the HDD IR PPC Plan (dated December 2, 2016 and Revised August 8, 2017) that was in effect at the time of their occurrence. However, Sunoco only provided the Department with notification of one (1) of the thirty (30) LOCs. Sunoco's failure to report the required LOCs associated with the 20-inch line construction at the Raystown Lake HDD Site extended from September 23, 2017 until February 18, 2019, a total of 513 days."

Defendants deny any suggestion of wrongful or unlawful conduct.  Any further allegations in Paragraph 291 are denied.

292.    Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a Consent Order and Agreement with the DEP in which the DEP purported to find that:

> "On July 16, 2019 Sunoco submitted to the Department a report titled, 'Mariner East II Pennsylvania Pipeline Project, Sediment Profile Imaging, Raystown Lake, Pennsylvania, Inadvertent Return Assessment, Horizontal Directional Drill (S2-01510), Permit No. E31-234', dated June 2019 by Tetra Tech, Inc. and RJ Diaz and Daughters ('June 2019 Report'). The June 2019 Report contained the conclusion that drilling fluid were documented on a total of 8.06 acres of lake bottom."

Defendants deny any suggestion of wrongful or unlawful conduct.  Otherwise, denied.

293.    Paragraph 293 states legal conclusions for which no response is required.  To the extent a response is required, denied.

294.    Defendants admit that on January 3, 2020, Sunoco Pipeline, L.P. entered into a Consent Order and Agreement with the DEP.  That Consent Order and Agreement speaks for itself and is the best evidence of its contents.  Otherwise, denied.

### 3.    December 2017:  DEP Issues a Consent Order to Energy Transfer

295.    Defendants admit that the DEP assessed Sunoco a civil penalty on December 21, 2017. The Assessment speaks for itself and is the best evidence of its contents.  Defendants admit that the DEP's website states that Sunoco's "construction activities resulted in accelerated erosion and sedimentation at three sites in Lebanon County in violation of its permits and the Clean Streams Law. In each instance, Sunoco was required to install appropriate measures to effectively minimize the erosion and sedimentation issues at those sites."  The DEP website speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language and selective quotations.

### 4.    January-February 2018:  DEP Temporarily Suspends Construction of ME2, and Issues a $12.6 Million Fine

296.    Denied.

297.    Paragraph 297 characterizes the transcript of Energy Transfer's November 8, 2017 conference call with investors.  Defendants admit that the transcript contains the quoted words, except the bracketed language, in Paragraph 297.  The transcript speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

298.    Paragraph 298 characterizes the transcript of Energy Transfer's November 8, 2017 conference call with investors.  Defendants admit that the November 8, 2017 transcript contains the quoted words, except the bracketed language, in Paragraph 298.  The transcript speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

299.    Denied.

300.    Defendants deny the allegations in the first sentence in Paragraph 300.  Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., in which the DEP states that it received notice of a release of sediment at Berks Site 1.  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

301.    Defendants admit that on November 16, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., in which it states that it conducted inspections on November 13 and 14, 2017 and that the DEP "did not authorize the crossing of the [unnamed tributary] to Hay Creek (S-Q90) using HDD methodology."  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

302.    Defendants admit that Sunoco Pipeline, L.P.'s Berks County permit states that "[t]he permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as Class A wild trout fishery streams and their tributaries between October 1 and April 1 without the prior written approval of the Pennsylvania Fish & Boat Commission's Division of Environmental Services[.]"  The remainder of Paragraph 302 contains Plaintiffs' legal conclusions which do not require a response.  To the extent a response is required, denied.  Footnote 13 purports to characterize various permits.  The permits speak for themselves and are the best evidence of their contents.  Otherwise, denied.

303.    Defendants lack knowledge or information sufficient to form a belief about the truth of Paragraph 303's allegations about the purported actions of the BCCD.  Otherwise, denied.

304.    Defendants admit that on November 21, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., which states that the DEP "did not authorize the crossing of the [unnamed tributary] to Cacoosing Creek (S-C33) using HDD methodology."  The Notice of Violation speaks for itself and is the best evidence of its contents.  Otherwise, denied.

305.   Paragraph 305 purports to characterize a written response to the Notice of Violation.   The response speaks for itself and is the best evidence of its contents.   Otherwise, denied.

306.   Defendants admit that the DEP issued an Administrative Order on January 3, 2018, which Plaintiffs are characterizing in Paragraph 306.   This Order speaks for itself and is the best evidence of its contents.   The third sentence states a legal conclusion for which no response is required.   To the extent a further response is required, denied.

307.   The first sentence is denied.   Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 307.   On that basis, Defendants deny the allegations.

308.   Defendants admit that on December 22, 2017, the DEP sent a Notice of Violation to Sunoco Pipeline, L.P., which Plaintiffs are characterizing in Paragraph 308.   The Notice of Violation speaks for itself and is the best evidence of its contents.   Otherwise, denied.

309.   The first sentence is denied, except that Defendants admit that the DEP issued an Administrative Order on January 3, 2018, which speaks for itself and is the best evidence of its contents.   Defendants admit that the quoted words in Paragraph 309 are from a press release issued on January 3, 2018.   The press release speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

310.   Defendants admit that the DEP issued an Administrative Order on January 3, 2018.   Defendants admit that the Order contains the quoted words in Paragraph 310.   The Order speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphasis, and selective quotations.

