IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM et al., | : : : | CIVIL ACTION No. 20-200 |
| Plaintiffs, | : | |
| v. | : : | |
| ENERGY TRANSFER LP et al., | : : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                         **November 30, 2022**

**MEMORANDUM**

Plaintiffs in this securities class action move to compel all documents produced by Defendants in previous legal actions and investigations involving the Defendants' pipeline construction activities. Plaintiffs argue that Defendants failed to produce relevant documents contained in these prior productions, and that Plaintiffs are entitled to the entire set of documents produced in each of these prior actions and investigations. For the reasons outlined below, I will deny much of Plaintiffs' Motion, but grant it as to specific sets of documents produced to the Chester County District Attorney, the Delaware County District Attorney, and the Pennsylvania Attorney General.

**I.       Relevant Background**

This is a class action on behalf of investors in Energy Transfer L.P., a pipeline company whose operations include developing the Mariner East 1 and 2 ("ME1 and ME2") and Revolution pipelines in Pennsylvania.

Plaintiffs allege that Defendants issued a series of false or misleading statements during the class period related to the construction of these pipelines. *See* Pls.' Am. Compl., ECF 43 at ¶¶

331-99. In granting Plaintiffs' motion for class certification, I certified the class regarding front-end misrepresentations by Defendants in August 2017 about the project's timeline and completion date, ECF 113 at 19-25, and regarding the following corrective disclosures by Defendants:

(1) August 2018 disclosures regarding temporary use of an existing 12-inch pipeline in lieu of new 20-inch pipeline for part of the ME2 pipeline's route in order to meet project construction deadlines, which limited the ME2's ability to meet its projected capacity;

(2) October 2018 disclosures regarding an explosion on the Revolution Pipeline and a resulting stop work order on the Revolution Pipeline issued by the Pennsylvania Department of Environmental Protection;

(3) December 2018 disclosures regarding the Chester County District Attorney's investigation into Energy Transfer's pipeline construction activities; and

(4) November 2019 disclosures regarding an FBI investigation into corruption in the permitting process for Energy Transfer pipelines in Pennsylvania.

*Id.* at 25-50. I did not certify the class regarding disclosures in August 2019 and December 2019 about Energy Transfer's use of state constables at pipeline construction sites, which were announced as part of the Chester County District Attorney's investigation. *Id.* at 41-44, 48-49

Plaintiffs' first set of document requests sought previous productions in an array of investigations and litigation related to Defendants' pipeline projects. Decl. of Adam Wierzbowski, ECF 115-2 at ¶ 3. After Defendants served responses and objections to Plaintiffs' requests, the parties engaged in months of negotiations over a search protocol that Defendants would use to identify responsive documents. *Id.* ¶ 4. While these negotiations were ongoing, Plaintiffs sent an additional request for production of documents produced as part of a joint investigation into Energy Transfer by the Pennsylvania Attorney General and Delaware County District Attorney. *Id.* ¶ 5. The parties ultimately agreed on a search protocol of 200 targeted search terms and several

file custodians in January 2022, with Plaintiffs reserving the right "to serve additional document requests as discovery proceeds." Decl. of Robert Ritchie, ECF 117-2 at ¶ 6.

After running the search protocol, Defendants produced to Plaintiffs "almost 100,000 documents," which they claim includes "thousands of documents from the Chester County District Attorney and Pennsylvania Attorney General productions." *Id.* ¶ 8. Defendants assert that many of the remaining documents from these earlier productions have "no apparent relevance to the issues in this case." *Id.* ¶ 9. Plaintiffs, however, responded that Defendants' production was deficient. Wierzbowski Decl., ECF 115-2 at ¶ 9. Among other deficiencies, Plaintiffs communicated to Defendants that they "had been unable to identify in Defendants' production any materials previously produced to the Pennsylvania Attorney General or the Delaware or Chester County District Attorneys." *Id.* ¶ 12.

