| Gibson, Dunn & Crutcher LLP | Morgan, Lewis & Bockius LLP |
|---|---|
| 2001 Ross Avenue | 1701 Market Street |
| Suite 2100 | Philadelphia, PA 19103-2921 |
| Dallas, TX 75201-2923 | |

May 12, 2023

**Via CM/ECF**

Hon. Gerald A. McHugh
U.S. District Court for the Eastern District of Pennsylvania
Room 9613, United States Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:    *Allegheny Cty. Emps.' Ret. Sys., et al. v. Energy Transfer LP, et al.*,
             Case No. 2:20-cv-00200-GAM

Dear Judge McHugh:

On behalf of the Defendants in this action, we write in response to Plaintiffs' May 5, 2023 letter requesting a status conference and a two-month extension of all existing case deadlines, including the May 31 deadline to complete fact depositions.

Plaintiffs cannot show good cause to modify the case schedule.[1] Plaintiffs seek to delay this case—which has been pending since January 2020—by two more months to take depositions. But as Plaintiffs admit, the parties already have completed ten depositions of current or former Energy Transfer LP employees. Pls.' Ltr. 3 n.2. Two more will be completed today. And Defendants have offered dates in May—before the deadline to complete fact depositions—for all of the remaining depositions Plaintiffs have requested. The parties can and should complete depositions by the current May 31, 2023 deadline.

Plaintiffs' eleventh-hour request for additional documents also provides no basis to extend the case schedule. Plaintiffs failed to pursue discovery relating to text messages for more than a year after first raising the issue. Not until the tail-end of fact discovery did Plaintiffs finally seek judicial resolution of their previously abandoned request for text message discovery—when they knew there was no realistic chance to resolve the issue before the deadline to complete fact depositions. Likewise, Plaintiffs concede they first sought documents from additional custodians "several months ago," but they delayed moving to compel the documents' production until late April. Plaintiffs' delay in waiting to raise these issues until depositions are nearly complete *does not* create the good cause necessary to justify extending the case schedule.

---

[1] "A schedule may be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "[I]n order to establish good cause, the Plaintiffs should demonstrate that a more diligent pursuit of discovery was *impossible*." *Nelson v. Astra Merck, Inc.*, 1999 WL 357370, at *1 (E.D. Pa. June 3, 1999) (emphasis added). In other words, Plaintiffs must point to "circumstances beyond [their] control that compel [the] request." *Partners Coffee Co., LLC v. Oceana Svcs. & Prods. Co.*, 2010 WL 1726829, at *3 (W.D. Pa. Apr. 28, 2010) (denying extension of discovery cut-off).

May 12, 2023
Hon. Gerald A. McHugh
Page 2

Defendants have proceeded through discovery with alacrity to ensure depositions are finished by the long-established fact discovery deadline. Defendants are eager to complete expert discovery and file their motion for summary judgment. Defendants respectfully request that the Court deny Plaintiffs' request for two more months of discovery so that the parties can complete discovery and move this case forward according to the agreed-upon, Court-ordered schedule.

Defendants are available to discuss these matters further at a status conference if the Court would find a conference helpful.

**I.      Depositions**

Plaintiffs go to great lengths in their letter to blame Defendants for the supposed deposition-scheduling predicament they currently face. But with the exception of new depositions that Plaintiffs only recently noticed, May's deposition schedule for Energy Transfer witnesses is almost exactly as Plaintiffs contemplated when they first sought to schedule depositions in January. Plaintiffs do not dispute that Defendants have provided dates in May for each witness Plaintiffs have requested, including witnesses noticed for the first time on April 18. Accordingly, there is no reason depositions cannot be completed in May and no good cause to modify the case schedule.

As they explain in their letter, Plaintiffs divided their requested depositions into three "tranches" of roughly a month each, spanning mid-February through late May. *See* Pls. Ltr. 3 & Ex. A at 2. Plaintiffs' proposed schedule contemplated that they would depose five witnesses in Tranche 3, between April 17 and May 19: Matthew Ramsey, Marshall McCrea, Joseph McGinn, Thomas Long, and Kelcy Warren.

Defendants provided dates for *all* of those witnesses during Plaintiffs' proposed timeframe for Tranche 3, or within the week following the end of Tranche 3 (and still before the May 31 deadline to complete fact depositions):

- Plaintiffs deposed Mr. Long on April 21.

- Plaintiffs will depose Mr. McGinn on May 12; Mr. McCrea on May 17, and Mr. Ramsey on May 26.

- Plaintiffs offered three potential dates for Mr. Warren's deposition, between May 10-12.

