# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE, DENVER EMPLOYEES RETIREMENT PLAN, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS NATIONAL PENSION FUND, and IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>ENERGY TRANSFER LP, KELCY L. WARREN, THOMAS E. LONG, MARSHALL MCCREA, and MATTHEW S. RAMSEY,<br><br>     Defendants. | Case No. 2:20-cv-00200-GAM |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL LEAD PLAINTIFFS' PRODUCTION OF TEXT MESSAGE COMMUNICATIONS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND............................................................................................... 1

III. ARGUMENT ....................................................................................................................... 3

    A. Legal Standard ......................................................................................................... 3

    B. The Text Messages Sought Are Relevant And Proportional To The Needs of the Case.................................................................................................................. 4

        1. The Text Messages Sought Are Relevant ..................................................... 4

        2. Production of Plaintiffs' Text Messages Is Proportional ............................. 6

IV. CONCLUSION.................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Atwater v. Nat'l Football League Players Ass'n*,
   No. 1:06-CV-1510-JEC, 2008 WL 11335091 (N.D. Ga. Apr. 23, 2008)..................3

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
   No. 3:17-CV-101, 2018 WL 2088760 (M.D. Pa. May 4, 2018)..................7

*Edwards v. McDermott Int'l, Inc.*,
   No. 4:18-cv-04330, 2022 WL 1568279 (S.D. Tex. May 18, 2022)..................6

*Flagg v. City of Detroit*,
   252 F.R.D. 346 (E.D. Mich. 2008) ..................3

*H.J. Heinz Co. v. Starr Surplus Lines Inc. Co.*,
   No. 2:15-CV-00631-AJS, 2015 WL 12791338 (W.D. Pa. July 28, 2015) ..................6

*Lux Glob. Label Co., LLC v. Shacklett*,
   No. 18-cv-5061, 2020 WL 1700572 (E.D. Pa. Apr. 8, 2020)..................3

*Paisley Park Enter., Inc. v. Boxill*,
   330 F.R.D. 226 (D. Minn. 2019)..................3

*Palakovic v. Wetzel*,
   No. 3:14-cv-145, 2019 WL 6896659 (W.D. Pa. Dec. 18, 2019) ..................6

*In re Pork Antitrust Litig.*,
   No. 18-cv-1776 (JRT/HB), 2022 WL 972401 (D. Minn. Mar. 31, 2022) ..................3

*Sage Prods., LLC v. Chemrite Copac, Inc.*,
   No. 19 CV 5308, 2021 WL 5299789 (N.D. Ill. Nov. 21, 2021)..................6

*Schmalz v. Vill. of N. Riverside*,
   No. 13 C 8012, 2018 WL 1704109 (N.D. Ill. Mar. 23, 2018) ..................7

**RULES**

Fed. R. Civ. P. 26(b)(1)..................2, 6

Fed. R. Civ. P. 34(a)(1)(A) ..................2

Defendants Energy Transfer LP, Kelcy L. Warren, Tomas E. Long, Marshall McCrea, and Matthew S. Ramsey (collectively, "Defendants") respectfully submit their Brief in Support of Defendants' Motion to Compel Production of Text Message Communications (the "Motion") pursuant to Federal Rule of Civil Procedure 37 and Local Rule 26.1.

## I.   INTRODUCTION

This Motion arises first from Lead Plaintiffs' refusal to search for and produce relevant text message communications.  Lead Plaintiffs recently (and successfully) moved to compel Defendants to search for and produce relevant text messages, yet they steadfastly have refused to do the same.  Lead Plaintiffs' refusal to produce text messages is especially unjustified given recent testimony from their investment managers undermining critical elements of Lead Plaintiffs' claims.

Lead Plaintiffs' investment managers—the entities that made all investment decisions in in Energy Transfer securities on behalf of Lead Plaintiffs—recently have offered damning testimony contradicting essential elements of Lead Plaintiffs' securities fraud claims.  The investment managers testified that they did not rely on any alleged misstatements or omissions in deciding whether to invest in Energy Transfer securities, and they have refuted Lead Plaintiffs' claims that the challenged statements were false, misleading, or material.  Thus, it is critically important that Defendants be able to review all communications between Lead Plaintiffs and their investment managers, and Lead Plaintiffs have never denied that they used text messages to communicate on matters relevant to this case.  To the extent Lead Plaintiffs' text message communications shed light on these topics—topics that go to the heart of Defendants' case—Defendants are entitled to them.  As described below, and consistent with the Court's prior ruling granting Lead Plaintiffs' motion to compel, Lead Plaintiffs' text message communications are plainly relevant and proportional to the needs of this case.  Defendants' Motion thus should be granted.

