IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE, DENVER EMPLOYEES RETIREMENT PLAN, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS NATIONAL PENSION FUND, and IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ENERGY TRANSFER LP, KELCY L. WARREN, THOMAS E. LONG, MARSHALL MCCREA, and MATTHEW S. RAMSEY,<br><br>    Defendants. | Case No. 2:20-cv-00200-GAM |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' UNCONTESTED MOTION TO FILE UNDER SEAL

Pursuant to Rules 5.1.2(6) and 5.1.5 of the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania (the "Local Rules") and paragraph 16 of the protective order entered by the Court on July 23, 2021 (ECF 76 ("Protective Order")), Defendants Energy Transfer LP ("Energy Transfer"), Kelcy L. Warren, Thomas E. Long, Marshall McCrea and Matthew S. Ramsey (together, "Defendants"), respectfully submit this memorandum of law in support of their Uncontested Motion to File Under Seal.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2021, the Court entered the Protective Order.  *See* ECF 76.

Exhibits 7, 12, 37, 43, 52, 57, 61, 68, 76, 77, 81, 82, 83, 86, 90, 97, 98, 99, 117 ("Plaintiffs' Confidential Exhibits") to the Declaration of Colin B. Davis in Support of Defendants' Motion for Summary Judgment (the "Declaration") consist of documents that Lead Plaintiffs have designated "Confidential" pursuant to the Protective Order.  Exhibits 22, 24, 51, 58, 72, 73, 94, 102, 103, 105, 107, 108, 109, 110, 111, 112, 113, 114, 119, 121, 122, 124, 125, 127 ("Defendants' Confidential Exhibits," together with Plaintiffs' Confidential Exhibits, the "Confidential Exhibits") to the Declaration consist of documents that Defendants have designated "Confidential" or "Highly Confidential" pursuant to the Protective Order and that are confidential.  Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed January 19, 2024 (the "Memorandum"), contains references to the Confidential Exhibits.

Except as noted below concerning Exhibit 117, Defendants take no position as to the confidentiality of the documents designated as "Confidential" by Plaintiffs pursuant to the Protective Order cited as Exhibits 7, 12, 37, 43, 52, 57, 61, 68, 76, 77, 81, 82, 83, 86, 90, 97, 98, 99 to the Declaration.[1]

Defendants have made a concerted effort to isolate only documents with confidential business information where disclosure would harm Energy Transfer.  *See In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019)).  Defendants seek to seal 24 of the

---

[1] Exhibits 12, 37, 43, 52, 57, 61, 68, 76, 77, 81, 82, 83, 86, 90, 97, 98, 99 are all publicly available documents that Plaintiffs produced in this case and designated as "Confidential" pursuant to the Protective Order.  On January 18, 2024, Defendants conferred with Plaintiffs regarding whether Plaintiffs would consent to Defendants not filing these publicly available documents under seal.  On January 19, 2024, Plaintiffs would not consent to Defendants filing Exhibits 12, 37, 43, 52, 57, 61, 68, 76, 77, 81, 82, 83, 86, 90, 97, 98, 99 publicly, stating that they "believe that any document that Plaintiffs have produced with a Bates label under a confidentiality designation is protected from Defendants' disclosure in its 'ET_PLAINTIFFS_' Bates stamped form."  Defendants, therefore, are moving to file these exhibits under seal pursuant to the Protective Order.

131 Exhibits to the Declaration. Defendants' Confidential Exhibits and Exhibit 117 contain the following confidential business information:

1. **Exhibit 22** is a "Mariner East 2/2X . . . Flash Report" circulated internally to Energy Transfer employees. The report includes a detailed discussion of the planned scope of ME2's construction, updates on ME2 construction, and the status of various horizontal directional drilling (HDD) sites active along the pipeline. *Id.* at ET-ACERS-00639117–9119. The final two pages of the exhibit include pie charts showing construction/restoration progress for various stages of construction, *id.* at ET-ACERS-00639120, and a detailed map of the ME2 pipeline showing the locations of pump stations and drills, *id.* at ET-ACERS-00639121.

