**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE, DENVER EMPLOYEES RETIREMENT PLAN, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS NATIONAL PENSION FUND, and IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) Case No. 2:20-cv-00200-GAM |
| Plaintiffs, | ) |
| v. | ) |
| ENERGY TRANSFER LP, KELCY L. WARREN, THOMAS E. LONG, MARSHALL MCCREA, and MATTHEW S. RAMSEY, | ) ) ) |
| Defendants. | ) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, SCHEDULING OF SETTLEMENT HEARING, AND <u>APPROVAL OF SETTLEMENT NOTICE</u>**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. BACKGROUND ......................................................................................................... 3

    A. Procedural History .............................................................................................. 3

    B. Terms of the Proposed Settlement ..................................................................... 7

III. ARGUMENT ............................................................................................................. 7

    A. The Court Should Grant Preliminary Approval of the Proposed Settlement...................... 8

        1. The Proposed Settlement Is Presumptively Fair and Falls within a Range
           of Fairness ................................................................................................ 10

        2. The Proposed Settlement Is Adequate....................................................... 13

        3. The Settlement Treats All Class Members Fairly ...................................... 17

        4. The Settlement Does Not Excessively Compensate Plaintiffs' Counsel ................... 19

    B. The Court Should Set a Settlement Hearing, and Approve the Proposed Settlement
        Notices and Method for Sending Notice to Class Members............................................. 19

    C. The Court Should Not Require a Second Opt-Out Period ................................. 22

    D. The Proposed Settlement Approval Deadlines ................................................. 25

IV. CONCLUSION............................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
2023 WL 4139151 (E.D. Pa. June 22, 2023) .......................................................... 12

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer LP*,
623 F. Supp. 3d 470 (E.D. Pa. Aug. 23, 2022) ........................................................ 7

*Bell Atl. Corp. v. Bolger*
2 F.3d 1304 (3d Cir. 1993) ...................................................................................... 13

*Carson v. Am. Brands*,
450 U.S. 79 (1981) .................................................................................................... 8

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*,
2016 WL 6236892 (W.D. Pa. July 29, 2016) ......................................................... 10

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................... 24

*Du ex rel. Enteromedics, Inc. v. Blackford*,
2018 WL 4691046 (D. Del. Sept. 28, 2018) ..................................................... 11, 13

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...................................................................................... 8

*Evans v. Wal-Mart Stores, Inc.*,
2022 WL 22879278 (C.D. Cal. June 30, 2022) ...................................................... 21

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ............................................................................ *passim*

*Hall v. Accolade, Inc.*,
2019 WL 3996621 (E.D. Pa. Aug. 22, 2019) ........................................................... 9

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................... 17

*In re Flonase Antitrust Litig.*,
2013 WL 12148283 (E.D. Pa. Jan. 14, 2013) ......................................................... 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................ 8

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ........................................................ 13

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) ........................................20, 21

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ..........................................8, 9

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ..............................19

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ..................................13

*In re Suboxone Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ..............................9

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  512 F. Supp. 2d 279 (E.D. Pa. 2007) ..................................16

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .............................13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...........................................8

*In re Wellbutrin SR Antitrust Litig.*,
  2011 WL 13392296 (E.D. Pa. Nov. 21, 2011) ...........................13, 14

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 3369674 (D. Del. July 9, 2018) ..............................14, 17, 21

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ........................................24

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023) .............................19, 21

*McRobie v. Credit Prot. Ass'n*,
  2020 WL 6822970 (E.D. Pa. Nov. 20, 2020) ............................8, 11, 12

*Murphy v. Hundreds Is Huge, Inc.*,
  638 F. Supp. 3d 486 (W.D. Pa. 2022) ................................12, 14

*Nesbeth v. Icon Clinical Rsch. LLC*,
  2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) ..........................22

*Rivera v. Lebanon Sch. Dist.*,
  2013 WL 4498817 (M.D. Pa. Aug. 20, 2013) ...........................13

*Serrano v. Sterling Testing Sys., Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010) .................................9

*Tower v. Transportes Aereos Portugueses, S.A.*,
   2025 WL 1171829 (D.N.J. Apr. 22, 2025) ..............................................................21

*Udeen v. Subaru of Am., Inc.*,
   2019 WL 4894568 (D.N.J. Oct. 4, 2019) ...............................................................21

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J.) ................................................................................................8

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
   2020 WL 5211035 (E.D. Pa. Sept. 1, 2020) ..........................................................23

**Statutes**

15 U.S.C. § 78j ..............................................................................................................3

15 U.S.C. § 78t ..............................................................................................................3

15 U.S.C. § 78u-4 ........................................................................................................18

28 U.S.C. § 1715 ..........................................................................................................25

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

**Regulations**

17 C.F.R. § 240.10b-5 ....................................................................................................3

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Allegheny County Employees' Retirement System, Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge, Denver Employees Retirement Plan, International Association of Machinists and Aerospace Workers National Pension Fund, and Iowa Public Employees' Retirement System (collectively, "Lead Plaintiffs"), on behalf of themselves and the Class, with concurrence of Defendants, seek preliminary approval of a settlement that provides a non-reversionary fund of $15,000,000 ("Settlement Amount") for the benefit of the Class.[1] Lead Plaintiffs further seek, in accordance with the Stipulation, approval of the form, content, and manner of distribution of the proposed Settlement Notices and Proof of Claim and Release Form, as reflected in the Parties' proposed Preliminary Approval Order.

Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a favorable result for the Class considering the benefits of the significant cash settlement and the serious risks faced in continuing the litigation. First and foremost, during the course of the litigation, the Court's decisions, including its decision at summary judgment, substantially narrowed the claims that could be asserted by Lead Plaintiffs, including by dismissing certain alleged misstatements and certain of the alleged corrective disclosures. Following the Court's summary judgment decision, only one of the alleged corrective disclosures remained, the disclosures made on an August 9, 2018 Energy Transfer earnings call and in analyst reports the following day concerning the timing and capacity of the ME2 pipeline using parts of an older, 12" pipe. As a result of this decision, the potential damages that could be recovered for the Class were

---

[1] Capitalized terms not otherwise defined in this memorandum, including the term "Defendants" and "Parties," have the same meaning as those defined in the Stipulation and Agreement of Settlement ("Stipulation"). Defendants consist of Energy Transfer, LP ("Energy Transfer" or the "Company") and Kelcy L. Warren, Thomas E. Long, Marshall McCrea, and Matthew S. Ramsey (collectively, the "Individual Defendants"). Unless otherwise indicated, all emphasis is added, and all internal citations, quotation designations and footnotes are omitted.

dramatically reduced. Lead Plaintiffs' expert has estimated that the maximum possible damages that could be recovered at trial on the sustained claims ranged from $40 million to $80 million, depending on which parts of the remaining Class Period the jury sustained.

Lead Plaintiffs also faced substantial risks in establishing all of the elements of their claims remaining for trial. For example, Defendants would seek to present evidence at trial that the media and securities analysts reported in the summer of 2018 on Energy Transfer's planned use of the smaller, 12" pipe as part of the ME2 pipeline, ***before*** the remaining corrective disclosure about use of that pipe arose in August of 2018. Defendants would also present evidence that, even using the 12" pipe, Energy Transfer would have had sufficient capacity to carry all of the then-contracted ME2 volume, such that, Defendants would argue, use of the 12" pipe would have zero negative impact on Energy Transfer's revenue. Defendants would have also presented to the jury evidence that the market did not experience a statistically significant decline in the price of Energy Transfer common units following the August 9-10, 2018 news about the delayed in-service timeline and reduced capacity for the use of the 12" pipe until August 13, 2018. Defendants would have asserted that utilizing a three-day window to find a statistically significant reaction to new information was a novel approach by Lead Plaintiffs' loss causation and damages expert that should be rejected. If the jury had accepted any of these arguments, the Class would have obtained zero recovery.

In light of these substantial risks, it is possible that a jury could conclude that the Class is not entitled to any recovery in the case, whether based on materiality, loss causation or failure to prove damages. Considering these barriers to recovery, as well as the costs and delays of continued litigation, Lead Plaintiffs and Lead Counsel believe the $15 million Settlement is a very favorable result for the Class.

## II. BACKGROUND

### A. Procedural History

On November 20, 2019, and January 10, 2020, investors filed two federal securities class actions in two U.S. District Courts alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Following dismissal of one of those actions, the Court issued an Order on February 19, 2020, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), appointing the Lead Plaintiffs. ECF 16 & 17. In the same Order, the Court approved Lead Plaintiffs' selection of Barrack, Rodos & Bacine ("Barrack") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the Class. *Id.*

On June 15, 2020, Lead Plaintiffs filed the Operative Class Action Complaint for Violation of the Federal Securities Laws ("Complaint"). ECF 43. The Complaint alleged that during the period from February 25, 2017, through and including December 3, 2019, Defendants made materially false or misleading representations and omissions regarding Energy Transfer's construction of a 350-mile set of pipeline projects across the Commonwealth of Pennsylvania, consisting of the Mariner East 2 ("ME2"), Mariner East 2X ("ME2X," and together with ME2, the "Mariner East 2 Pipelines"), and Revolution pipelines. *Id.* The alleged false and misleading statements and omissions concerned: (1) the Mariner East 2 Pipelines' and Revolution's completion status and timelines, and the ME2's stated initial capacity; (2) Energy Transfer's commitment to safety and regulatory compliance; and (3) Energy Transfer's compliance with its Code of Business Conduct and Ethics. *Id.* The Complaint asserted (i) claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, against all Defendants; and (ii) claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants. *Id.*

Defendants moved to dismiss the Complaint on August 14, 2020. ECF 44. On April 6, 2021, the Court granted in part and denied in part Defendants' motion to dismiss. ECF 64 & 65. Defendants filed an Answer to the Complaint on June 11, 2021. ECF 69.

On September 17, 2021, Lead Plaintiffs filed a motion for class certification. ECF 79. After the motion was fully briefed, the Court issued an Opinion and Order on August 23, 2022, granting in part and denying in part Lead Plaintiffs' motion for class certification (the "Class Certification Order"). ECF 113 & 114. The Class Certification Order certified a Class of all persons who purchased or otherwise acquired common units of Energy Transfer from February 25, 2017, through November 11, 2019, inclusive; appointed Lead Plaintiffs as class representatives; and appointed Lead Counsel as class counsel. ECF 114. On October 24, 2022, the U.S. Court of Appeals for the Third Circuit denied Defendants' petition for leave to appeal the Class Certification Order. ECF 122. On February 9, 2024, Lead Plaintiffs filed an unopposed motion for Court approval of the Parties' agreed form and manner of providing notice to the Class, and on April 26, 2024, the Court entered an Order granting Lead Plaintiffs' unopposed motion to approve the Class Notice (the "Class Notice Order"). ECF 186 & 206. The Class Notice Order appointed JND Legal Administration ("JND") to supervise and administer the notice procedure. ECF 206.

Pursuant to the Class Notice Order, the Notice of Pendency of Class Action ("Class Notice") provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the deadline and procedures for doing so. ECF 206 at Ex. 1. The Class Notice informed Class Members that they may not have the further opportunity to exclude themselves from the Class at the time of any settlement or judgment. *Id.* The Class Notice informed Class Members that if they chose to remain a member of the Class, they would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable."