311.    Defendants admit that the DEP issued an Administrative Order on January 3, 2018 that contains the quoted words, except the bracketed language, in Paragraph 311.  The Order speaks for itself and is the best evidence of its contents.  Defendants admit that a DEP press release contains the quoted words in the final sentence in Paragraph 311.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

312.    Defendants admit that Jeff Shields was quoted in an article dated January 3, 2018 by *StateImpact Pennsylvania* as making a statement that contains the quoted words, except the bracketed language, in Paragraph 312.  The statement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

313.    Defendants admit that Sunoco entered into a Consent Order and Agreement with the DEP on February 8, 2018 that included a civil penalty.  The Consent Order and Agreement speaks for itself and is the best evidence of its contents.  Otherwise, denied.

**5.      April 2018:  The DEP Orders Energy Transfer to Pay $355,000 for Multiple Violations of Pennsylvania Law**

314.    Defendants admit that on April 27, 2018 the DEP entered into a Consent Assessment with Sunoco Pipeline, L.P. that contains the quoted words, except the bracketed language, in Paragraph 314.  The Consent Assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

**6.      March-May 2018:   The Public Utility Commission Orders a Temporary Shutdown of ME1 and a Judge Halts ME2 Work**

315.    Defendants admit that on March 7, 2018 the PUC entered an Emergency Order related to Mariner East.  The Emergency Order speaks for itself and is the best evidence of its

contents.  The fourth sentence in Paragraph 315 characterizes an article published by *StateImpact Pennsylvania* on March 7, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 315.  The article speaks for itself and is the best evidence of its contents.  Defendants admit the fifth sentence in Paragraph 315.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

316.     Defendants admit that Pennsylvania State Senator Andrew Dinniman filed a formal complaint against Sunoco Pipeline, L.P. on April 25, 2018 that contains the quoted words in Paragraph 316.  The criminal complaint speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations, and any and all substantive and legal allegations of the criminal complaint.

317.     Defendants admit that Pennsylvania State Senator Andrew Dinniman filed a formal complaint against Sunoco Pipeline, L.P. on April 25, 2018.  The criminal complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the criminal complaint.

318.     Defendants admit that Pennsylvania State Senator Andrew Dinniman filed a Petition for Emergency Relief on April 25, 2018.  The Petition speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the Petition.

319.     Defendants admit the first sentence in Paragraph 319.  Defendants admit that ALJ Barnes's Order contains the quoted words, except the bracketed language, in the third and fourth sentences in Paragraph 319.  The Order speaks for itself and is the best evidence of its contents.

Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

320.    Defendants admit that ALJ Barnes's Order contains the quoted words, except the bracketed language, in Paragraph 320.  The Order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

321.    Defendants admit that ALJ Barnes's Order contains the quoted words, except the bracketed language, in Paragraph 321.  The Order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

322.    Defendants admit that ALJ Barnes's Order contains the quoted words in Paragraph 322.  The Order speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**7.    August 2018:   The DEP Fines Energy Transfer $147,000 for Contaminating Private Water Supplies**

323.    Defendants admit that on August 2, 2018 the DEP entered into a Consent Assessment with Sunoco Pipeline, L.P. that contains the quoted words, except the bracketed language, in Paragraph 323.  The Consent Assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

**8.    August 2019:  The DEP Fines Energy Transfer $318,000 for More Than 100 Violations of Pennsylvania Law**

324.    Defendants admit that on August 20, 2019 the DEP entered into a Consent Assessment with Sunoco Pipeline, L.P.  The Consent Assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied.

325.    Defendants admit that on August 21, 2019 the DEP entered into a Consent Assessment with Sunoco Pipeline, L.P.  The Consent Assessment speaks for itself and is the best evidence of its contents.  Otherwise, denied.

**G.    November 2019:  The FBI Launches Its Investigation into the Pennsylvania Governor's Office Related to the Permitting Process**

326.    Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of the first sentence of Paragraph 326.  Otherwise, Paragraph 326 is a characterization of a November 12, 2019 news article published by *The Associated Press.* Defendants admit that the article contains the quoted words in Paragraph 326.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**H.    Despite Energy Transfer's Prior Claims of Purported Pipeline Completion, The Intended ME2 Pipeline Remains Unfinished to this Day**

327.    Paragraph 327 purports to characterize Energy Transfer's August 9, 2018 conference call transcript.  The transcript speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

328.    Defendants deny the allegations in the first and second sentences in Paragraph 328. Defendants admit that in March 2020, Energy Transfer submitted requests for waivers from Governor Wolf's March 19, 2020 Order suspending non-essential work in Pennsylvania due to the COVID-19 outbreak.  The requests for waivers speak for themselves and are the best evidence of their contents.  Otherwise, denied.

329.    Defendants admit that in March 2020, Energy Transfer submitted requests for waivers from Governor Wolf's March 19, 2020 Order suspending non-essential work in Pennsylvania due to the COVID-19 outbreak.  The requests for waivers speak for themselves and

are the best evidence of their contents.  Defendants deny the allegations in the second sentence in

Paragraph 329.  Otherwise, denied.