In communications between the parties over the following months, Plaintiffs insisted that they are entitled to all documents produced in the previous investigations and litigation, given what they contend is the "near-total overlap" of the prior actions with their claims. *Id.* ¶¶ 11, 14. Defendants refused to turn over any additional documents from these productions, arguing that "wholesale reproduction" of Defendants' prior productions is improper "cloned discovery." *Id.* ¶¶ 10, 15-16.

The parties remain at an impasse over this issue. *Id.* ¶ 16. Plaintiffs therefore move to compel the following documents:

(1) All documents Energy Transfer and its subsidiaries produced in connection with the Chester County District Attorney's investigation into Energy Transfer's Pennsylvania-based pipeline projects, announced on December 19, 2018, as well as all correspondence with the Chester County District Attorney related to that investigation and all discovery requests and responses related to that investigation;

(2) All documents Energy Transfer and its subsidiaries produced in connection with the Pennsylvania Attorney General and Delaware County District Attorney's investigation into criminal misconduct by Energy Transfer, Sunoco Logistics Partners, and related corporate entities concerning pipeline construction and related activities for the Energy Transfer's Pennsylvania-based pipelines, announced on March 20, 2019, as well as all correspondence with the Pennsylvania Attorney General and Delaware County District Attorney related to that investigation and all discovery requests and responses related to that investigation;

(3) All documents Energy Transfer and its subsidiaries produced in connection with the Environmental Hearing Board appeal of the Pennsylvania Department of Environmental Protection's issuance of the permits related to the ME2 pipeline, filed on February 13, 2017 by the Clean Air Council, the Delaware Riverkeepers Network, and the Mountain Watershed Association, Inc., as well as all correspondence with the plaintiffs in that litigation related to that litigation and all discovery requests and responses related to that litigation; and

(4) All documents any party produced in connection with any litigation related to Energy Transfer's pipeline projects brought by or on behalf of residents near the Lisa Drive site, where Energy Transfer's pipeline construction caused sinkholes, as well as all correspondence with the plaintiffs in any such litigation related to that litigation and all discovery requests and responses related to any such litigation.

Pls.' Mot. to Compel, ECF 115.

## II. Standard of Review

Whether a document is discoverable is governed by the well-established standard set by Fed. R. Civ. P. 26 (b)(1). A party serving a request for a production of documents must describe the items "with reasonable particularity." Fed. R. Civ. P. 34 (b)(1).

When a party moves to compel discovery pursuant to Fed. R. Civ. P. 37, the moving party bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting discovery can establish a lack of relevance by showing that the material requested does

not fall within the broad scope of relevance defined by Rule 26 or is of such little relevance that the potential harm occasioned by discovery outweighs the ordinary presumption favoring its disclosure." *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016).

**III.    Analysis**

Defendants assert that Plaintiffs' request is overly broad and constitutes improper cloned discovery. There is no established standard for assessing so-called "cloned" or "piggyback" discovery requests for all discovery produced in prior litigation or investigations. In a handful of cases cited by Defendants, courts found such discovery appropriate only when the *fact* that documents were previously produced has evidentiary significance in the pending case. *See, e.g.*, *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153-RWS-CMC, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020). In contrast, other courts allow such discovery where there is "significant factual and legal overlap" with a prior case and the request is not overbroad. *See, e.g., Whitman v. State Farm Life Ins. Co.*, No. 3:19-CV-06025-BJR, 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020); *Peterson v. Wright Med. Tech., Inc.*, No. 11-1330, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013).[1] But similarities or overlap alone are insufficient to justify "a *carte blanche* production of all documents from the [previous] cases." *Chen v. Ampco Sys. Parking*, No. 08-CV-0422-BEN (JMA), 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). The requesting party must still "make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses."

---

[1] In product liability cases, where the same or a similar product is at issue in a later suit, the rationale for requiring reproduction in a subsequent case is more readily apparent.

*King Cnty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011).

Here, Plaintiffs meet their burden for discrete sets of documents produced by Defendants to the Chester County District Attorney, the Delaware County District Attorney, and the Pennsylvania Attorney General, and I will grant the motion to that extent.