Only one other deposition of an Energy Transfer witness under Defendants' control contemplated by Plaintiffs' January 20 scheduling request will be taken during Plaintiffs' proposed time period for Tranche 3.[2] That deposition, of former Energy Transfer employee Richard Smith,

---

[2] Due to scheduling conflicts, Defendants offered Plaintiffs a date during Tranche 3 for the deposition of Adam Arthur, whom Plaintiffs had assigned to Tranche 1. After holding the date open for ten days and brushing aside multiple requests from Defendants' counsel to confirm the

May 12, 2023
Hon. Gerald A. McHugh
Page 3

was completed on April 27. The only other Energy Transfer depositions anticipated to take place during Plaintiffs' proposed time period for Tranche 3 are for witnesses whom Plaintiffs only recently noticed for deposition on April 18 (Lyndsay Hannah and Todd Nardozzi) or subpoenaed on May 4 (Albert Kravatz). When Plaintiffs requested these depositions late in the fact discovery period, Defendants promptly provided dates before the applicable deadline. In other words, with the exception of newly added witnesses, the current deposition schedule is almost exactly as Plaintiffs proposed in January.

Plaintiffs' claim that the schedule is somehow "unworkable" therefore rings hollow. To the extent Plaintiffs claim that the scheduling difficulties arise from third-party depositions *Defendants* have noticed,[3] *see* Pls.' Ltr. 4-6. Plaintiffs have been on notice that Defendants may depose these third parties for months, since the time Defendants first subpoenaed them for documents—and some for depositions.[4] And Plaintiffs have known since the Court amended the operative scheduling order in December that Defendants could take up to fifteen depositions absent Court order or agreement. *See* ECF No. 133 ¶ 3. Plaintiffs could not reasonably have assumed that Defendants would forego depositions they had noticed previously or to which they were entitled. Given the substantial combined resources of two accomplished law firms at their disposal, there is no reason Plaintiffs cannot make the current deposition schedule work if Defendants can do so.[5]

Nor do challenges in scheduling the deposition of Energy Transfer's Executive Chairman and former CEO create good cause to extend the entire case schedule by two months. Due to Mr. Warren's busy schedule of international travel, philanthropic activities, and other commitments, Defendants could not provide a firm date for his deposition until later in the deposition period. But Defendants ultimately offered on April 21 to produce Mr. Warren for deposition twenty days later on May 11—a date squarely within Plaintiffs' proposed "tranche" for

---

offered date so that Mr. Arthur could arrange his schedule, Plaintiffs withdrew their notice of Mr. Arthur's deposition.

[3] Plaintiffs also claim in their letter that they are "in the process of scheduling depositions of several additional third parties, including … additional former Energy Transfer employees," Pls.' Ltr. 4, but to date, Plaintiffs have noticed only one additional third-party deposition of an Energy Transfer witness not requested in their January 20 letter. Defendants intend to present that witness—former Energy Transfer employee Mr. Kravatz—on the noticed May 25 date. In any event, Plaintiffs do not and cannot claim that they previously were unaware of these (unidentified) third-party witnesses and could not have deposed them earlier.

[4] Defendants subpoenaed nine third parties—all advisors to Plaintiffs—for documents between August 30 and September 14, 2022. Two subpoenas also included deposition requests.

[5] Given that Plaintiffs routinely have 4 to 7 lawyers attend depositions, there can be no suggestion that they cannot staff the remaining depositions within the confines of the existing deadlines. This would be consistent with their representation that they "are committed to ensuring [this] action is litigated as zealously and efficiently as possible" and expression of confidence that their counsel will "prosecute this litigation in a zealous and efficient manner." ECF No. 4-11 ¶¶ 10, 16.

May 12, 2023
Hon. Gerald A. McHugh
Page 4

Mr. Warren's deposition that provided them ample time to prepare. When Plaintiffs responded five days later that they were "not able to take Mr. Warren's deposition on May 11," Defendants promptly offered May 10 and 12 as alternatives. Plaintiffs once again took five days to respond, finally stating on May 3 that they "[did] not accept" any of the offered dates for Mr. Warren's deposition and would not be "rushed into taking Mr. Warren's deposition before … the depositions of Mr. McGinn … and Mr. McCrea."[6]

Plaintiffs' May 3 email and letter to the Court make clear that Plaintiffs are not *unable* to take Mr. Warren's depositions on the offered dates—they just don't want to. Plaintiffs insist on their preferred sequencing of witnesses—including their stated desire to take Messrs. McGinn's and McCrea's depositions before they take Mr. Warren's (or, in another instance, their "aim" to take Messrs. McCrea's and Ramsey's depositions before Mr. Warren's).[7] Pls. Ltr. 2 & Ex. A at 2. But a reality of complex litigation involving deponents who are busy executives and directors of a Fortune 100 company is that the witnesses' schedules often dictate the order of depositions, and no party may end up with the exact order it would prefer. That depositions cannot be scheduled precisely in the noticing party's preferred sequence thus does not constitute good cause to modify the Court-ordered case schedule in the hope of accommodating that sequence—otherwise, plaintiffs could indefinitely extend discovery in almost any complex case.

Defendants have offered dates for every deposition Plaintiffs have requested prior to the current May 31 fact deposition deadline. Beyond pointing to the number of depositions remaining to be taken and vaguely asserting the schedule is "unworkable"—an assertion belied by Defendants' ability to accommodate that schedule—Plaintiffs offer no facts demonstrating they cannot abide by the May 31 deadline ordered by this Court. Accordingly, there is no good cause for modifying the case schedule, and Plaintiffs' request for a two-month extension should be denied.