## II.   FACTUAL BACKGROUND

Shortly after fact discovery began in July 2021, Defendants sought responsive

electronically stored information ("ESI") from Lead Plaintiffs.[1] On September 23, 2021, Lead Plaintiffs' counsel identified at least fourteen email custodians—including high-ranking managers, investment officers, and executive directors with investment authority—with potentially responsive ESI (the "ESI Custodians").  *See* J. Adams Dec., Exhibit 1-B.

Seven months later, Defendants asked Lead Plaintiffs' counsel to confirm whether they had reviewed any relevant text messages from the ESI Custodians and the scope of that review, if any, or otherwise to explain why no text messages were produced.  *See id.*, Exhibit 1-C at 4.  Lead Plaintiffs failed to address Defendants' concerns and failed to produce text messages thereafter.

Since that time more than twelve months ago, however, the relevance of Lead Plaintiffs' text message communications has crystallized.  Indeed, and as set forth below, recent testimony of Lead Plaintiffs' investment managers has undermined several elements of Lead Plaintiffs' claims, demonstrating that Lead Plaintiffs did not, for example, rely on any of Defendants' alleged misstatements or omissions.  *See* Motion Section III.A.1., *infra*.  Any ESI relating to the topics addressed in the investment managers' testimony—including, importantly, text message communications showing what the investment managers may have said to Lead Plaintiffs about these issues—goes to the heart of Defendants' case.

With the investment managers' recent testimony in hand, on May 9, 2023, Defendants once again asked Lead Plaintiffs' counsel to confirm whether they had collected and reviewed text messages from the ESI Custodians.  *See* J. Adams Dec., Exhibit 1-D at 2.  Lead Plaintiffs' counsel refused, thereby requiring Defendants to seek the Court's intervention.  *See id*., Exhibit 1-D at 1.  Significantly, Lead Plaintiffs and their counsel have never once represented to Defendants that they searched and there are no text messages relevant to the issues in this litigation.  They simply refuse to address the issue.

---

[1] On July 16, 2021, Defendants served their First Set of Requests for Production (the "RFPs") to Plaintiffs specifically requesting communications.  As merely one example, the RFPs requested "all documents relating to any communication [Plaintiffs] had regarding any purchase, sale, or other transaction of any Energy Transfer Securities." *See* J. Adams Declaration in Support of Defendants' Motion to Compel Lead Plaintiffs' Text Message Communications (hereinafter, "J. Adams Dec."), Exhibit 1-A at 4.

## III. ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Rule 34 specifically authorizes requests for the production of electronically stored information ("ESI"). Fed. R. Civ. P. 34(a)(1)(A).

As Plaintiffs acknowledged in their own motion to compel, courts routinely order the production of text messages. *See* Lead Plaintiffs' Memorandum of Law ISO Their Motion to Compel Defendants' Production of Responsive Documents from Two Additional Custodians and Text Message Communications at 13–14 [Dkt. 146]; *Paisley Park Enter., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) ("It is well established that text messages 'fit comfortably within the scope of materials that a party may request under Rule 34.'") (quoting *Flagg v. City of Detroit*, 252 F.R.D. 346, 352–53 (E.D. Mich. 2008); *see also, e.g., In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/HB), 2022 WL 972401, at *12–14 (D. Minn. Mar. 31, 2022) (compelling custodians to search for and produce text messages); *Atwater v. Nat'l Football League Players Ass'n*, No. 1:06-CV-1510-JEC, 2008 WL 11335091, at *3 (N.D. Ga. Apr. 23, 2008) (ordering production of "all data" stored in "personal or other computer or text messaging devices," noting that "[i]n the contemporary world of communications, even leaving out the potential and reality of finding the modern-day litigation equivalent of a 'smoking gun' in text messages, … the Court is baffled as to how Defendants can reasonably claim to believe that then text messages would be immune from discovery.").

Once the moving party establishes that the requested discovery falls within the scope of discovery defined by Rule 26(b)(1), "the burden shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1) or (ii) is not sufficiently relevant to justify the burden of producing the information." *Lux Glob. Label Co., LLC v. Shacklett*, No. 18-cv-5061, 2020 WL 1700572, at *3 (E.D. Pa. Apr.

3

8, 2020).