2. **Exhibit 24** is an excerpt of an internal list of notes providing detailed background information in preparation for the question-and-answer portion of the Q2 2017 Energy Transfer Partners, LP earnings conference call. The first page addresses potential finance questions, including granular internal figures regarding adjusted EBITDA by segment, including for segments of Energy Transfer's business unrelated to the ME2 pipeline. Ex. 24 at ET-ACERS-00809204. This document also contains specific sizes for Energy Transfer's natural gas liquids ("NGLs") tanks at Marcus Hook Industrial Complex, which is non-public and commercially sensitive information. *Id.* at ET-ACERS-00809216.

3. **Exhibit 51** is an internal report detailing Energy Transfer's plans and daily progress on HDD S2-0156 for March 3, 2018. The report details the name of Energy Transfer's subcontractor on the drill. *See* Ex. 51 at ET-ACERS-00725140. Additionally, the report describes the drilling process used by the subcontractor, including the length of the drill rod, the diameter of the pilot bit, the diameter of the reamer bit, the diameter of the drill rod, the length of the steering tool assembly, and the specific brand name of the drilling mud used. *Id.* at ET-ACERS-00725141. It also details the steps taken by the subcontractor on March 3, 2018, including when the subcontractor began

tripping in with the pilot bit, the flow rate used for the drilling mud, and the total number of drill rods used to trip in. *Id.*

4. **Exhibit 58** is an excerpt of an internal list of notes providing detailed background information in preparation for the question-and-answer portion of the Energy Transfer Partners, LP Q1 2018 earnings conference call. This excerpt contains detailed, confidential financial information, including Energy Transfer's adjusted EBITDA for various segments of the company, alongside non-public and commercially sensitive notes regarding the same. *See* Ex. 58 at ET-ACERS-00880685. It also contains detailed, confidential information regarding ME2's projected capital expenditures, including a **"For internal purposes only"** notation indicating that the information should not be shared publicly. *Id.* at ET-ACERS-00880703 (emphasis in original). The excerpt also contains confidential information regarding expected ME2 capacity at various target dates and estimated timelines for completion of specific ME2 segments. *Id.* at ET-ACERS-00880702 to -0703.

5. **Exhibit 72** is an email chain from August 2018, containing confidential, internal correspondence between Energy Transfer employees. The exchange discusses timing estimates for completion of ME2 HDD sites and pipeline segments in preparation for the earnings conference call. *See* Ex. 72. The email chain also contains volume estimates in barrels per day for an unrelated pipeline. *Id.* at ET-ACERS-00684107. Several sections are marked "**For reference:**" and "**For reference only:**" to emphasize that they not be shared publicly by the employees on the thread. *Id.* at ET-ACERS-00684105, -4107.

6. **Exhibit 73** is an excerpt of an internal list of notes providing detailed background information in preparation for the question-and-answer portion of the Energy Transfer Partners, LP Q2 2018 earnings conference, similar to Exhibit 58. This excerpt contains confidential, commercially sensitive information regarding Energy Transfer's finances, operations, and customer contracts. For example, it contains detailed, confidential information regarding ME2's projected

capital expenditures, including a **"For internal purposes only"** notation indicating that the information should not be shared publicly. *See* Ex. 73 at ET-ACERS-00881434 (emphasis in original). An internal note listing the names of Energy Transfer's contracted "shippers" for the ME2 pipeline is labeled "**[NOT PUBLIC – Do NOT Provide]**." *Id.* (emphasis in original). These shippers are Energy Transfer customers contracted to transport NGLs through ME2. *Id.* Each shipper's name is followed by a numeric volume in barrels per day (bbls/d), representing the contracted commitment. *Id.* These types of information are covered by non-disclosure agreements included as part of the contracts between Energy Transfer and its customers. The document also contains other financial and operational information, including adjusted EBITDA per segment, the capacity of ME2 at various target dates, and estimated timelines for completion of specific ME2 segments. *Id.* at ET-ACERS-00881413, -1433 to -1434.