*Id.* The Class Notice also informed Class Members that Defendants had moved for summary judgment and Plaintiffs had moved for partial summary judgment, and that the briefing on both motions was completed on March 29, 2024. *Id.* Over 735,000 Class Notices were mailed to potential Class Members and nominees. ECF 214 ¶ 9. Additionally, a summary Class Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*. *Id.* ¶ 10.

Discovery in the Action commenced in June 2021 and concluded in December 2023.[2] Pursuant to detailed document requests and substantial negotiations, Defendants and third parties produced more than 1.5 million pages of documents to Lead Plaintiffs. Lead Plaintiffs also produced more than 52,000 pages of documents to Defendants. In addition, the Parties conducted depositions of 31 fact witnesses, including the Individual Defendants and other senior Energy Transfer executives, and 9 expert witnesses, each of whom submitted an expert report.

On January 19, 2024, Defendants moved for summary judgment and Lead Plaintiffs moved for partial summary judgment. ECF 178 & 181. The briefing on both motions was completed on March 29, 2024. ECF 200 & 201. On August 8, 2024, the Court issued a decision granting the motions in part and denying them in part. ECF 215-17. The Court found that there were disputes of material fact as to whether Defendants' statements regarding the in-service date for ME2, as well as its capacity, were false or misleading, made with scienter, and caused Lead Plaintiffs and the Class to suffer damages. ECF 215. The Court also found as a matter of law that certain statements Energy Transfer made from February to June 2018 concerning ME2's initial capacity were false or misleading, that the statements were attributable to Individual Defendants Long, McCrea, and Ramsey, and that those Individual Defendants "knew the falsity or misleadingness

---

[2] By the close of discovery, the Court had dismissed or Lead Plaintiffs had decided not to pursue all statements except certain statements concerning (i) ME2's in-service timing and capacity; and (ii) Energy Transfer's commitment to safety and regulatory compliance.

of the initial capacity by [] February 2018[.]" *Id.* However, the Court also found that Lead Plaintiffs could not show any losses caused by Defendants' statements concerning Energy Transfer's commitment to safety and regulatory compliance, and on that basis granted summary judgment for Defendants on all corrective disclosures except for the August 2018 alleged corrective disclosure and all statements except those concerning ME2's in-service timing and capacity made on or before August 9, 2018. *Id.*

On February 14, 2025, the Court entered an Order scheduling the trial of Lead Plaintiffs' remaining claims to begin on May 28, 2025, and setting the schedule for pre-trial submissions. ECF 223. Pursuant to the Court-ordered schedule, on March 6, 2025, the Parties exchanged their exhibit lists, the names of witnesses they planned to call at trial, and deposition designations. On March 25, 2025, Lead Plaintiffs filed a motion to bifurcate the upcoming trial, which would lead to resolving Class-wide issues in the first phase of trial before turning to any Lead Plaintiffs-specific issues in a second phase. ECF 228. On March 27, 2025, Defendants filed a motion to empanel 12 jurors in the upcoming trial. ECF 255. The Parties filed their opposition to those respective motions on April 16, 2025. ECF 269 & 270. Additionally, on March 27, 2025, Defendants filed two *Daubert* motions and six motions *in limine*, ECF 242, 244, 246-49, 251, 253-54, and Lead Plaintiffs also filed three *Daubert* motions and four motions *in limine*, ECF 235-40, 245 & 250. On April 10, 2025, Lead Plaintiffs provided Defendants with their proposed jury instructions and verdict form.

On November 21, 2024, the Parties attended a mediation session with Robert A. Meyer of JAMS after having earlier exchanged and sent to the mediator the Parties' opening and reply mediation submissions. The mediation session ended without an agreement being reached, and settlement negotiations continued thereafter, with some further discussions facilitated by the

mediator. Months later, after the exchange of several offers and counter offers, the Parties agreed

to settle the Action for $15 million on April 23, 2025. The Parties entered into the final binding

Stipulation on June 12, 2025.

### B.  Terms of the Proposed Settlement

The Stipulation is attached as Exhibit 1 to the accompanying Motion. The proposed

Stipulation is intended to resolve all Class Members' claims arising out of the misstatements and

omissions, and violations of law alleged in the Complaint. In exchange for a release of liability,

Defendants have agreed to establish a common settlement cash fund of $15,000,000. Ex. 1, at

¶¶ 1(uu), 3-13. After payment of the costs to administer the Settlement Fund, taxes, attorneys' fees

and Litigation Expenses, including any awards granted to Lead Plaintiffs pursuant to the PSLRA,

the Settlement Administrator will distribute on a *pro rata* basis the Net Settlement Fund to Class

Members who submit valid Proofs of Claims. If the Settlement is approved, no portion of the

Settlement Fund will be returned to Defendants.

### III.  ARGUMENT

Under Federal Rule of Civil Procedure 23(e), Court approval of a proposed class action

settlement is a two-step process. *First*, the Court determines whether to grant preliminary approval

of the settlement and allow notice of the settlement to be disseminated to class members. *See* Fed.

R. Civ. P. 23(e)(1). *Second*, following notice to the class, the Court determines whether to approve

the settlement at a final approval hearing. *See* Fed. R. Civ. P. 23(e)(2).

There are two prerequisites for preliminary approval: Rule 23(e)(1) provides that a court

should grant preliminary approval of a proposed settlement based on a finding that it "will likely

be able" to (i) finally approve the Settlement under Rule 23(e)(2), and (ii) certify the class for

purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). The Court has already certified this

action as a class action. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp.

3d 470, 512 (E.D. Pa. Aug. 23, 2022). "One of the two prerequisites for preliminary approval and notice to be sent to the class members about the proposed settlement has therefore been satisfied." *McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *3 (E.D. Pa. Nov. 20, 2020) (Leeson, J.). As detailed below, the Rule 23(e)(2) factors favor settlement, and the proposed Settlement merits preliminary approval.