330.    Defendants lack knowledge or information sufficient to form a belief about the truth

of the allegations Paragraph 330.  On that basis, Defendants deny the allegations in Paragraph 330.

## V.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

331.    Denied.

### A.    Energy Transfer Misstated Revolution's and ME2's Completion Timelines and ME2's Throughput, and Hid Contrary Undisclosed Facts

332.    The Court dismissed Paragraph 332 in its April 6, 2021 Order (ECF 65).  Thus, no

answer is required.  To the extent a response is required, denied.

333.    Denied.

334.    The Court dismissed Paragraph 334 in its April 6, 2021 Order (ECF 65).  Thus, no

answer is required.  To the extent a response is required, denied.

335.    Denied.

336.    The Court dismissed Paragraph 336 in its April 6, 2021 Order (ECF 65).  Thus, no

answer is required.

337.    Denied.

338.    The Court dismissed Paragraph 338 in its April 6, 2021 Order (ECF 65).  Thus, no

answer is required.  To the extent a response is required, denied.

339.    Denied.

340.    The Court dismissed the first two bullet points of Paragraph 340 in its April 6, 2021

Order (ECF 65).  Thus, no answer to those allegations is required. To the extent a response is

required, denied.  Otherwise, Paragraph 340 purports to characterize various presentations.  The

presentations speak for themselves and are the best evidence of their contents.  Otherwise, denied,

including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

341.    Denied.

342.    Paragraph 342 purports to characterize various presentations.  The presentations speak for themselves and are the best evidence of their contents.  Otherwise, denied.

343.    Defendants deny subpart (i) of Paragraph 343.  Otherwise, Paragraph 343 purports to characterize a transcript of a conference call held on August 9, 2017.  Defendants admit that the transcript contains the quoted words in subparts (ii) and (ii) in Paragraph 343.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Defendants admit that the August 9, 2017 conference call was attended by Warren.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

344.    Denied.

345.    Paragraph 345 purports to characterize a transcript of a conference call held on November 8, 2017.  Defendants admit that the conference call transcript contains the quoted words in Paragraph 345.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

346.    Paragraph 346 purports to characterize a transcript of a conference call held on November 8, 2017.  Defendants admit that the conference call transcript contains the quoted words, except the bracketed language, in Paragraph 346.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Defendants admit that the November 8, 2017 conference call was attended by Warren.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

347.    Denied.

348.    Paragraph 348 purports to characterize a transcript of a conference call held on February 22, 2018.  Defendants admit that the conference call transcript contains the quoted words in Paragraph 348.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

349.    Paragraph 349 purports to characterize a transcript of a conference call held on February 22, 2018.  Defendants admit that the conference call transcript contains the quoted words in Paragraph 349.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

350.    Paragraph 350 purports to characterize a transcript of a conference call held on February 22, 2018.  Defendants admit that the conference call transcript contains the quoted words in Paragraph 350.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Defendants admit that Warren and McCrea attended the February 22, 2018 conference call.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

351.    Defendants admit that the Consent Order and Agreement of January 3, 2020 between ETC Northeast Pipeline, LLC and the DEP states that ETC reported that the Revolution Pipeline was "mechanically complete and ready to be placed into commercial service on or about June 1, 2018."  Otherwise, denied.

352.    Denied.

353.    The Court dismissed Paragraph 353 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

354.    Denied.

355.    The first and second sentences in Paragraph 355 characterize an article in *Philadelphia* magazine dated March 22, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 355.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

356.    Paragraph 356 purports to characterize a transcript of a conference call held on May 10, 2018.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Defendants admit that Warren, Long, and McCrea attended the May 10, 2018 conference call.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

357.    Paragraph 357 purports to characterize a presentation made at the 2018 J.P. Morgan Energy Conference.  Defendants admit that the presentation contains the quoted words in Paragraph 357.  The presentation speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

358.    The Court dismissed Paragraph 358 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

359.    Denied.

360.    Paragraph 360 purports to characterize a transcript of a conference call held on August 9, 2018.  The transcript of that conference call speaks for itself and is the best evidence of

its contents.  Defendants admit that Warren and McCrea attended the August 9, 2018 conference call.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

361.    Denied.  Defendants believe no response is required to Footnote 14, which contains no allegations.  To the extent a response is required, denied.  Footnote 15 purports to characterize various reports.  The reports speak for themselves and are the best evidence of their contents.  Otherwise, denied.

362.    Denied.  As to Footnote 16, Defendants admit that certain parts of ME2 and ME2X were under construction at the same time.  Footnote 17 purports to characterize various reports.  The reports speak for themselves and are the best evidence of their contents.  Otherwise, denied.

363.    Denied.

364.    Paragraph 364 purports to characterize a transcript of a conference call held on August 9, 2018.  Defendants admit that the transcript of the conference call contains the quoted words, except the bracketed language, in Paragraph 364.  The transcript of the conference call speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, bracketed language, and selective quotations.