### A. Plaintiffs meet their burden regarding a limited part of Defendants' prior production to Chester County District Attorney.

In December 2018, the Chester County District Attorney opened a criminal investigation into Energy Transfer's construction of the ME2 pipeline. Pls.' Am. Compl., ECF 43 at ¶ 413. The announcement stated that the District Attorney wanted to hold Energy Transfer accountable for its role in causing sinkholes in Chester County, and investigate reports of "not-so-subtle bullying" of county residents by the company. *Id.* Plaintiffs allege that this announcement exposed material misstatements by Defendants and caused Energy Transfer's stock price to fall.

When the District Attorney's office announced this investigation, the press release included the request for production of documents sent to Energy Transfer, which included:

(1) Documents regarding sinkholes or other geological anomalies on Lisa Drive in West Whiteland Township, Pennsylvania, related to Mariner 1, 2, and/or 2X pipelines;

(2) Documents related to water contamination in Chester County, Pennsylvania, related to Mariner 1, 2, and/or 2X pipelines; and

(3) Documents related to an explosion in Beaver County in September 2018 involving the Revolution Pipeline (an earlier pipeline operated by Energy Transfer), including any and all documents analyzing the risks and consequences of explosions involving natural gas pipelines.

6

*See* Pls.' Ex. 2, ECF 115-4 at 7-8. Plaintiffs argue that any documents produced to the District Attorney during this investigation, including but not limited to documents related to these three requests for production, are relevant to their current claims and should therefore be compelled.

> *1. Plaintiffs meet their burden regarding the three specific sets of documents requested by the District Attorney.*

For the three sets of documents identified in the press release, Plaintiffs meet their discovery burden. Plaintiffs identify three specific categories of documents produced to the District Attorney that are highly relevant to their claims. Documents regarding sinkholes and geographic anomalies at Lisa Drive are relevant to what Defendant knew and when about geological barriers to pipeline construction in the area, including knowledge about the need to use the older 12-inch pipe to finish ME2 construction on schedule. Documents related to water contamination are relevant to what Defendant knew and when about pipeline safety and compliance with state environmental permits, and whether their knowledge conflicted with public statements about construction safety and completion timelines. Documents related to the Revolution pipeline explosion are relevant to Defendant's knowledge of geologic issues impacting pipeline construction in Pennsylvania, and these issues' impact on pipeline completion timelines. Plaintiffs' relevance argument is further enhanced by the fact that the Chester County District Attorney's announcement is itself alleged as a corrective disclosure.

Defendants' arguments that these documents lack relevance are not persuasive. First, they claim that these documents are not relevant because the fact of their production is not relevant. Defs.' Opp., ECF 117 at 12. As discussed above, however, this is not the standard which I consider applicable to Plaintiffs' request. Second, Defendants assert that there is no "substantial overlap" between this criminal investigation and Plaintiffs' claims. *Id.* at 12-14. But the different posture

7

of the two actions does not negate the legal and factual relevance to Plaintiffs' claims, as discussed above. At the very least, all three sets of documents may contain information about Defendants' internal knowledge regarding the ME2's construction issues, and whether this knowledge was accurately reflected in public communications during the relevant class period. Finally, Defendants argue that the agreed-upon search protocol has already identified any relevant documents from the Chester County District Attorney investigation. *Id.* at 14. Plaintiffs, however, have highlighted at least one set of documents – those related to "ground-level construction issues" – that Defendants admit to withholding but that nonetheless may be relevant to Plaintiffs' claims. Pls.' Mem. in Supp. of their Mot. to Compel, ECF 115-1 at 16. Additionally, although Defendants claim to have produced thousands of documents from the Attorney General and Chester County District Attorney productions, Plaintiffs assert that Defendants have specifically identified only five such documents. Wierzbowski Decl., ECF 115-2 at ¶ 13.