## II.     Plaintiffs' Belated Motion to Compel

Plaintiffs' untimely motion to compel production of information relating to text messages and additional custodial documents likewise does not provide good cause to extend the case schedule. Plaintiffs delayed resolution of these issues for months—or, in the case of information about text messages, almost a year—and waited to raise them until it was highly unlikely they could be resolved before the fact deposition deadline established months earlier. Plaintiffs thus

---

[6] Plaintiffs' May 3 email said nothing about the scheduling of Mr. Warren's deposition relative to the production of any relevant text messages he may have.

[7] During a telephonic meet-and-confer on May 3, Plaintiffs' counsel stated he did not know whether the lawyer who planned to take Mr. Warren's deposition actually was unavailable on any of the three offered dates. Nor do Plaintiffs assert anywhere in their May 5 letter that they have actual scheduling conflicts preventing them from taking Mr. Warren's deposition on any of the offered dates.

cannot show that "a more diligent pursuit of [these issues] was impossible," as required to demonstrate good cause to modify the case schedule. *Nelson*, 1999 WL 357370, at *1.

Plaintiffs asked for text messages more than a year ago, but then abandoned that request by not seeking judicial review for almost a year. Then, with *less than six weeks* remaining in the period to complete fact depositions, they revived the issue in an attempt to extend the fact discovery cut off. On April 8, 2022, Plaintiffs asked that Defendants search for and produce text messages that Plaintiffs said they had seen referenced in Defendants' extensive email productions. When Defendants declined to do so, Plaintiffs said on May 20, 2022 that they would "consider the parties at an impasse and the matter ripe for judicial review." Plaintiffs repeated that admonition on July 8, 2022. But for nine months, Plaintiffs failed to seek judicial review, instead waiting until the parties were well into fact depositions.[8] Plaintiffs only finally sought the Court's assistance on April 20, when most of the remaining depositions already had been scheduled and mere weeks remained in the fact deposition period. Given Plaintiffs' lack of diligence in pursuing this discovery—waiting until April 2023 to seek judicial review of an issue they declared ripe for resolution in May 2022—their motion to compel production of information relating to text messages provides no good cause to modify the case schedule.

Plaintiffs similarly delayed resolution of their request for additional custodial productions, first making the request on December 16, 2022—the final day for completion of non-deposition fact discovery. ECF No. 133 ¶ 1. After undertaking an investigation, Defendants informed Plaintiffs on a January 18, 2023 meet-and-confer (and confirmed in writing on January 30) that it would be unduly burdensome to comply with their request but offered "to continue to meet and confer on this issue as needed, if there is a narrower subset of custodians that Plaintiffs believe is appropriate." Despite Defendants' efforts to work with Plaintiffs in good faith to add the requested custodians, including by seeking narrower search terms, Plaintiffs steadfastly refused to tailor their request or otherwise work with Defendants to alleviate their burden. By the time Plaintiffs finally filed their motion to compel on April 20, they *still* had not provided a narrower set of proposed search terms. Given their apparent unwillingness to negotiate the terms of their request, Plaintiffs should have sought the Court's assistance soon after Defendants informed them in January that it would be unduly burdensome to comply with the request on Plaintiffs' terms. They didn't. Instead, they waited another three months to seek judicial review. Given this unexplained delay, Plaintiffs cannot show that a more diligent pursuit of additional custodial productions was "impossible," as they must to demonstrate good cause to modify the case schedule. *Nelson*, 1999 WL 357370, at *1.

\* \* \*

Defendants are committed to completing depositions by the May 31 fact discovery deadline and have provided Plaintiffs with all the dates necessary to do so. Plaintiffs could have resolved

---

[8] During the parties' discovery negotiations, Plaintiffs characterized similar issues raised by Defendants as "abandoned." To use their words, "[Plaintiffs] were free to continue to request [information relating to text messages] from [Defendants] if they felt [it was] necessary … but they chose to abandon their request instead."

May 12, 2023
Hon. Gerald A. McHugh
Page 6

their complaints about additional custodial documents and text messages months ago, but they chose not to.  Plaintiffs thus cannot show that it was impossible to obtain sooner the discovery for which they now seek to extend the case schedule, nor can they show that circumstances beyond their control prevented them from obtaining the discovery sooner.  Accordingly, no good cause exists for any extension of the case schedule, let alone the two-month extension Plaintiffs now seek.  Plaintiffs request to extend the case schedule should be denied.

Defendants look forward to discussing these matters further with the Court at a status conference if a conference would be helpful to the Court.

Respectfully Submitted,

| **Gibson, Dunn & Crutcher LLP** | **Morgan, Lewis & Bockius LLP** |
|:---:|:---:|
| */s/ John T. Cox III* | */s/ Laura H. McNally* |
| John T. Cox III | Laura H. McNally |