      **B.**      **The Text Messages Sought Are Relevant And Proportional To The Needs of the Case**

            **1.**      **The Text Messages Sought Are Relevant**

The information Defendants seek is relevant to the claims and defenses at issue. Lead Plaintiffs' investment managers—the entities that invested in Energy Transfer securities on Lead Plaintiffs' behalf—have offered testimony that undermines essential elements of Lead Plaintiffs' claims, including that alleged misstatements or omissions were false, misleading, or material. For example, the Managing Director of Salient Capital Advisors, LLC ("Salient"), an investment manager that invested in Energy Transfer securities on behalf of Lead Plaintiff Allegheny County Employees' Retirement System ("ACERS"), testified that Salient did not rely on the statements that Lead Plaintiffs claim were false or misleading:

> Q. Did Salient consider this statement, quote: 'We also reiterate our commitment to the highest levels of construction expertise and our dedication to preserving and protecting the environment in which we conduct our work,' did they – did Salient consider that important when making investment decisions with regard to Energy Transfer? ….
>
> **A. No.**
>
> Q. Do you have any reason to believe that Mr. Shields' statement that I just read was not true? ….
>
> **A. No.**
>
> Q. Any reason to think that Mr. Shields knew or was deliberately reckless in not knowing that when he made that statement on behalf of Energy Transfer, that it wasn't true? ….
>
> **A. No.**
>
> Q. Any reason to think that any investors of Energy Transfer were misled by that statement by Mr. Shields? …
>
> **A. No.**

*See* J. Adams Dec., Exhibit 1-E (Gardner Dep.) at 108:25–109:22; *see also id.* at 16:17–19, 25:3–

4

8.[2]

As another example, Tortoise Capital Advisors, LLC ("Tortoise"), an entity that served as an investment manager to, and invested in Energy Transfer securities on behalf of, Lead Plaintiff Denver Employees Retirement Plan ("DERP"), similarly indicated that Lead Plaintiffs did not rely on any statements or omissions for which Defendants allegedly are responsible:

> Q. [T]he third bullet point says, 'The second phase of the project referred to as Mariner East 2 will expand the total takeaway capacity to 345 MBbls/d for interstate and intrastate propane, ethane, and butane service, and is expected to commence operations in the second quarter of 2018. . . . And you testified that Tortoise did not make any investment decisions in Energy Transfer for DERP based on this statement, right? ….
>
> **A. Correct.**
>
> Q. So if this stated that ME-2's initial capacity would be lower than 345 MBbls/d, but sufficient to meet Energy Transfer's contractual commitments, would that have impacted your investment decisions on whether to buy or sell Energy Transfer securities for DERP? ….
>
> **A. No.**
>
> Q. So if it stated that ME-2's initial capacity would be 160 MBbls/d, which was sufficient to meet Energy Transfer's contractual commitments, would that have impacted your investment decisions in Energy Transfer for DERP? ….
>
> **A. No.**

See J. Adams Dec., Exhibit 1-F (Tortoise 30(b)(6) Dep.) at 155:22–157:17.[3]

Accordingly, it is important for Defendants to have discovery about what Lead Plaintiffs knew or should have known about what their investment managers relied upon or believed about

---

[2] See also, e.g., id. at 49:20–50:9 (Q. During the time when Salient was making investment decisions on ACERS to invest in Energy Transfer units, you never thought that Energy Transfer senior officers were liars, did you? . . . . A. I have no reason to believe that they were, no. Q. During the period when Salient was making investment decisions on behalf of ACERS to invest in Energy Transfer units, you never thought that Energy Transfer's senior officers didn't tell the truth, did you? . . . A. Not that I recall, no.), 115:5–116:1, 132:13–133:6, 182:24–184:9; see also id., Exhibit 1-F (Tortoise 30(b)(6) Dep.) at 44:15–25, 82:10–83:12, 90:13–91:6, 91:16–94:20, 97:11–98:10, 107:11–108:6, 122:17–123:7, 129:15–131:2, 134:22–136:1.

[3] See also, e.g., id. at 83:13–18, 85:11–17, 87:18–23, 91:7–91:12, 94:21–95:2, 98:11–16, 100:13–19, 112:18–23, 114:18–23, 166:12–18, 180:6–11, 182:7–12; see also id., Exhibit 1-E at 80:14–10, 83:19–23, 101:3–7, 104:18–22, 108:19–23, 111:24–112:3, 116:3–8, 130:20–25, 133:8–12, 142:10–13, 143:21–25, 144:12–16, 173:2–6, 175:15–20.

the truth of the challenged statements. Plaintiffs' text message communications regarding the alleged misstatements, alleged corrective disclosures, and their investment in Energy Transfer units are relevant to the claims and defenses in this case and must be searched for and produced.

### 2. Production of Plaintiffs' Text Messages Is Proportional

Under the Federal Rules of Civil Procedure, the proportionality factors for discovery requests consider the public importance of the issues in the action, the amount in controversy, the parties' relative access to information, the parties' relative resources, and the importance of the discovery requested, and whether the burden or expense outweighs the likely benefit. *See Palakovic v. Wetzel*, No. 3:14-cv-145, 2019 WL 6896659, at *3 (W.D. Pa. Dec. 18, 2019) (citing Fed. R. Civ. P. 26(b)(1)). These factors all weigh in favor of ordering production of relevant text messages. *See id.*

***First***, the issues at stake in securities litigation are matters of public importance. "Given that a central purpose of these securities laws is to protect investors and would-be investors in the securities market against misrepresentations, there can be little debate that the issues at stake in this case are meaningful." *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-04330, 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022). This factor weighs in favor of production.