7.     **Exhibit 94** is a single-page excerpt of a highly detailed map of a segment of ME2 in Eastern Pennsylvania, showing the exact locations of numerous HDD sites, completion estimates for those HDDs, and the status of pending or extant private landowner agreements governing specified sections of the ME2 pipeline.

8.     **Exhibits 102, 103, 105, 107, 108 109, 110, 111, 112, 113, 114, 122, 124, and 125**[2] are deposition transcripts for fact and expert witnesses in this case that have been designated "Confidential" or "Highly Confidential." These exhibits also contain internal references to other exhibits designated "Confidential" and "Highly Confidential" in this case. The transcripts quote and describe customer contract details, engineering information, construction reports, and other sensitive information. For example, the testimony in **Exhibit 108** quotes an internal Energy Transfer email

---

[2] In the interests of judicial economy, Defendants have taken specific examples from among the large group of transcripts included with this Motion. Exhibits 102, 103, 105, 107, 111, 112, 113, 122, 124, and 125 are also excerpts of transcripts in this case that contain similar information to those described. Each individual transcript is cited *infra* in the Argument of this Memorandum of Law.

5

thread regarding "ME2 Talking Points" and its attachments, which contain information about then-ongoing negotiations with customers, as well as target dates for various construction and operational activities. Ex. 108 at 183:22–186–21. **Exhibit 109** contains testimony identifying the dates Energy Transfer signed contracts with several shippers, and lists the names of those shippers. Ex. 109 at 74:6–76:1. **Exhibit 110** includes testimony regarding the construction of ME2, ME2/ME2X Flash Reports, an internal talking points document relating to inadvertent returns, and internal materials prepared for earnings calls and investor conferences. Ex. 110 at 78:2–82:23, 115:3–116:5, 119:2–121:8, 151:11–154:23. **Exhibit 114** includes testimony regarding the structure of long-term contracts with shippers on ME2, the process for updating shippers regarding ME2 construction, the total contracted volume commitments for ME2, the average daily volumes transported on ME2 during Q1 2019, and construction strategies the Company considered for ME2X. *Id.* at 192:16–194:11, 195:15–196:24.

9. **Exhibit 117** is an excerpt of the report of Plaintiffs' expert Edward R. Ziegler, which discusses, cites, and quotes from documents designated "Confidential" and "Highly Confidential" pursuant to the Protective Order. For example, this excerpt discusses the total contracted volume commitments for ME2 and the average daily volumes transported on ME2 during Q1 2019, which is commercially sensitive information. *See* Ex. 117 ¶¶ 182–183.

10. **Exhibit 119** is an excerpt of the expert report of Patrick E. Gallagher, dated November 10, 2023, which contains material designated "Confidential" and "Highly Confidential" pursuant to the Protective Order. For example, Mr. Gallagher's report quotes repeatedly a geotechnical engineering firm's report used internally by Energy Transfer personnel responsible for constructing the Revolution pipeline, including detailed discussions of "Scan Line" methodologies for analyzing landslide risks at specific points—marked by geographic coordinates—along the proposed route of the pipeline. Ex. 119 at 6, 9–10. It also includes details regarding an engineering plan for a specific

site along the pipeline route, including the location of the pipeline trench, the pipeline itself, and various water resources including streams and wetlands. *Id.* at 12.

11. **Exhibit 121** is an excerpt of the Amended Expert Report of Justin Clapper, dated December 11, 2023, which contains material designated "Confidential" and "Highly Confidential" pursuant to the Protective Order. This excerpt discusses Mr. Clapper's expert opinions about pipeline capacity, throughput volume, and pipeline revenue. *See* Ex. 121 ¶¶ 15–33. The excerpt also includes quotations from the report of Plaintiffs' expert Edward R. Ziegler, which contains material that was designated as "Confidential" and "Highly Confidential" pursuant to the Protective Order in this case. *See id.* ¶ 14.