### A.  The Court Should Grant Preliminary Approval of the Proposed Settlement

Under Federal Rule of Civil Procedure 23(e), the Court may approve a class action settlement upon a judicial finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) ("*NFL Players*"). There is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Trucks*") ("The law favors settlement[.]"). The presumption in favor of settlement is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595 (quoting *GMC Trucks*, 55 F.3d at 784).

The ultimate determination of whether a proposed class action settlement warrants approval lies within the Court's discretion. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement…. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining the adequacy of a proposed settlement, a court should ascertain

whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010) (Pratter, J.). However, a proposed class action settlement is considered presumptively fair where, as here, the parties have engaged in arm's length negotiations through experienced counsel after sufficient discovery. *See, e.g.*, *NFL Players*, 821 F.3d at 436.

Federal Rule of Civil Procedure 23(e)(2) directs the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, in *Girsh*, "the Third Circuit identified certain factors which district courts may employ in informing their discretion before granting final approval to the class action settlement." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2024 WL 815503, at *4 (E.D. Pa. Feb. 27, 2024) (Goldberg, J.) ("*In re Suboxone Antitrust Litig.*"). These factors include:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also Hall v. Accolade, Inc.*, 2019 WL 3996621, at *2 n.1 (E.D. Pa. Aug. 23, 2019) (Pratter, J.) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the discussion in *Girsh* substantially overlaps with the factors identified in Rule 23.").

As shown below, the proposed Settlement is a favorable result for the Class in light of the risks, costs and delays attendant to continued litigation, is presumptively fair, and the Rule 23(e)/*Girsh* factors weigh strongly in favor of preliminary approval of the Settlement. Accordingly, the Court should enter the [Proposed] Preliminary Approval Order.

### 1. The Proposed Settlement Is Presumptively Fair and Falls within a Range of Fairness

The first two factors under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *See Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, 2016 WL 6236892, at *2 (W.D. Pa. July 29, 2016) (discussing the "factors creating a presumption of fairness," which include "whether[] the settlement negotiations occurred at arm's length; there was sufficient discovery; the proponents of litigation are experienced in similar litigation; and whether only a small fraction of the class objected").

Lead Plaintiffs and their counsel, firms that are highly experienced in prosecuting complex securities class actions and have done so together in several notable cases leading to significant recoveries on behalf of investor classes, have adequately represented the members of the Class, as required by Rule 23(e)(2)(A). Lead Plaintiffs understand the fiduciary obligations owed to the Class and have vigorously prosecuted this action on behalf of themselves and all other Class Members. *See* ECF 79-3, 79-4, 79-5, 79-6 & 79-7 (Lead Plaintiffs' Declarations in support of motion for class certification). Over the past five years, Lead Plaintiffs have been actively overseeing and involved in this litigation by, among other things, receiving and reviewing periodic updates and other correspondence from counsel, participating in discussions with counsel regarding the litigation, reviewing drafts of the Complaint and various pleadings, conducting

searches for materials responsive to discovery requests, presenting witnesses for depositions, and authorizing the filing of certain motions. ECF 79-3 ¶ 4, 79-4 ¶ 5, 79-5 ¶ 4, 79-6 ¶ 5 & 79-7 ¶ 4.

Lead Counsel have also "spent significant time, effort, and resources on the case, demonstrating their commitment to the class." *Du ex rel. Enteromedics, Inc. v. Blackford*, 2018 WL 4691046, at *5 (D. Del. Sept. 28, 2018). Barrack and BLB&G each have decades of experience handling securities class action litigation, have demonstrated a sound knowledge of the legal and factual issues pertaining to the challenged statements and omissions in this matter, successfully steered the Action past Defendants' motion to dismiss (albeit with certain claims having been dismissed), undertook extensive discovery, achieved class certification and partial summary judgment, and mediated and negotiated the proposed Settlement. *See McRobie*, 2020 WL 6822970, at *4 (finding class representative and class counsel adequately represented the class where, since being granted class certification, they "continued to vigorously prosecute her and the class's claims, up through summary judgment, on which they were successful"). In addition to their individual case achievements, these firms have worked together as co-lead counsel in achieving the largest recovery in a securities class action in this Circuit, in *Cendant* ($3.32 billion), as well as significant recoveries for investors in *WorldCom* (S.D.N.Y., $6.19 billion), *McKesson* (N.D. Cal., $1.05 billion), *DaimlerChrysler* (D. Del., $300 million), *Mills Corporation* (E.D. Va., $202.75 million), *DFC Global* (E.D. Pa., $30 million), and, most recently, *Grand Canyon* (D. Del., $25.5 million), among others. *See* ECF 4-1 at 16-17. Lead Counsel and Lead Plaintiffs have adequately represented the Class.

Rule 23(e)(2)(B) also looks at whether the Settlement was negotiated at arm's length. The Settlement of this Action was reached after years of litigation and months of negotiations between highly experienced securities class action counsel. At the time the Settlement was reached, fact