365.    Denied.

**B.    Energy Transfer Falsely Claimed It Was Constructing Its Pipelines Safely and Preserving and Protecting the Environment**

366.    The Court dismissed Paragraph 366 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.

367.    Paragraph 367 is a characterization of a January 3, 2018 news article published by *The Philadelphia Inquirer.*  Defendants admit that the article contains the quoted words in

Paragraph 367.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

368.   Paragraph 368 is a characterization of February 8, 2018 news articles published by *Reuters* and *StateImpact Pennsylvania.*  Defendants admit that the article contains the quoted words in Paragraph 368.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

369.   Denied.

370.   The Court dismissed Paragraph 370 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

371.   Paragraph 371 is a characterization of a March 22, 2018 news article published by *City Life.*  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 371.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

372.   The Court dismissed Paragraph 372 (including Footnote 18) in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

373.   The Court dismissed Paragraph 373 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

374.   The Court dismissed Paragraph 374 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

375.    The Court dismissed Paragraph 375 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

376.    Paragraph 376 is a characterization of a September 25, 2018 news article published by *StateImpact Pennsylvania.*  Defendants admit that the article contains the quoted words in Paragraph 376.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

377.    Paragraph 377 is a characterization of an October 21, 2018 news article published by the *Pittsburg Post-Gazette.*  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 377.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

378.    Paragraph 378 is a characterization of a November 1, 2018 news article published by the *Observer-Reporter.*  Defendants admit that the article contains the quoted words in Paragraph 378.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

379.    The Court dismissed Paragraph 379 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

380.    Paragraph 380 characterizes a statement dated December 21, 2018, and published on Energy Transfer's website.  Defendants admit that the statement contains the quoted words in Paragraph 380.  The  article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

381.     Denied.

**C.     Energy Transfer Hid Its Violations of Criminal Statutes and Misstated Its Compliance with Its Code of Business Conduct and Ethics**

382.     Defendants admit that Plaintiffs' claim that the "Class Period" begins on February 24, 2017, when Energy Transfer filed a 10-K with the SEC and that the 10-K is signed by Warren, Long, McReynolds, McCrea, and Ramsey. Defendants deny that there is any time period for which a class could be certified.  Defendants admit that the quoted words, except the bracketed language, in Paragraph 382 appear in the 10-K filed on February 24, 2017.  The 10-K speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

383.     Defendants admit that the quoted words in Paragraph 383 appear in the Code of Conduct on Energy Transfer's website.  The Code of Conduct speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

384.     Defendants admit that the quoted words in Paragraph 384 appear in the Code of Conduct on Energy Transfer's website.  The Code of Conduct speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

385.     Defendants admit that the quoted words in Paragraph 385 appear in the Code of Conduct on Energy Transfer's website.  The Code of Conduct speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

386.     The Court dismissed Paragraph 386 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

387.    The Court dismissed Paragraph 387 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

388.    Defendants admit that the quoted words, except the bracketed language, in Paragraph 388 appear in the Code of Conduct on Energy Transfer's website.  The Code of Conduct speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

389.    The Court dismissed Paragraph 389 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

390.    Defendants admit that on February 23, 2018 Energy Transfer filed a 10-K with the SEC and that the 10-K is signed by Warren, Long, McCrea, McReynolds, and Ramsey. Defendants admit that the quoted words, except the bracketed language, in Paragraph 390 appear in the 10-K filed on February 24, 2017.  The 10-K speaks for itself and is the best evidence of its contents.  Defendants note that the statements in Paragraph 389 were dismissed, thus, no response is required to the final sentence in Paragraph 390.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

391.    The Court dismissed Paragraph 391 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

392.    The Court dismissed Paragraph 392 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

393.    The Court dismissed Paragraph 393 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

394.    Paragraph 394 characterizes an article in *NBC Philadelphia* magazine dated January 22, 2019.  Defendants admit that the article contains the quoted words in Paragraph 394.

The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

395.    The first sentence is denied.  The second sentence in Paragraph 395 characterizes an article in *Philadelphia* magazine dated March 22, 2018.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 395.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

396.    The Court dismissed Paragraph 396 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

397.    The Court dismissed Paragraph 397 in its April 6, 2021 Order (ECF 65).  Thus, no answer is required.  To the extent a response is required, denied.

398.    Paragraph 398 characterizes an *NBC 10 Philadelphia* article published on August 8, 2019.  Defendants admit that the article contains the quoted words in Paragraph 398.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

399.    Denied.

## VI.    LOSS CAUSATION – THE TRUTH IS REVEALED TO INVESTORS

400.    Denied.

### A.    August 9-13, 2018:  Energy Transfer Discloses that the Problems with the Pipeline Require It to Cobble Together Old and New Pipe, Which Will Reduce Throughput and Delay Completion of the ME2 Pipeline

401.    Paragraph 401 characterizes  the transcript of Energy Transfer's August 9, 2018 conference call.  Defendants admit that the transcript contains the quoted words in Paragraph 401.  The transcript speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

402.    Paragraph 402 characterizes the transcript of Energy Transfer's August 9, 2018 conference call. The transcript speaks for itself and is the best evidence of its contents. Defendants admit that the transcript contains the quoted words in Paragraph 402.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

403.    Defendants deny the allegations in the first and second sentences in Paragraph 403. Defendants admit that the transcript of Energy Transfer's August 9, 2018 conference call contains the quoted words in the remaining sentences of Paragraph 403.   The conference call transcript speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

404.    Defendants admit that Wolfe Research, LLC published a pre-market report on August 10, 2018 that contains the quoted words in Paragraph 404.   The report speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