Defendants further argue that the burden of producing these documents outweighs their likely benefit. *See* Fed. R. Civ. P. 26 (b)(1). They assert that Plaintiffs' request would impose a "significant and time-consuming burden" on Defendants because they need to conduct a responsiveness and confidentiality review of the documents requested. Defs. Opp., ECF 117 at 18. As an initial matter, I acknowledge that Defendants will face some burden in reviewing their previous production to identify which documents were produced to address the three specific requests by the District Attorney, but this is not likely to be a significant burden. Defendants have previously compiled and produced these documents and may have organized them to specifically respond to each of the three document requests from the District Attorney. *See In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (noting minimal burden in producing documents that a party has already reviewed and compiled for government investigatory bodies).

Indeed, Defendants have conducted some recent review of the documents at issue, given their claim that the remaining documents have "no apparent relevance to the issues in this case." *See* Ritchie Decl., ECF 117-2 at ¶ 9.  Further, to the extent that any confidentiality review is meant to identify any documents protected attorney work-product or documents protected by attorney-client privilege, such protections may be irrelevant due to their prior production to the District Attorney. *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991) (holding that disclosure to SEC and DOJ waived work-product and attorney-client privilege protections).

Even if the burden of reviewing these documents was slightly higher, however, the production of a limited subset of documents is proportional to the needs of the case.  Among the various proportionality factors outlined in Fed. R. Civ. P. 26, courts should "compare the cost of discovery to the amount in controversy." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co*., 322 F.R.D. 1, 7 (D.D.C. 2017) (cleaned up).  The burden of reviewing the three discrete sets of documents already produced to the Chester County District Attorney is proportional to the needs of Plaintiffs' case, given the substantial damages at issue in this type of investor class action.  *See In re Lincoln Nat'l COI Litig*., No. 16-CV-6605-GJP, 2019 WL 7581184, at *3 (E.D. Pa. July 31, 2019) (emphasis added), *opinion of special master adopted*, No. 16-CV-06605, 2019 WL 3940912 (E.D. Pa. Aug. 21, 2019) (finding that Defendants could not claim an undue burden for $465,000 cost of conducting additional document review, given an amount in controversy "upwards of $100 million")

> 2. *Plaintiffs do not meet their burden for other documents produced to the District Attorney.*

Plaintiffs have not met their discovery burden for the remainder of documents produced by Defendants as part of the Chester County investigation, including any "attorney correspondence and discovery requests" created in connection with the District Attorney's investigation.[2] Although Plaintiffs can establish some relevance and overlap with the facts underlying the current action, a blanket request for all other documents produced to the District Attorney is overbroad and Plaintiffs have not met their burden of establishing relevance. *See Chen*, 2009 WL 2496729, at *2 (stating that some legal or factual overlap alone is insufficient to justify "a *carte blanche* production" of all documents from a prior case); *King Cnty.*, 2011 WL 3438491, at *3 (noting that a party must still identify the relevance of specific categories of documents to their claims, even where there is legal or factual overlap). Moreover, some documents contained in the remaining production to the Chester County District Attorney, such as tax forms and W-2 forms related to the hiring of constables, are of minimal relevance to Plaintiff's claims given my previous rulings in this case. *See* ECF 113 at 41-44, 48-49 (declining to certify class regarding disclosures in August 2019 and December 2019 by the Chester County District Attorney regarding Defendants' use of constables).

Plaintiffs therefore cannot establish that most documents produced to the Chester County District Attorney by Defendants should be compelled. However, as outlined above, they meet

---

[2] Plaintiffs' Motion defines their document request as including "all correspondence, discovery requests, and documents produced in connection with" the actions at issue. Pls.' Mem., ECF 115-1 at 8. Defendants assert that this is the first time Plaintiffs have requested "correspondence" and "discovery requests," in addition to documents produced in the earlier actions. Defs.' Opp., ECF 117 at 15. Regardless of whether Plaintiffs have previously made this request, I find that Plaintiffs have not met their burden of establishing the relevance and proportionality of attorney correspondence or discovery requests created in connection with *any* of the identified prior productions.

their burden regarding the three sets of documents specifically requested by the District Attorney in the prior investigation.