***Second***, Lead Plaintiffs allege that they and the certified Class "lost billions of dollars" as a result of the actions underlying this lawsuit. Complaint ¶ 19. Defendants deny that they are liable for any damages at all, but the amount in controversy is significant and weighs in favor of allowing the requested discovery. Indeed, courts routinely order the production of text messages where much lesser amounts were at stake. *See, e.g., Sage Prods., LLC v. Chemrite Copac, Inc.*, No. 19 CV 5308, 2021 WL 5299789, at *5 (N.D. Ill. Nov. 21, 2021) (compelling production of text messages where amount in controversy in excess of $62 million) (citations omitted); *H.J. Heinz Co. v. Starr Surplus Lines Inc. Co.*, No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015) ($30 million).

***Third***, Lead Plaintiffs have exclusive access to the text messages sought, so the information in the communications cannot be obtained through other means. This factor weighs in favor of

production.  *Edwards*, 2022 WL 1568279, at *2 ("Because Defendants have complete and exclude control over McDermott's electronic platforms, Lead Plaintiffs have no way of obtaining such information other than from Defendants through the discovery process.").  Because Lead Plaintiffs have refused to even search for responsive text messages, any such messages that exist necessarily will be excluded entirely from production.

*Fourth*, Lead Plaintiffs are not individuals with limited resources, but large, sophisticated investment funds with significant assets.  As such, Lead Plaintiffs' resources favor production. *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *2 (M.D. Pa. May 4, 2018) (rejecting proportionality concerns where "every party involved is a sophisticated corporate or government entity with significant resources at its disposal").

*Fifth*, the requested discovery may comprise pivotal evidence in Defendants' efforts to defend against Lead Plaintiffs' baseless allegations.  Defendants are entitled not only to the testimony from the investment advisors that eviscerates Lead Plaintiffs' claims, but also text messages that likely also undermine the claims.  *See Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 1704109, at *4 (N.D. Ill. Mar. 23, 2018) ("The content of text messages cannot be replaced simply by eliciting testimony ….").  Not only is such evidence relevant, as set forth above, but it is critical to Defendants' ability to present their case to just resolution.

*Sixth*, discovery of text messages does not constitute an undue burden, and any burden certainly does not outweigh the likely benefit of Lead Plaintiffs' text message communications to Defendants' case.  Lead Plaintiffs are sophisticated investment funds possessing the necessary resources to conduct a limited collection and review of text messages.  The Lead Plaintiffs already have identified the relevant ESI Custodians from whom Defendants seek text message communications.  *See* J. Adams Dec., Exhibit 1-D.  Half of the work is done—Defendants merely seek its completion.  Further, any burden that may exist is outweighed by the benefit of knowing what Lead Plaintiffs said in their text messages about the critical issues in this case.  Given the testimony from Lead Plaintiffs' investment advisors, Lead Plaintiffs' text messages very likely also show that they have no case.

7

## IV. CONCLUSION

For all the reasons stated above, Defendants respectfully request that this Motion be granted.

Dated: June 16, 2023					Respectfully submitted,

							GIBSON, DUNN & CRUTCHER LLP


						By:/s/ *Trey Cox*
							Trey Cox*
							2001 Ross Avenue
							Suite 2100
							Dallas, TX 75201
							Tel: (214) 698-3100
							Fax: (214) 571-2900
							tcox@gibsondunn.com

							Brian M. Lutz*
							Colin B. Davis*
							555 Mission Street
							Suite 3000
							San Francisco, CA 94105
							Tel: (415) 393-8200
							Fax: (415) 393-8306
							blutz@gibsondunn.com
							cdavis@gibsondunn.com

							**Admitted Pro Hac Vice*

							MORGAN, LEWIS & BOCKIUS LLP

							Laura H. McNally
							Karen Pieslak Pohlman
							Amanda F. Lashner
							1701 Market Street
							Philadelphia, PA 19103
							Tel: (215) 693-5000
							Fax: (215) 963-5001
							laura.mcnally@morganlewis.com
							karen.pohlmann@morganlewis.com
							amandalashner@morganlewis.com

							*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 26.1(F)

Pursuant to Local Rule 26.1(f), the undersigned hereby certifies that the parties, after reasonable effort, are unable to resolve the dispute. On May 9–10, 2023, the undersigned conferred with counsel for Lead Plaintiffs regarding the relief requested herein, and Lead Plaintiffs are opposed to the same.

*/s/ John S. Adams*
John S. Adams


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 16th of June 2023, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*/s/ Trey Cox*
Trey Cox