12. **Exhibit 127** is an excerpt of the Amended Expert Report of Timothy Bechtel, PhD, dated January 16, 2024, which contains material designated "Confidential" and "Highly Confidential" pursuant to the Protective Order. This excerpt includes Dr. Bechtel's analysis of documents designated "Confidential" and "Highly Confidential" that relate to Sunoco's planning and construction of ME2, as well as Sunoco's management of specific HDD sites on the pipeline. Ex. 127 at 8–10, 13–14, 17–18. It also includes quotations from, and analysis of, the reports of Plaintiffs' experts Edward R. Ziegler and Mark Gallagher, both of which contain material that was designated as "Confidential" and "Highly Confidential." *Id.* at 8–10, 13, 17.

## ARGUMENT

### A. General Standard for Placing Filings Under Seal

In the Third Circuit, "there is a presumptive right of public access to pretrial motions of a nondiscovery nature … and the material filed in connection therewith." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993). Nonetheless, this "right of access … is not absolute." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986). "Documents containing trade secrets or other confidential business information may be

7

protected from disclosure." *Leucadia*, 998 F.2d at 166. "To overcome the common law presumption" in favor of public access the movant must "demonstrate[e] that the material is the kind of information that courts will protect" under seal and "that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avco Corp. v. Turner*, 2021 WL 3487321, at *1 (E.D. Pa. Aug. 9, 2021) (citing *In re Avandia Mktg.*, 924 F.3d at 672).

"[D]ocuments filed in connection with a motion for summary judgment are judicial records," and the common law standard applies. *In re Avandia Mktg.*, 924 F.3d at 672. Movants may "meet the burden of [filing] the judicial record under seal" where "disclosure of business information" would "harm the litigant's competitive standing." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991). A court must perform a "document-by-document review" to confirm whether the motion to seal may be granted in whole, granted in part, or denied. *In re Avandia Mktg.*, 924 F.3d at 673.

**B.     Defendants' Confidential Exhibits Contain Confidential Business Information, Warranting Sealing**

Exhibits 22, 24, 51, 58, 72, 73, 94, 102, 103, 105, 107, 108, 109, 110, 111, 112, 113, 114, 117, 119, 121, 122, 124, 125, 127 contain (or reference) sensitive commercial information—in particular, names of customers, customers' contracted NGL shipping volumes, adjusted EBITDA figures for Energy Transfer's pipeline assets, construction completion projections, details on how Energy Transfer conducts its business and constructs pipelines, and other sensitive commercial and security information. "Trade secrets or other confidential research, development, or commercial information are the type of information that courts will protect." *Avco Corp.*, 2021 WL 3487321, at *1. Moreover, disclosure of these facts would harm Energy Transfer's "competitive standing" by giving competitors insight into Energy Transfer's customer contracts, pricing, and business strategy. *See Republic of Philippines*, 949 F.2d at 663. Courts in this district routinely shield similar confidential business information from disclosure, including on motions for summary judgment. *See,*

8

*e.g.*, *Domus BWW Funding, LLC v. Arch Ins. Co.*, 2023 WL 9103616, at *1 (E.D. Pa. July 21, 2023) (granting motion to seal materials in connection with summary judgment motion); *Avco Corp.*, 2021 WL 3487321, at *1 (same); *Three Bros. Supermarket Inc. v. United States*, 2020 WL 5749942 (E.D. Pa. Sept. 25, 2020) (same); *Ebert v. C.R. Bard, Inc.*, 2020 WL 429771, at *2–3 (E.D. Pa. Jan. 28, 2020) (same).