11

discovery in the case had concluded, the Parties had acquired the reports of several experts on each side and conducted depositions of the same, and the Court had already certified the case as a class action and decided the Parties' cross-motions for summary judgment. The Parties devoted significant time and resources to developing the case as well as negotiating its resolution, including by engaging a private mediator and attending a mediation session. Although the mediation did not immediately result in settlement, the Parties continued negotiations thereafter and a mutually agreeable settlement was reached. Accordingly, this Settlement was negotiated at arm's length. *See Ahrendsen v. Prudent Fiduciary Servs., LLC*, 2023 WL 4139151, at *4 (E.D. Pa. June 22, 2023) (Bartle, J.) (finding settlement agreement was negotiated at arm's length where counsel were "nationally recognized for their substantial class action practices," the settlement "was reached after parties fully briefed and plaintiffs received a favorable ruling on defendants' motion to dismiss," and the parties "engaged in lengthy settlement negotiations that spanned six weeks"); *Murphy v. Hundreds Is Huge, Inc.*, 638 F. Supp. 3d 486, 503 (W.D. Pa. 2022) (finding settlement "resulted from arm's length negotiations between highly experienced and capable counsel after significant investigation" where the parties devoted months to discussing resolution of the case and "the principle lawyers involved in the settlement negotiations [were] well known for their effective representation of their clients, and ha[d] many years of experience in the prosecution, defense, and resolution of complex securities actions"); *McRobie*, 2020 WL 6822970, at *4 (concluding settlement agreement was negotiated at arm's length as negotiations were "conducted by counsel who by all accounts had equal bargaining power," the "action was litigated aggressively and over an extended period of time," counsel "on both sides [were] experienced and highly regarded attorneys," and the settlement agreement "was the result of, at least in large part, an extended settlement conference overseen by an experienced Magistrate Judge on this Court").

The stage of the proceedings likewise supports preliminary approval of the Settlement. "Settlements reached after discovery 'are more likely to reflect the true value of the claim and be fair.'" *In re Wellbutrin SR Antitrust Litig.*, 2011 WL 13392296, at *2 (E.D. Pa. Nov. 21, 2011) (Stengel, J.) (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)). At the time of Settlement, fact witness discovery had concluded and the Parties were actively preparing for trial. Indeed, the Parties had already exchanged initial witness lists, exhibit lists, and deposition designations and filed numerous pretrial motions. The Parties knew the testimony that the important witnesses would cover, and what hurdles they would need to overcome at trial. "Furthermore, the Court had entered its decision on the parties' respective motions for summary judgment," and thus, the "parties had an adequate appreciation of the merits of the case before entering settlement negotiations." *Rivera v. Lebanon Sch. Dist.*, 2013 WL 4498817, at *2 (M.D. Pa. Aug. 20, 2013). All of this, combined with counsel's extensive securities class action litigation experience, was more than sufficient to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Du*, 2018 WL 4691046, at *6; *see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *7 (E.D. Pa. Oct. 28, 2022). As such, Lead Plaintiffs and their counsel believe that the Settlement is in the best interests of the Class and their conclusion is to be afforded considerable weight. *See In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (Jones, II, J.) ("[W]hen the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement.'"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight.").

### 2.    The Proposed Settlement Is Adequate

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could

inevitably impose. Fed. R. Civ. P. 23(e)(2)(C)(i); *Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on the risks). These factors likewise weigh in favor of preliminary approval of the Settlement.

This case, which was filed at the beginning of 2020, faces the same risks inherent in any federal litigation, compounded by the length of time that trial and any appeals would consume. *See In re Wilmington Tr. Sec. Litig.*, 2018 WL 3369674, at *5 (D. Del. July 10, 2018) (finding "the settlement agreements facially provide a reasonable and substantial benefit to the class, especially in light of the complexity and likely duration of the case, the expense of bringing it to trial, and the risks to both sides that would be present at trial"). "In complex cases, [t]he risks surrounding a trial on the merits are always considerable." *Murphy*, 638 F. Supp. 3d at 507-08 (alteration in original). "Although the case was nearing trial at the time of settlement," the Settlement "nonetheless saved substantial resources," including the time and expense of resolving the 17 pretrial motions filed by the Parties that had not yet been fully briefed, "final preparations for trial" which "could have lasted several weeks," post-trial motions, and potential appeals. *See In re Wellbutrin SR Antitrust Litig.*, 2011 WL 13392296, at *2. "Collectively, these matters would have required substantial additional time and expense for the Court, the parties, and counsel[.]" *Id.*

The negotiation of a common cash fund requiring Defendants to pay or cause to be paid $15 million is fair, reasonable, and adequate considering the risks of continued litigation, which would require Lead Plaintiffs to prove their remaining claims based on the alleged misrepresentations and omissions, and further prove loss causation attributable to the lone remaining alleged corrective disclosure, as well as damages issues at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). Defendants have been consistently zealous in their opposition to Lead Plaintiffs' claims throughout

each stage of the litigation, including on their motion to dismiss, Lead Plaintiffs' class certification motion, the Parties' cross-motions for summary judgment, and Lead Plaintiffs' motion to bifurcate the trial. Indeed, Defendants succeeded in significantly narrowing the potential damages that could have been sought by the Class at trial when the Court partially granted their motion for summary judgment and reduced the case to the August 2018 corrective disclosure. As a result of this decision, the potential damages that could be recovered for the Class were dramatically reduced. Lead Plaintiffs' expert had estimated that the maximum possible damages that could be recovered at trial on the sustained claims ranged from $80 million—if the jury found for Lead Plaintiffs on all remaining claims—to $40 million, if the jury found for Lead Plaintiffs only on the capacity statements that the Court had found to be false. Thus, the $15 million Settlement represents a substantial portion of any potential trial recovery amount.

Moreover, a recovery in that range at trial was far from certain. The same degree of zealous advocacy by Defendants could be expected at trial and on any appeals should the Settlement not be approved. Lead Plaintiffs would still need to prove to a jury that the alleged misstatements about the capacity and timeline of the ME2 pipeline were material to investors and had impacted the price of Energy Transfer's common units. For example, Defendants have argued that Lead Plaintiffs could not show any damages resulting from the alleged misstatements about ME2's capacity because even if the capacity was not as large as originally claimed, it did not negatively impact the Company's revenue because the smaller pipe supposedly had sufficient capacity to accommodate all of the shipping volume that Defendants had then contracted, and Defendants would have likely maintained this position at trial.