405.    Defendants admit that Wolfe Research, LLC published a pre-market report on August 10, 2018 that contains the quoted words in Paragraph 405.   The report speaks for itself and is the best evidence of its contents.   Defendants lack knowledge or information sufficient to form a belief as to the truth of any alleged "private discussion between Energy Transfer and Wolfe Research" purportedly described in Paragraph 405.   To the extent a further response is required, otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

406.    Defendants admit that Plaintiffs purport to characterize a Wells Fargo Securities publication in Paragraph 406.   The report speaks for itself and is the best evidence of its contents. To the extent a further response is required, Defendants otherwise deny Paragraph 406, including,

but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

407.    Denied.

408.    Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $18.45 per share on August 8, 2018 and  closed at $17.41 per share on August 13, 2018.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.  Footnote 19 purports to characterize an October 18, 2018 *StateImpact Pennsylvania* article.  Defendants admit that the quoted words appear in the article referenced in Footnote 19.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

409.    Denied.

**B.    October 27-29, 2018:  The DEP Orders Energy Transfer to Stop Work on the Revolution Pipeline**

410.    Defendants deny the first sentence in Paragraph 410.  The remainder of Paragraph 410 is a characterization of an October 27, 2018 news article published by the *Pittsburgh Post-Gazette*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 410.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

411.    Defendants admit that on October 29, 2018, the DEP issued a field order to ETC Northeast Pipeline, LLC, relating to the Revolution Pipeline project.  The order speaks for itself and is the best evidence of its contents.  The first and final sentences of Paragraph 411 are

characterizations of an October 30, 2018 news article published by *StateImpact Pennsylvania*. Defendants admit that the quoted words, except the bracketed language, in the first and final sentences of Paragraph 422 appear in the article.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

412.    Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $15.46 per share on October 26, 2018 and  closed at $14.84 per share on October 29, 2018.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.

C.    **December 19-21, 2018:  Chester County Launches an Investigation Into Energy Transfer**

413.    Paragraph 413 is a characterization of a December 19, 2018 press release issued by the Chester County District Attorney's Office.  Defendants admit that the press release contains the quoted words, except the bracketed language, in Paragraph 413.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, bracketed language, and selective quotations.

414.    Paragraph 414 is a characterization of a December 19, 2018 article published by *KYW News Radio*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 414.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

415.    Paragraph 415 is a characterization of a December 20, 2018 article published by *Reuters*.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

416.     Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $12.94 per share on December 18, 2018 and  closed at $12.24 per share on December 21, 2018.   Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.

417.     Defendants admit that Energy Transfer released a statement on December 21, 2018 that contains the quoted words in Paragraph 417.  The statement speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

**D.     August 8-12, 2019:  Chester County Charges the Constables Hired by Energy Transfer with Bribery**

418.     Paragraph 418 is a characterization of an August 8, 2019 article published by *3 CBS Philly*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 418.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

419.     Paragraph 419 is a characterization of an August 9, 2019 article published by *State Impact Pennsylvania* and *WHYY*.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

420.     Paragraph 420 is a characterization of an August 9, 2019 article published by *StateImpact Pennsylvania* and *WHYY*.  Defendants admit that the article contains the quoted words, except the bracketed language, in Paragraph 420.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, bracketed language, added emphases, and selective quotations.

421.     Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $14.03 per share on August 8, 2019, $13.90 per share on August 8, 2019, and $13.38 per share on August 12, 2019.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

422.     The first two sentences in Paragraph 422 are a characterization of an August 9, 2019 news article published by *StateImpact Pennsylvania*.  Defendants admit that the quoted words, except the first quotation, appear in the article referenced in Paragraph 422.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied.

### E.     November 12-13, 2019:  The Associated Press Discloses the FBI's Investigation into Energy Transfer's Alleged Bribery of Pennsylvania Officials

423.     Paragraph 423 is a characterization of a November 12, 2019 article published by the *Associated Press*.  Defendants admit that the article contains the quoted words in Paragraph 423.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

424.     Paragraph 424 is a characterization of a November 12, 2019 article published by the *Philadelphia Inquirer.*  Defendants admit that the article contains the quoted words in Paragraph 424.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

425.     The first sentence in Paragraph 425 is denied.  Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $11.66 per share

on November 12, 2019 and closed at $11.16 per share on November 13, 2019.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.

426.    Defendants admit that an article published by *S&P Global Market Intelligence* on November 13, 2019, contains the quoted words in Paragraph 426.  The article speaks for itself and is the best evidence of its contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

### F.    December 3, 2019:  Chester County Charges Energy Transfer's Security Supervisor with Bribery

427.    Defendants admit that Chester County DA Hogan filed criminal charges against Frank Recknagel on December 3, 2019.  Defendants admit that the December 3, 2019 press release from the Chester County District Attorney's Office contains the quoted words in Paragraph 427 and attributes them to DA Hogan.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

428.    Defendants admit that the December 3, 2019 press release from the Chester County District Attorney's Office contains the quoted words in Paragraph 428.  The press release speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, and selective quotations.

429.    Paragraph 429 characterizes the criminal complaint discussed in the preceding Paragraphs.  That complaint speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, any and all substantive and legal allegations of the criminal complaint.