### B. Plaintiffs meet their burden regarding a limited part of Defendants' prior production to the Pennsylvania Attorney General and Delaware County District Attorney.

In March 2019, the Pennsylvania Attorney General and Delaware County District Attorney announced a joint investigation into Energy Transfer's pipeline construction practices. Pls.' Am. Compl., ECF 43 at ¶¶ 277, 396. The investigation focused on environmental crimes committed by Energy Transfer and its subsidiaries during the construction of the ME2 and Revolution pipelines. *See* Pls.' Ex. 1, ECF 115-3. The grand jury investigation found that Energy Transfer "repeatedly allowed thousands of gallons of drilling fluid to escape underground" during the construction of the ME2 pipeline and repeatedly failed to report the losses of fluid to the Pennsylvania DEP. *Id.* The investigation further found that multiple drill locations contained "unapproved additives" that also "entered the waters of the Commonwealth." *Id.* Regarding the Revolution Pipeline, the investigation reviewed evidence that a subsidiary of Energy Transfer "repeatedly ignored environmental protocols and custom plans that were created to minimize erosion and the possibility of a landslide at the site." *Id.* The grand jury also learned that "lack of erosion control devices" contributed to two landslides and the 2018 pipeline explosion in Beaver County, Pennsylvania. *Id.* The investigation ultimately led to a criminal indictment and a plea agreement with Energy Transfer's subsidiaries. *Id*.

Plaintiffs assert that any documents produced by Defendant as part of this investigation are relevant to their claims, noting that these two agencies investigated the Revolution Pipeline explosion and "Energy Transfer's violations of Pennsylvania environmental laws," and therefore should be compelled. Pls.' Mem., ECF 115-1 at 10.

> *1. Plaintiffs meet their burden regarding documents produced to the joint investigation related to the Revolution Pipeline explosion.*

Plaintiffs are entitled to any documents produced to the joint investigation that relate to the September 2018 explosion on the Revolution pipeline. As noted above in discussing the similar production of documents to the Chester County District Attorney, this request is narrow and discrete enough that it satisfies the requirement that a request identify the documents at issue with reasonable particularity. Plaintiffs can also establish that this category of documents was in fact produced to the joint investigation, as the Attorney General's press release cites to specific evidence reviewed by the grand jury that Energy Transfer's subsidiary ignored protocols to minimize chances of erosion on the Revolution Pipeline and that its lack of erosion control mechanisms directly led to two landslides and an explosion. *See* Pls.' Mem. at 6-7; Pls.' Ex. 1, ECF 115-3. While some of this evidence may have come from state government agencies, evidence of this nature would logically include internal documents from Energy Transfer and its subsidiaries. Indeed, Defendants concede that they produced a significant number of documents as part of the Attorney General's investigation in their filings related to the instant motion. *See* Ritchie Decl., ECF 117-2 at ¶ 8 (claiming that relevant documents from Attorney General's investigation have already been produced to Plaintiffs).

Again, Plaintiffs can easily demonstrate that documents related to the Revolution Pipeline are relevant to their claims, given that one of the corrective disclosures at issue here specifically involves the Revolution Pipeline explosion and related stop work order from the Pennsylvania DEP. Moreover, as noted in the previous section, documents related to the Revolution pipeline explosion are relevant to Defendant's knowledge of environmental hazards that Western

Pennsylvania geology poses to pipeline construction, and these hazards' impact on pipeline completion timelines.

As with the discrete set of documents produced to the Chester County District Attorney, Defendants' arguments that these documents lack relevance are similarly unpersuasive. There is clearly a "substantial overlap" between the investigation into the Revolution pipeline explosion and Plaintiffs' claims, given the corrective disclosure specifically related to that explosion. And because Defendants have previously compiled and produced these documents and recently reviewed the documents using a search protocol, they face a minimal burden in doing so now. *See* Ritchie Decl., ECF 117-2 at ¶ 8; *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (noting minimal burden in producing documents that a party has already reviewed and compiled for government investigatory bodies). Moreover, production of this limited subset of documents is proportional to the needs of the case, especially when comparing the cost of discovery to the substantial damages sought by Plaintiffs. *See* Fed. R. Civ. P. 26(b)(1); *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017).