The midstream sector—and the oil and gas industry as a whole—is a competitive, price-and-volume-sensitive business. It is well-established that courts must shield "comparator information, including … sales records, and inventory data" from disclosure because competitors can use that information "to gain a present competitive advantage." *Three Bros. Supermarket Inc. v. United States*, 2020 WL 5749942, at *5 (E.D. Pa. Sept. 25, 2020) (granting motion to seal for materials included in the parties' summary judgment filings); *Ebert v. C.R. Bard, Inc.*, 2020 WL 429771, at *2 (E.D. Pa. Jan. 28, 2020) (same). The contracted volumes for ME2 shippers show sales of Energy Transfer's pipeline capacity, and thus reveal specifically detailed information going to the core of the company's business strategy. *See* Ex. 73; Ex. 114. These are some of the reasons why Energy Transfer signs non-disclosure agreements with its shipping customers as part of its contracts. Documents "contain[ing] highly confidential information concerning: (1) the names of customers that purchase the [movant's] product; … [and] (3) the quantity of the [movant's] product sold to each customer" should be sealed because "disclosure would work a clearly defined and serious injury to the party seeking closure and it is the kind of information that courts will protect." *Amgen Inc. v. Amneal Pharms. LLC*, 2021 WL 4843959, at *2 (D. Del. Oct. 18, 2021) (citing *In re Avandia Mktg.*, 924 F.3d at 672). The names of Energy Transfer's customers or quantities of products sold to customers are shown in Exhibits 58, 73, 107, 109, and 114.

Pipeline builders and operators like Energy Transfer use the most advanced construction methods and technologies available to maintain their "competitive standing." *Republic of*

9

*Philippines*, 949 F.2d at 663 (citation omitted).  Documents showing specific "engineering" details and construction methods should also be protected on the grounds that they could allow competitors a "shortcut" to developing these technologies and processes.  *Avco Corp.*, 2021 WL 3487321, at *3.  The engineering drawings, engineering reports, construction methods, and construction timelines included in many of Defendants' Confidential Exhibits are the type of proprietary information the common law standard is intended to protect.  *See id.*; *see also* Exs. 22, 51, 112, 113, 117, 119, 122, 124, 125, 127.

Exhibits that would reveal "confidential methods of doing business" also are protected. *Domus BWW Funding, LLC v. Arch Ins. Co.*, 2023 WL 9103616, at *1 (E.D. Pa. July 21, 2023) (granting a motion to seal an exhibit filed with plaintiffs' motion to partial summary judgment).  For example, "financial information" such as "loan amounts, calculations, and banking information" is shielded from public disclosure.  *Id.*  The same is true for "future financial and budget projections, future strategic plans and other business information" like the EBITDA projections, construction timelines, NGL tank information, pipeline construction details, and contracted shipper volumes included in Defendants' Confidential Exhibits.  *See Fed. Trade Comm'n v. Thomas Jefferson Univ.*, 2020 WL 5519353, at *1 (E.D. Pa. Sept. 14, 2020); *see also* Exs. 22, 24, 51, 58, 72, 73, 102, 105, 108, 110, 121.  Although some of these figures relate to prior periods, "it is terribly difficult to establish, on any principled basis, temporal boundaries governing the protection to be accorded [such] information."  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981).  "In the hands of an able and shrewd competitor," even "old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses."  *Id.* at 891–92.  The number of barrels per day assigned to each contracted shipper, the name of a shipper, or specific available tank storage could allow a competitor to extrapolate other information about Energy Transfer's current business, causing harm to Energy Transfer.  *See, e.g.*, Exs. 24, 73, 107.

That is why Energy Transfer protects these types of information in the normal course of business, including by signing non-disclosure agreements with its shipping customers.