Defendants would also challenge whether the single alleged corrective disclosure that the Court sustained—disclosures as to the ME2 pipeline's capacity and timeline that were made in an

15

August 9, 2018 earnings call and analyst reports the following day—had actually caused the Monday, August 13, 2018 stock price decline at issue. Defendants were expected to continue to argue that Energy Transfer's planned use of the smaller-diameter pipe was previously disclosed by the media and securities analysts during the summer of 2018, that the stock price did not decline in response to the prior reports, and therefore the market's reaction on August 13, 2018 could not have been related to that disclosure.

Defendants would also have argued that there were no recoverable damages because it took the price of Energy Transfer's common units more than one day to fall in a statistically significant manner in response to the alleged corrective disclosure about the ME2 pipeline in August 2018. Defendants had presented the opinion of an expert in financial economics who opined that this was too attenuated a response to constitute recoverable damages. At trial, the Parties would have presented competing expert testimony on this subject. "Compelled to choose between experts, it is far from certain that a jury would have found for the class[.]" *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 285 (E.D. Pa. 2007) (Bartle, III, J.).

Thus, there is certainly no guarantee that Lead Plaintiffs would succeed at trial. Indeed, there were numerous pending pre-trial motions that could have significantly impacted the trial proceedings, including the Parties' motions *in limine* and *Daubert* motions, as well as Lead Plaintiffs' motion to bifurcate the trial into two phases—a first phase dedicated to class-wide issues and a second phase, if necessary, dedicated to plaintiff-specific issues. And as with any case that goes before a jury, there is significant risk. Thus, while Lead Plaintiffs believe their remaining claims were strong, they supported only a small portion of the damages Lead Plaintiffs might have been able to present to a jury had the two other corrective disclosures not been dismissed at the summary judgment phase. Lead Plaintiffs and Lead Counsel also acknowledge the risks to the

ultimate recovery if the case had proceeded to trial and likely appeals. Settlement removes all risk, uncertainty, and delay, and confers immediate monetary benefits to the Class. *See In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 492 (E.D. Pa. 2003) (Brody, J.). Thus, Lead Plaintiffs and their counsel respectfully submit that the Stipulation is reasonable and should be preliminarily approved.

Finally, Rule 23(e)(2)(C) requires the Court to consider the effectiveness of the proposed method for distributing relief, the terms of the proposed attorneys' fees, and the existence of any other "agreement[s]." Fed. R. Civ. P. 23(3)(2)(C)(ii)-(iv). The mechanics and efficacy of the distribution process are straight-forward: in return for the release of any claims challenging Defendants' alleged misrepresentations and omissions, Class Members are entitled to submit a Proof of Claim and Release Form and, thus, participate in the Settlement and receive a cash payment equal to their *pro rata* share of the Net Settlement Amount, which will depend on when each Class Member purchased and/or sold their Energy Transfer common units, subject to a minimum payment of $10. *See Wilmington Tr.*, 2018 WL 3369674, at *5 (granting preliminary approval of settlement using comparable method for distributing relief). Lead Plaintiffs have also identified all agreements made in connection with the Settlement. Ex. 1 ¶ 45 ("All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.").

### 3.    The Settlement Treats All Class Members Fairly

The Settlement treats all Class Members fairly and does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Class. All Class Members will be potentially eligible to receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court. At the final Settlement Hearing, Lead Plaintiffs will ask the Court to

approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice (Exhibit A-2) and was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert. The Plan calculates a "Recognized Loss Amount" for each purchase or acquisition of Energy Transfer common units during the Class Period that is listed in the Claim Form and for which adequate documentation is provided. The Recognized Loss Amount calculated under the Plan will depend on when the Claimant purchased and/or sold their common units, the amount of artificial inflation calculated as existing in the units on the date of purchase and sale, whether the Claimant held their common units through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of their shares when the Claimant purchased or sold them. Under the Plan, the estimated artificial inflation in Energy Transfer units at various periods in the Class Period has been adjusted to reflect the litigation risks presented by the Court's dismissal of certain of the alleged misstatements and alleged corrective disclosures in the Action. For example, while Claimants will be eligible to receive settlement payments for holding their common units over the alleged corrective disclosures that occurred on October 22, 2018 and November 12, 2019 that were dismissed by the Court, the Recognized Loss Amounts under the Plan for those situations will be discounted by 90%. In contrast, the Recognized Loss Amount calculated for Claimants who held their common units over the sustained disclosure in August 2018 will be eligible to receive a Recognized Loss Amount based on the full amount of the decline in artificial inflation associated with that disclosure.

Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will

conduct additional re-distributions until it is no longer cost-effective to do so. At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

### 4. The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The Stipulation provides that Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to this Court for an award of attorneys' fees and litigation expenses before the objection deadline and thus well in advance of the Settlement Hearing. As stated in the proposed Settlement Notice, Lead Counsel will request approval of attorneys' fees not to exceed 25% of the Settlement Fund, and payment of litigation expenses, including the requested PSLRA cost reimbursements to Lead Plaintiffs, to be paid only after the Court has issued such a fee and expense award and approved the Settlement. Ex. A-2 at ¶¶ 5, 56. The Settlement is not conditioned on the Court's approval of these fee and expense requests. Ex. 1 ¶¶ 14-15.

A fee request of up to 25% is well within the norm for awards in common fund cases, since such fee awards "generally range from 19% to 45% of the settlement fund." *McDermid v. Inovio Pharms., Inc*., 2023 WL 227355, at *12 (E.D. Pa. Jan. 18, 2023) (Pratter, J.); *accord In re Ravisent Techs., Inc. Sec. Litig*., 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (Surrick, J.) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."). The Court should also take notice that the fee request has been approved by the duly-appointed Lead Plaintiffs, institutional investors that have supervised and overseen Lead Counsel's litigation of this case.