430.    Defendants deny all allegations in the first three sentences in Paragraph 430.  The remainder of Paragraph 430 is a characterization of a December 3, 2019 article published by *The Philadelphia Inquirer.*  Defendants admit that the article contains the quoted words in Paragraph 430.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

431.    Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock price closed at $11.63 per share on December 2, 2019 and closed at $11.40 per share on December 3, 2019.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.

432.    Defendants deny Plaintiffs' misleading characterization of Energy Transfer's change in share price.  Defendants admit that, according to publicly available databases, Energy Transfer's stock prices closed at the values listed in the chart in Paragraph 432 on the corresponding dates.  Defendants deny any causal connection between Plaintiffs' allegations and the change in stock price.  Otherwise, denied.

433.    Denied.

## VII.    ADDITIONAL ALLEGATIONS OF SCIENTER

434.    Denied.

435.    Denied.

### A.    Senior Energy Transfer and Sunoco Executives Were Personally Involved in Pressuring the Governor's Office and DEP to Grant the Pipeline Permits

436.    McGinn and Hennigan have been dismissed from this action.  To the extent a response is required, Defendants admit that McGinn and Hennigan were involved in Sunoco's

efforts to coordinate with Pennsylvania government officials regarding permits.   Otherwise, denied.

437.    McGinn and Hennigan have been dismissed from this action.   To the extent a response is required, the first two sentences in Paragraph 437 are denied.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 437.   On that basis, Defendants deny the remaining allegations in Paragraph 437.

**B.**    **Energy Transfer Bribed Pennsylvania Constables to Intimidate Residents and Minimize Protests**

438.    Paragraph 438 purports to characterize an email and a criminal complaint.   The email, to the extent it exists, and criminal complaint speak for themselves and are the best evidence of their contents.   Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, selective quotations and any and all substantive and legal allegations of the criminal complaint.

439.    The first sentence of Paragraph 439 is a characterization of a press release issued by Chester County District Attorney Tom Hogan on August 8, 2019.   The press release speaks for itself and is the best evidence of its contents.   Otherwise, denied.

440.    Defendants deny the first sentence in Paragraph 440.   The remaining sentences in Paragraph 440 are characterizations of a press release issued by Chester County District Attorney Tom Hogan on December 3, 2019.   Defendants admit that the press release contains the quoted words in Paragraph 440.   The press release speaks for itself and is the best evidence of its contents. Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

441.    Denied.

442.    Defendants admit that the quoted words in the first sentence in Paragraph 442 appear in the Code of Ethics on Energy Transfer's website.  The Code of Ethics speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations, added emphases, and selective quotations.

### C.    Energy Transfer Executives Knew in Early 2018 that Placing ME2 in Service in 2018 Was Impossible without Cutting Corners

443.    Paragraph 443 purports to characterize Energy Transfer contracts.  The contracts speak for themselves and are the best evidence of their contents.  Otherwise, denied.

444.    Denied.

445.    Denied.

446.    Denied.

447.    Denied.

448.    Denied.

449.    Paragraph 449 purports to characterize certain ill-defined investor presentations, which speak for themselves and are the best evidence of their contents.  Otherwise, denied.

### D.    The Pipeline Project Was the Largest Infrastructure Project in the History of Pennsylvania, Necessarily Drew the Attention of Energy Transfer's Senior Executives, and Was the Subject of Intense Investor and Press Scrutiny Throughout the Class Period

450.    Denied.

451.    Paragraph 451 purports to characterize a webpage, certain investor presentations, and certain transcripts of conference calls.  These documents speak for themselves and are the best evidence of their contents.  Otherwise, denied.

452.    Denied.

453.    Denied.

**E.    The Pipeline Projects Were the Subject of Intense Regulatory Scrutiny, and the Announcement of Each Investigation Further Placed Defendants on Notice of the Problems with the Pipelines**

454.    Defendants deny the first sentence.  The first bullet point characterizes an article published by Reuters on December 20, 2018. Defendants admit that the article contains the quoted words.  The article speaks for itself and is the best evidence of its contents.  The second bullet point characterizes a post made by Josh Shapiro on the PA Attorney General Twitter account on March 12, 2019.  The tweet speaks for itself and is the best evidence of its contents.  The third bullet point characterizes Energy Transfer's Form 10-Q filed on November 7, 2019.  This filing speaks for itself and is the best evidence of its contents.  The fourth bullet point characterizes an article published by *The Associated Press* on November 12, 2019.  The article speaks for itself and is the best evidence of its contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

455.    Denied.

456.    Defendants admit that an article published by *E&E News* on October 19, 2020 stated that "State regulators have levied more than $45 million in fines for more than 100 environmental violations against [Defendants]."  The article speaks for itself and is the best evidence of its contents.  Defendants admit that they were subjected to several orders from the DEP during the class period.  These orders speak for themselves and are the best evidence of their contents.  Defendants admit that *StateImpact Pennsylvania* published two articles dated January 17, 2020 and August 11, 2020 which discuss the way Chester County and Raystown Lakes were impacted during construction of the Mariner East Pipeline.  These articles speak for themselves and are the best evidence of their contents.  Otherwise, denied.