> 2. *Plaintiffs do not meet their burden for other documents produced to the Attorney General and District Attorney.*

Plaintiffs are not entitled to the remaining documents produced by Defendants during the Attorney General and Delaware County District Attorney's investigation. I recognize that these documents may relate to the safety of Defendant's pipeline construction practices and ignorance of environmental risks that threatened timely completion of the pipelines. Buy Plaintiffs do not identify any discrete subset of the remaining production to the joint investigation, nor do they explicitly connect the dots between the remaining documents and their claims. This does not suffice to show relevance of the entire remaining production to the joint investigation. *See King*

*Cnty.*, 2011 WL 3438491, at *3 (denying motion to compel entire prior production where the court could not determine which parts of the production were relevant and which were not relevant).

### C. Plaintiffs do not meet their burden regarding any prior production related to the Pennsylvania Environmental Hearing Board permit appeal.

After the Pennsylvania DEP issued permits for the ME2 pipeline, several environmental groups appealed the permit issuance to the Pennsylvania Environmental Hearing Board ("EHB") on February 13, 2017. Pls.' Am. Compl., ECF 43 at ¶ 131. The appeal alleged that the DEP issued the permits "despite not having finished the required technical review of them, and despite the applications being incomplete, internally inconsistent, and in stark violation of the law." *Id.*

Plaintiffs summarily argue that any document produced as part of this appeal is relevant to their case, but do not with any specificity show that these documents are relevant and proportional to the needs of the case. Their Motion simply notes that the EHB appeal involved permit application deficiencies and highlights my previous citations to findings from the EHB appeal in denying Defendants' Motion to Dismiss. Pls.' Mem., ECF 115-1 at 5, 10. Although this may establish the relevance of the previous case as a general matter, it is insufficient to establish the relevance of any specific documents or categories of documents from that appeal to Plaintiffs' current claims. Significantly, the EHB appeal was not defended by Energy Transfer, but by the DEP, as the agency which had issued the permits. This lends credence to Defendants' assertion that they "did not produce a single document" for the EHB appeal, which was defended by the DEP – not Energy Transfer. Defs.' Opp., ECF 117 at 15. Plaintiffs have not disputed this, and therefore have not met their burden as to the requested documents.

### D. Plaintiffs do not meet their burden regarding any prior production related to the Lisa Drive litigation.

In November 2017, Energy Transfer's drilling for the ME2 pipeline caused a "frac-out" of underground drilling fluid, creating sinkholes and causing property damage to homes on Lisa Drive in Chester County. Pls.' Am. Compl., ECF 43 at ¶¶ 148, 154. The sinkholes allegedly "garnered significant media attention" and "spurred multiple lawsuits from Lisa Drive residents." *Id.* ¶ 462.

Plaintiffs move to compel any document produced in "any litigation related to Energy Transfer's pipeline projects brought by or on behalf of residents near the Lisa Drive site." Pls.' Mem., ECF 115-1 at 8. Yet Plaintiffs' Motion does not specifically explain why documents from these cases are relevant to their claims. Plaintiffs also do not identify any specific cases filed by Lisa Drive residents, beyond citing to a single paragraph of their Amended Complaint that briefly discusses a class action filed in March 2018. *See id.* at 3, 8; Pls.' Am. Compl., ECF 43 at ¶ 149. This type of broad request, absent more specifics on the allegedly relevant cases, does not satisfy a party's discovery burden. *See, e.g.*, *Wollam v. Wright Med. Grp., Inc.*, No. 10-03104, 2011 WL 1899774, at *1–2 (D. Colo. May 18, 2011) (denying motion to compel production of all documents produced in all legal actions against the defendant over the prior decade based on the same defective product); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying motion to compel production of "any and all documents received from or provided to the United States Justice Department" over a five year period).

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion to Compel will be granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