In addition to providing detailed information about Energy Transfer's business model and construction process, several of Defendants' Confidential Exhibits contain sensitive location information, like specific construction locations, the location of the pipeline itself, and details about non-party landowners in the area. *See, e.g.*, Ex. 22 at ET-ACERS-00639121; Exs. 94, 103, 111, 124. "Because motions to seal material so commonly occur in commercial and corporate litigation, the vocabulary through which courts describe the harm often references trade secrets and proprietary business practices. But harms sufficiently specific and serious might also be demonstrated in non-business litigation contexts, in which compelling privacy, safety, health or similar interests are at stake." *Three Bros. Supermarket Inc.*, 2020 WL 5749942, at *5 (quoting *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782*, 2020 WL 2949742, at *11 n.3 (D. Del. Mar. 25, 2020)). These materials should also remain sealed to avoid publishing a detailed map of *every* HDD site on an entire segment of ME2 publicly. Similarly, detailed information about infrastructure assets—all presented in one, convenient location—could present a security risk. *See Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*, 2021 WL 5541928, at *2 (E.D. Pa. June 21, 2021) (sealing an exhibit containing a "detailed networking diagram with information concerning … [a party's] confidential computer systems" where those systems "provide[] energy control and management to cities, municipalities, and power generation operators throughout North America"). Indeed, Pennsylvania law specifically protects the locations of public utility facilities. 35 Pa. Cons. Stat. § 2141.2 (defining "Public Utility" to include a "corporation … [t]ransporting or conveying natural or artificial gas"). Exact locations of HDD sites may allow third parties to infer landowners' "private addresses" and that the landowners live near or on the pipeline. *Three Bros. Supermarket Inc.*, 2020 WL 5749942, at *5; *see* Ex. 22 at ET-ACERS-00639121; Exs. 51, 94, 117, 119, 125, 127.

**C. The Exhibits that Defendants and Plaintiffs Seek to Seal Are Subject to the Protective Order in This Case, Warranting Sealing**

Here, by entering into the Protective Order, the parties agreed that they could suffer serious injury should confidential or highly confidential testimony and exhibits, or references thereto, be exposed to the public. *See* ECF 76 at ¶ 4 (stating that a "Producing Party may designate Discovery Material as 'Confidential'"). The Protective Order sets forth the parties' agreed-upon procedures, and the Court endorsed those procedures when it endorsed the Protective Order. The Protective Order specifically states that "Discovery Material designated as comprising or containing Confidential Information … shall be filed under seal in accordance with Local Civil Rules 5.1.2.[6], 5.1.3, and 5.1.5(a)(2)." ECF 76 at ¶ 16 (party who seeks to file with the Court any "brief or memorandum which reproduces, paraphrases, or discloses Confidential Information … shall file the document, pleading, brief, or memorandum on the ECF system in redacted form until the Court renders a decision on any motion to seal"). For these reasons, Defendants respectfully submit that the Confidential Exhibits and Memorandum, which includes references to the Confidential Exhibits, should be filed under seal, as each exhibit is marked as "Confidential" or "Highly Confidential" pursuant to the Protective Order.

Dated: January 19, 2024						Respectfully submitted,

								GIBSON, DUNN & CRUTCHER LLP


								By: *John T. Cox III*_____
								John T. Cox III*
								2001 Ross Avenue
								Suite 2100
								Dallas, TX 75201
								Tel: (214) 698-3100
								Fax: (214) 571-2900
								tcox@gibsondunn.com

								Brian M. Lutz*
								Colin B. Davis*
								555 Mission Street
								Suite 3000
								San Francisco, CA 94105
								Tel: (415) 393-8200
								Fax: (415) 393-8306
								blutz@gibsondunn.com
								cdavis@gibsondunn.com

								*Admitted Pro Hac Vice*

								MORGAN, LEWIS & BOCKIUS LLP

								Laura H. McNally
								Karen Pieslak Pohlman
								2222 Market Street
								Philadelphia, PA 19103
								Tel: (215) 963-5000
								Fax: (215) 963-5001
								karen.pohlmann@morganlewis.com
								laura.mcnally@morganlewis.com

								*Counsel for Defendants*