### B. The Court Should Set a Settlement Hearing, and Approve the Proposed Settlement Notices and Method for Sending Notice to Class Members

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to

19

"direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, because the Class Notice was already extensively disseminated to potential Class Members and to reduce costs to the Class, the Parties have agreed to utilize a Postcard Notice, attached as Exhibit A-1 to the proposed Preliminary Approval Order, in addition to the long-form Notice of (I) Proposed Settlement of Class Action; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Settlement Notice"), attached as Exhibit A-2 to the proposed Preliminary Approval Order, that will be posted on the case website and mailed and/or emailed to Class Members upon request.

The Postcard Notice describes: (i) the nature of the Action; (ii) the Class; (iii) the Settlement and the benefits provided to Class Members; (iv) the deadline to submit a Proof of Claim and Release Form to participate in the Settlement, as well as the deadline to object to the Settlement; (v) the amount of attorneys' fees and litigation expenses requested for reimbursement by Lead Counsel; (vi) the date and time of the Settlement Hearing; and (vii) how to obtain more information about the Settlement. Ex. A-1; *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151-52 (D.N.J. 2013). The more comprehensive Settlement Notice provides this information in greater detail and also: (i) describes the nature of the claims that will be released; (ii) advises that a Class Member may enter an appearance through counsel, if desired; (iii) describes (as did the Class Notice) the binding effect of a judgment on Class Members; (iv) explains how to participate in the Settlement by submitting a Proof of Claim and Release Form and provides the deadline for doing so; (v) states the procedures and deadlines for Class Members to file an objection to any aspect of the proposed Settlement, including the requested approval of the proposed Plan of Allocation and/or Lead Counsel's request for attorneys' fees and Litigation

Expenses; (vi) states the method of calculation for Class Members' recovery from the Settlement in the attached proposed Plan of Allocation; and (vii) provides the date, time, and location of the Settlement Hearing. Ex. A-2; *accord Inovio*, 2023 WL 227355, at *4; *Wilmington Tr.*, 2018 WL 3369674, at *6.

Courts often find postcard notices satisfy the requirements of due process and Federal Rule of Civil Procedure 23. *E.g.*, *Tower v. Transportes Aereos Portugueses, S.A.*, 2025 WL 1171829, at *12 (D.N.J. Apr. 22, 2025); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 151-52; *Evans v. Wal-Mart Stores, Inc.*, 2022 WL 22879278, at *6 (C.D. Cal. June 30, 2022). The Postcard Notice will be mailed and/or emailed to all potential Class Members who were previously mailed a copy of the Class Notice, as well as to the brokers and other nominees contained in JND's broker database. The Settlement Notice, along with the Proof of Claim and Release Form, will also be posted on the case website, and the Summary Settlement Notice will be published in *Investor's Business Daily* and released over the *PR Newswire*, to further apprise potential Class Members and their agents of the proposed Settlement. Such manner of providing notice represents the best way practicable under the circumstances and thus satisfies the requirements of due process and Rule 23. *See Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *7 (D.N.J. Oct. 4, 2019) (approving proposed notice plan, under which the settlement administrator would mail to the last known address of all class members the short-form postcard notice, which would direct class members to the settlement website where they could view the long-form notice, which provided "greater detail" on the settlement, how to submit a claim or file an objection, and the fees and expenses sought by counsel).

Lead Counsel also request that the Court appoint JND as Claims Administrator to provide all notices approved by the Court to Class Members and to assist in administering the Settlement

as provided in the Stipulation. After this case was certified as a class action, the Court entered the Class Notice Order on April 26, 2024, approving dissemination of the Class Notice and appointing JND to supervise and administer the notice procedure. ECF 206. On August 6, 2024, Luiggy Segura, Vice President of Securities Operations at JND, submitted a declaration to the Court describing the efforts undertaken by JND in this case, including but not limited to disseminating the Class Notice to potential Class Members, monitoring the responses received and following up by email or phone as needed, publishing a summary Class Notice in *The Wall Street Journal* and transmitting it over the *PR Newswire*, establishing and maintaining a website for the case, and keeping track of requests for exclusion. ECF 214. In addition to its work in the present Action, JND is a recognized leader in legal administration services for class action settlements. *See* https://www.jndla.com/documents/fact-sheets/jnd-class-action-administration.pdf. JND is the logical choice for Claims Administrator of this Settlement. *Cf. Nesbeth v. ICON Clinical Rsch. LLC*, 2022 WL 22893879, at *6 (E.D. Pa. Mar. 10, 2022) (Diamond, J.) (appointing JND to administer the settlement and disseminate the notice).

### C. The Court Should Not Require a Second Opt-Out Period

In May 2024, JND began the extensive class notice campaign, which disseminated the Class Notice to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion from the Class and the procedures for doing so. *See* ECF 214. JND reported mailing over 735,000 copies of the Class Notice to potential Class Members and nominees. *Id.* ¶ 9. As noted above, JND also published a summary Class Notice in *The Wall Street Journal*, and transmitted the same over the *PR Newswire*, informing Class Members of the pendency of the Action and their right to request exclusion from the Class. *See id.* ¶ 10.

The Class Notice advised recipients that, pursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there is a settlement or judgment in the Action after a trial and appeal. *See* ECF 206 at Ex. 1, ¶ 12. The Class Notice also informed potential Class Members of the then-present status of the case, including that the Parties had filed cross-motions for summary judgment and that briefing had been completed on March 29, 2024. *Id.* ¶ 10. Moreover, the Class Notice and the summary Class Notice made clear that Class Members would be bound by "all past, present and future orders and judgments in the Action, whether favorable or unfavorable" if they failed to exclude themselves from the Class. ECF 206 at Ex. 1, ¶ 12(a), Ex. 2, at 2. In response to JND's notice campaign, two-hundred and fifty-six (256) potential Class Members (as listed on Appendix B to the Stipulation) timely requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so. The deadline for requesting exclusion from the Class was July 16, 2024.