457.    Denied.

458.    Denied.

459.   Denied.

**F.     Defendant McCrea Had Personal Knowledge of the Revolution Failures that Contributed to the Subsequent Explosion**

460.   Defendants admit that from November 2015 until October 2018, Defendant McCrea was the Chief Commercial Officer of Energy Transfer and a Director of Energy Transfer L.P.  Otherwise, Paragraph 460 characterizes the depositions of Alan Vaina and Adam Arthur. The depositions speak for themselves and are the best evidence of their contents.  Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

**G.     The Revolution Pipeline Explosion and the Sinkholes on Lisa Drive Put Energy Transfer on Notice of the Serious Risks Associated with Constructing the Pipeline Projects in Pennsylvania**

461.   Denied.

462.   Defendants admit that the Energy Transfer or one of its affiliates purchased two homes on Lisa Drive for approximately $400,000 each in 2019.  Defendants also admit that Andy Dinniman filed a Formal Complaint and Petition for Interim Emergency Relief against Sunoco before the PUC. Otherwise, Paragraph 462 lacks sufficient information and specificity for Defendants to form a belief about the truth of its allegations.  On that basis, Defendants deny the allegations.

463.   The first sentence is denied. Defendants admit that certain litigation has followed the Revolution incident, including litigation with EdgeMarc and PennEnergy.  Otherwise, denied.

464.   Denied.

**H.     Energy Transfer CEO Warren Admitted to Knowing About Energy Transfer's Failures Related to the Pipeline Projects in Pennsylvania**

465.   Denied.

466.   Denied.

467.    Paragraph 467 purports to characterize a transcript of a conference call held on February 21, 2019.  Defendants admit that the quoted words, except the bracketed language, appear in the conference call transcript referenced in Paragraph 467.  The transcript of that conference call speaks for itself and is the best evidence of its contents.  Otherwise, denied as to all remaining allegations, including, but not limited as to, the portion of the second sentence before the colon, mischaracterizations, bracketed language, added emphases, and selective quotations.

**I.      Energy Transfer CFO Long Assured Investors Each Quarter that Energy Transfer Was Committed to Safely and Responsibly Bringing ME2 into Service and Admitted to Energy Transfer Making Mistakes**

468.    Defendants admit that the quoted words in Paragraph 468 are found in transcripts of six Energy Transfer conference calls.  The transcripts speak for themselves and are the best evidence of their contents.   Otherwise, denied, including, but not limited as to, mischaracterizations and selective quotations.

469.    Denied.

470.    Denied.

**J.      Energy Transfer Knew That Pennsylvania's Geology Provided Challenges But Rushed Forward On Construction Through Known Areas of Risky Terrain Such As Lisa Drive In Order To Complete The Pipeline**

471.    Denied.

**K.      Defendants Held Themselves Out as Knowledgeable Concerning the Topics About Which They Spoke**

472.    Defendants deny the first sentence in Paragraph 472.  The second sentence in Paragraph 472 characterizes Energy Transfer's conference call transcript from November 8, 2017.  The transcript speaks for itself and is the best evidence of its contents.  The third sentence in Paragraph 472 characterizes an article in *Philadelphia* magazine dated March 22, 2018.  Defendants admit that the article contains the quoted words in Paragraph 472, except the bracketed

language.  The article speaks for itself and is the best evidence of its contents.  To the extent a response is required, as to the fourth sentence in Paragraph 472, Defendants incorporate the responses above.  Otherwise, Defendants deny all remaining allegations in Paragraph 472, including, but not limited as to, mischaracterizations, bracketed language, and selective quotations.

## VIII.   PRESUMPTION OF RELIANCE

473.   Defendants admit that Energy Transfer's common units were traded on the NYSE, that Energy Transfer filed periodic reports with the SEC, that Energy Transfer issued press releases, and that Energy Transfer was followed by securities analysts.  Defendants deny sentences (h) and (i) of Paragraph 473.  Otherwise, Paragraph 473 states legal conclusions for which no response is required.  To the extent a response is required, denied.

474.   Paragraph 474 states legal conclusions for which no response is required.  To the extent a response is required, denied.

## IX.   INAPPLICABILITY OF STATUTORY SAFE HARBOR

475.   Paragraph 475 states legal conclusions for which no response is required.  To the extent a response is required, denied.

## X.   CLASS ACTION ALLEGATIONS

476.   Paragraph 476 contains a description of the purported class and claims and thus, no response is required.  To the extent a response is required, Defendants admit that the Complaint purports to be on behalf of the class described in Paragraph 476, but deny that such class should be certified, and further deny all other allegations in Paragraph 476.

477.   Defendants admit that Energy Transfer's common units were traded on the NYSE. Otherwise, denied.

**XI.    CAUSES OF ACTION**

**COUNT I (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Energy Transfer and the Speaking Defendants)**

478.    No response to Paragraph 478 is required and therefore it is denied.  Defendants refer Plaintiffs to their responses for each and every allegation set forth above and incorporate those responses as if fully set forth herein.

479.    Paragraph 479 states a legal conclusion for which no response is required.   To the extent a response is required, denied.

480.    Denied.

481.    Denied.

482.    Denied.

483.    Paragraph 483 states legal conclusions for which no response is required.  To the extent a response is required, denied.

484.    Denied.

485.    Denied.

486.    Denied.

487.    Denied.

**COUNT II (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Energy Transfer and the Speaking Defendants)**

488.    No response to Paragraph 488 is required and therefore it is denied.  Defendants refer Plaintiffs to their responses for each and every allegation set forth above and incorporate those responses as if fully set forth herein.