When evaluating a settlement of a class action that was previously certified, Federal Rule of Civil Procedure 23(e)(4) leaves the decision whether to afford class members a new opportunity to request exclusion to the discretion of the Court. *See* Fed. R. Civ. P. 23(e)(4); *Winn-Dixie Stores, Inc. v. E. Mushroom Mkg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020) (Schiller, J.) (quoting Advisory Committee's Notes to 2003 Amendment of former Fed. R. Civ. P. 23(e)(3) ("[T]he decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion."). Courts within the Third Circuit and elsewhere have repeatedly declined to afford class members a second opportunity to opt out when such class members already received extensive notice and ample opportunity to opt out of the class, as they did here, finding due process does not require such a result. *E.g.*, *Winn-Dixie Stores, Inc.*, 2020

WL 5211035, at *13-14 (noting that "[d]ue process does not require a second opt-out period" and rejecting class member's argument that those who did not opt out of the class prior to final approval of an earlier settlement in the case should be given another opportunity to opt out prior to this settlement where "the notice sent to class members following preliminary approval of the first settlement clearly apprised them of the fact that they would be bound by all future judgments in the case"); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (alteration in original) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out."); *In re Flonase Antitrust Litig.*, 2013 WL 12148283, at *2 (E.D. Pa. Jan. 14, 2013) (Brody, J.) (finding "there is no need for an additional opt-out period pursuant to Fed. R. Civ. P. 23(e)(4)" because the "prior notice of class certification, disseminated by first class mail to all Class members on May 9, 2011, satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and because the prior notice of class certification provided an opt-out period that closed July 8, 2011"); *Denney v. Deutsch Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006).

In this case, there is no reason to depart from standard practice and require a second opt-out opportunity. The Class Notice informed Class Members that summary judgment motions were pending before the Court and that any Class Member who did not timely seek exclusion would be bound by all future orders and judgments, whether favorable or unfavorable; the response to the widespread notice program in connection with class certification, which resulted in numerous exclusion requests, demonstrates it was effective; and the Settlement provides a clear benefit to the Class and negates any potential prejudice from disallowing a second opportunity to opt out. Accordingly, the Court should exercise its discretion to preclude a second opt-out opportunity.

### D.  The Proposed Settlement Approval Deadlines

The Parties respectfully propose for the Court's consideration the following schedule for Settlement-related events. Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| <u>Event</u> | <u>Proposed Timing</u> |
|---|---|
| Defendants' deadline to serve notices of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. | 10 calendar days after the filing of Lead Plaintiffs' Motion for Preliminary Approval. |
| Deadline for commencing mailing of the Postcard Notice to Class Members and posting the Settlement Notice on the case website (the "Notice Date"). | 15 business days after entry of the Preliminary Approval Order. |
| Deadline for publication of the Summary Settlement Notice. | 10 business days after the Notice Date. |
| Deadline for Lead Plaintiffs to file papers in support of final approval of Settlement and motion for attorneys' fees and expenses, including Lead Plaintiffs' PSLRA awards. | 35 calendar days prior to the Settlement Hearing. |
| Deadline for receipt of objections. | 21 calendar days prior to the Settlement Hearing. |
| Deadline for Lead Plaintiffs to file reply papers in support of final approval and submit proof of mailing and publication of the Settlement Notices. | 7 calendar days prior to the Settlement Hearing. |
| Settlement Hearing. | To be set by the Court at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. |
| Deadline for Class Members to submit Proof of Claim and Release Forms. | 120 calendar days after the Notice Date. |

## IV.      CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion, which is unopposed and supported by

Defendants, should be granted in its entirety.

Dated: June 13, 2025                              Respectfully submitted,

                                                  **BARRACK, RODOS & BACINE**

                                                  /s/ *Jeffrey W. Golan*
                                                  Jeffrey W. Golan
                                                  Chad A. Carder
                                                  Danielle M. Weiss
                                                  Jordan Laporta
                                                  3300 Two Commerce Square
                                                  2001 Market Street
                                                  Philadelphia, PA 19103
                                                  Tel: (215) 963-0600
                                                  Fax: (215) 963-0838
                                                  jgolan@barrack.com
                                                  ccarder@barrack.com
                                                  dweiss@barrack.com
                                                  jlaporta@barrack.com

                                                  **BERNSTEIN LITOWITZ BERGER**
                                                  **   & GROSSMANN LLP**

                                                  /s/ *Adam H. Wierzbowski*
                                                  John Rizio-Hamilton*
                                                  Adam H. Wierzbowski*
                                                  Li Yu*
                                                  Michael M. Mathai*
                                                  1251 Avenue of the Americas
                                                  New York, NY 10020
                                                  Tel: (212) 554-1400
                                                  Fax: (212) 554-1444
                                                  johnr@blbglaw.com
                                                  adam@blbglaw.com
                                                  li.yu@ blbglaw.com
                                                  michael.mathai@blbglaw.com

                                                  *Counsel for Lead Plaintiffs*
                                                  *\*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2025, a copy of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Settlement, Scheduling of Settlement Hearing and Approval of Settlement Notice (the "Motion"); the [Proposed] Preliminary Approval Order; Lead Plaintiffs' Memorandum of Law in Support of the Motion; the exhibits attached hereto were filed and submitted electronically, served via email on Counsel for Defendants, and are available for viewing and downloading from the CM/ECF system.

*/s/ Adam H. Wierzbowski*
Adam H. Wierzbowski