489.    Denied.

490.    Denied.

491.    Denied.[2]

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendants assert the following defenses, affirmative defenses, and other matters with respect to each of the purported claims or causes of action alleged in the Complaint.  This is not an exhaustive list of all defenses and reasons that Defendants are not liable, and Defendants do not assume the burden of proof or persuasion on any of the following where Plaintiffs carry such burden(s):

1.    The Complaint fails to state a claim upon which relief may be granted.

2.    Defendants are not liable because Plaintiffs lack standing to assert claims against them.

3.    Plaintiffs' claim is barred in whole or in part by the applicable statute of limitations, including, but not limited to, 28 U.S.C. § 1658.

4.    This action may not be properly maintained as a class action.

5.    The Complaint fails to plead fraud with particularity as required by Federal Rule 9(b) and the Private Securities Litigation Reform Act of 1995.

6.    Defendants are not liable because the statements quoted did not contain any untrue statement of material fact, nor did they omit to state any material fact required to be stated or necessary to make the statements made not misleading.

7.    Plaintiffs' claims are barred, in whole or in part, because the information they contend was omitted was publicly available and known to the market during the class period.

---

[2] For the avoidance of doubt, Defendants deny that Plaintiffs are entitled to any of the relief that they seek on Page 190 of the Operative Complaint and deny allegations on Paragraph 190 on that basis.

8.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not reasonably rely on any statements or omissions for which Defendants allegedly are responsible.

9.      Defendants are not liable, to the extent Plaintiffs' claims are based on Defendants' omission(s) of purported material information, because Defendants had no duty to disclose or update the information.

10.     The misstatements or omissions alleged in the Complaint were not made with the requisite scienter.

11.     Defendants are not liable because at all times, and with respect to all matters contained herein, they acted in good faith, exercised reasonable care and did not know, and in the exercise of reasonable care could not have known, of the purported untruths, misstatements and/or omissions alleged in the Complaint.

12.     Defendants are not liable because at all times, and with respect to all matters contained herein, they acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

13.     Defendants' alleged misstatements or omissions made or caused to be made by Defendants were based in reasonable reliance upon the work, opinions, information, representations and advice of others upon whom they were entitled to rely.

14.     To the extent Plaintiffs' allegations are based on forward-looking statements, such statements bespoke caution in outlook and fell short of the certainty of assurances required for a finding of falsity.

15.     Pursuant to 15 U.S.C. § 78u-5(c), Defendants are not liable for any forward-looking statements because any such forward-looking statements were (i) accompanied by meaningful

cautionary language, (ii) immaterial, and/or (iii) made without actual knowledge that the statements were false or misleading.

16.     Defendants are not liable because Plaintiffs' claims are barred, in whole or in part, because Plaintiffs voluntarily assumed the risk of losses alleged in the Complaint.

17.     Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification, unclean hands, laches, and *in pari delicto.*

18.     Plaintiffs' claims are barred in whole or in part because the alleged misstatements and omissions alleged in the Complaint did not affect the market price of the Energy Transfer's stock.

19.     In the event Plaintiffs recover damages, such damages shall be limited to only those losses caused by the fraud as opposed to other factors and/or market conditions and each Defendant shall be liable solely for the portion of the judgment that corresponds to the percentage of its or his or her responsibility because it or he or she did not knowingly commit a violation of the federal securities laws.  *See* 15 U.S.C. § 78u-4.

20.     Any damages Plaintiffs sustained must be offset by any tax or such benefits received.

21.     Plaintiffs' claims are barred or must be reduced by their failure to mitigate damages.

22.     Plaintiffs' losses are speculative or uncertain and therefore not compensable.

23.     Any damages Plaintiffs sustained are limited by PSLRA's 90-day "bounce-back" rule.

24.     Defendants are not liable because Plaintiffs' alleged damages, if any, were the result of one or more intervening or superseding causes or caused by the acts and/or failures to act

of persons and/or entities other than Defendants, and were not the result of any act or omission on the part of Defendants.

25.     Defendants are not liable because Plaintiffs' losses, if any, were not caused by Defendants.

## **RELIEF REQUESTED**

Wherefore, having fully answered, Defendants request that the Court deny all relief sought in the Complaint, award Defendants their costs, and grant it such other relief as to which it may be entitled.

* * *

Defendants reserve the right to modify their answers to the specific allegations set forth in the Complaint and/or to assert additional defenses as they become known during the pendency of this action.

Date: June 11, 2021

Respectfully submitted,

*/s/Michael C. Holmes*

Michael C. Holmes
Craig E. Zieminski
Robert Ritchie
VINSON & ELKINS LLP
2001 Ross Ave., Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
Fax: (214) 999-7923
mholmes@velaw.com
czieminski@velaw.com
rritchie@velaw.com


Marc J. Sonnenfeld (No. 17210)
Karen Pieslak Pohlmann (No. 60079)
Laura H. McNally (No. 310658)
Amanda F. Lashner (No. 314443)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5000
Facsimile: 215.963.5001
marc.sormenfeld@morganlewis.com
karen.pohlmann@morganlewis.com
laura.mcnally@morganlewis.com
amanda.lashner@morganlewis.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 11, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Robert Ritchie*
Robert Ritchie